1  JOSEPH P. RUSSONIELLO (CABN 44332)
   United States Attorney

2  BRIAN J. STRETCH (CABN 163973)
3  Chief, Criminal Division

4  PHILIP J. KEARNEY (CABN 114978)
   Assistant United States Attorney
5
   450 Golden Gate Ave., Box 36055
6  San Francisco, California 94102
   Telephone: (415) 436-7200
7  Fax: (415) 436-7234
   Email: philip.kearney@usdoj.gov
8

   F I L E D
   JUL 2 8 2010
   RICHARD W. WIEKING
   CLERK U.S. DISTRICT COURT
   NORTHERN DISTRICT OF CALIFORNIA

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11                       SAN FRANCISCO DIVISION

12  IN THE MATTER OF THE           )    Misc. No. CR 10 · 90622 Misc MEJ
    THE EXTRADITION OF             )
13  PATRICK JOSEPH McCABE (DOB:    )    COMPLAINT FOR ARREST WITH A VIEW
    9/12/35)                       )    TOWARDS EXTRADITION (18 U.S.C.
14                                 )    § 3184)
                                   )
15  _____  )

16        I, the undersigned Assistant United States Attorney, being duly sworn, state on

17  information and belief that the following is true and correct:

18        1.      In this matter, I act for and on behalf of the Government of the Republic of

19  Ireland;

20        2.      There is an extradition treaty in force between the United States and Ireland.

21  Treaty on Extradition Between the United States of America and Ireland signed 13 July 1983,

22  U.S.-Ir., July 14, 2005, S. TREATY DOC. NO. 109-14 (2006).

23        3.      Pursuant to the treaty, the Government of Ireland has submitted a formal request

24  through diplomatic channels for the extradition of Patrick Joseph McCabe ("McCabe"), date of

25  birth September 12, 1935;

26        4.      McCabe is charged with committing nine counts of indecent assault and one count

27  of attempted indecent assault in Ireland, all violations of the Common Law. In connection with

28  these charges, the Dublin Metropolitan District Court has issued nine warrants for McCabes's

COMPLAINT FOR ARREST RE: PATRICK McCABE
EXTRADITION

1   arrest on four occasions: October 2, 2009; April 28, 2010; April 29, 2010; and May 5, 2010. The

2   Area of Naas District Court issued a tenth arrest warrant for McCabe's arrest on October 5, 2009.

3

4   5.   The warrants were issued on the basis of the following facts: As set forth in the

5   Request and the Government's Memorandum, McCabe is an Irish national, born September 12,

6   1935. He is also a Catholic priest accused of sexually assaulting six children between 1973 and

7   1981.

8   McCabe has confirmed that he served as a priest in the Dublin Archdiocese from 1961 to

9   1983. The Archdiocese has further confirmed that McCabe was a curate attached to the Pro-

10  Cathedral on Dublin's Marlborough Street between January 1971 and July 1979. Two men claim

11  to have been sexually assaulted either in McCabe's residence adjoining the cathedral or in

12  Central Middle School, located on the same street and where McCabe taught regularly.

13  Archdiocese representatives further confirm that McCabe was a curate in Dublin's Artane parish

14  from July 14, 1979 to September 5, 1981 and that, during that time, he lived at 16 Brookwood

15  Grove. Three other men claim to have been assaulted by McCabe at this address and during that

16  time-frame.

17  Irish police submitted their first allegations against McCabe in 1988. McCabe concedes

18  that he was forced to leave the priesthood against his will that year and that his doing so related

19  to allegations of child sexual abuse. Also in 1988, McCabe left the Irish jurisdiction in which

20  charges had been lodged against him. The Irish Director of Public Prosecutions declined to

21  pursue a case because McCabe was unavailable for police interview.

22  McCabe's location was unknown until 2003, when Interpol reported that he was living at

23  955 Shore Point Court, Apartment 112 in Alameda, California. Since that time, several other

24  complainants have alleged they were victims of McCabe's sexual abuse during his tenure as a

25  priest in Ireland. McCabe ultimately consented to an interview by Irish police in 2007, as is

26  discussed further below. He now lives at 866 ½ Walnut Street in Alameda, California. Details

27  regarding the individual assaults are as follows:

28  Complainant #1: Thomas Lawrence

COMPLAINT FOR ARREST RE: PATRICK McCABE
EXTRADITION                          -2-

1        Thomas Lawrence ("Lawrence") was born July 1, 1961 and attended Dublin's Central

2 Middle School from January 8, 1973 to June 30, 1975. During this time, McCabe was attached

3 to the Pro-Cathedral, located on the same street, and was in the school about twice a week.

4        Lawrence attended the school's remedial reading class when he was eleven to thirteen

5 years old. One day during this period, he disrupted class and was ordered by his teacher to stand

6 outside the classroom door. While Lawrence stood in the hallway, McCabe appeared and then

7 backed Lawrence up against a wall. McCabe pinned Lawrence by pushing his knee between

8 Lawrence's legs and leaning his body weight against Lawrence.

9        McCabe then started rubbing his body, and soon his erect penis, against Lawrence's

10 stomach and whispering that there was no reason to worry. McCabe massaged Lawrence's groin

11 for a few seconds. Then, McCabe opened his own pants, took his penis in his hand, and pushed

12 Lawrence's face down, so that he was forced to see McCabe's penis. McCabe grabbed

13 Lawrence's hand and squeezed it between his own hand and his penis for several seconds. After

14 he let Lawrence's hand go, McCabe used his own hand to masturbate while keeping Lawrence

15 pinned to the wall. Then, McCabe moaned, reached into his pocket for a handkerchief, put it on

16 his penis, and let Lawrence go. The boy ran away from McCabe and up some stairs. As he did

17 so, he looked back at McCabe, who was wiping the wall and the floor with his handkerchief.

18 After McCabe left the hallway, Lawrence ran away from the school grounds and hid in a parking

19 lot for the rest of the day. He went home when the other students were dismissed but did not tell

20 anyone about the incident.

21       Lawrence told Irish authorities that McCabe also attempted to assault him on a second

22 occasion when he was asked to stand outside the classroom. At the time of that incident,

23 Lawrence had been in the hallway for a few minutes and was standing in the middle of a coat-

24 rack when McCabe appeared from around the corner. "Hello, Tommy-outside-again," McCabe

25 said. He moved toward Lawrence, put one hand on the top of the coat-rack, crouched down, and

26 started pushing himself against Lawrence. Lawrence caused some noise by tripping on the coat-

27 rack and falling backwards. As a result, Principal O'Hara emerged from his nearby office.

28 McCabe left Lawrence and entered the principal's office.

COMPLAINT FOR ARREST RE: PATRICK McCABE
EXTRADITION                -3-

1        Lawrence filed a complaint alleging sexual abuse at his local Dublin police station on

2   June 15, 2009. He did so after many sober months, when he had abstained from drinking and

3   taking drugs, actions he describes as his effort to block his memory of these incidents. Lawrence

4   told police that he never informed his parents about McCabe's abuse because Lawrence's father,

5   who was very strict, "would go mad." Marie Creed, Lawrence's sister, confirmed this

6   characterization and stated that Lawrence had first told her of the abuse in May 2009, when he

7   was hospitalized for taking an overdose of alcohol and pills.

8        Irish police interviewed several witnesses who corroborated portions of Lawrence's

9   statement. Former school officials confirmed that Lawrence had attended Central Middle School

10  between January 8, 1973 and June 30, 1975. They also confirmed Lawrence's description of the

11  location of the principal's office and that Lawrence had attended a remedial reading class, located

12  in part of the school facility separated from his normal classroom. School officials further

13  confirmed that P. J. Haren, whom school children often called "Mr. O'Hara," had served as

14  school principal in the mid-1970's and that McCabe was a priest who would have been in the

15  school about twice a week. Based on this evidence, the Irish Director of Public Prosecutions

16  later concluded that McCabe should be prosecuted on one count of indecent assault and one

17  count of attempted indecent assault against Thomas Lawrence.

18       Complainant #2: Andrew Canavan

19       Andrew Canavan ("Canavan") was born December 7, 1964 and claims that McCabe

20  abused him three times between December 7, 1974 and September 1, 1977, while he was

21  between 10 and 12 years old.

22       During this period of his life, Canavan often attended mass at the Pro-Cathedral located

23  on Marlborough Street in Dublin. One day, Canavan attended confession and then sat down to

24  say his prayers when McCabe, a parish curate, introduced himself. McCabe told Canavan that he

25  was organizing a trip to Australia for ten children and then took Canavan to his private residence,

26  which was attached to the church. McCabe and Canavan discussed the Australia trip for about

27  10 minutes until McCabe led Canavan back to the front door. In the hallway, McCabe pushed

28  Canavan up against the wall and then started to fumble underneath his own clothing. McCabe

COMPLAINT FOR ARREST RE: PATRICK McCABE
EXTRADITION         -4-

1  took his penis out of his clothes, grabbed Canavan's buttocks, and then started moving up and
2  down against Canavan's body. Canavan said McCabe's movements were fast at first but later
3  slowed and then stopped. Canavan did not see McCabe's penis but said he felt something hard
4  and bumpy against his rib cage.

5  About a week later, McCabe again approached Canavan as he was saying his post-
6  confessional prayers. McCabe said he had something to discuss with Canavan and took Canavan
7  to the living room of his private residence. McCabe placed his hand on Canavan's knee and said
8  that Canavan had been chosen to go to Australia. McCabe then escorted Canavan toward the
9  front door and, in the hallway, pushed Canavan against the wall. McCabe fumbled underneath
10 his clothes, grabbed Canavan's buttocks, and then moved up and down against Canavan.
11 McCabe's movements were fast at first, and then he slowed. Meanwhile, Canavan felt
12 something hard pressed against his ribs. Afterward, Canavan went home and told his brother
13 James, who is two years older than Canvan, about the Australia trip.

14 On the Sunday after this incident, Canvan brought James with him to Pro-Cathedral for
15 mass. After the service, the boys approached McCabe, who took them to the living room of his
16 private residence. McCabe told James to go to the window, to look out of it, to stay there, and
17 not to look back into the living room. Then, McCabe led Canavan to lie down on the ground.
18 McCabe laid on top of Canavan, who found it hard to breathe under this weight. McCabe started
19 to gyrate on top of Canavan, who could feel something hard pressed against his stomach.
20 McCabe also began kissing and licking Canavan's face. Suffocated under McCabe's weight,
21 Canavan groaned. McCabe put his fingers to Canavan's mouth and said "shh." Canavan pushed
22 McCabe's hands away and screamed. McCabe immediately lifted him off the ground. James
23 Canavan turned around and told Andrew Canavan that he wanted to go. McCabe gave a bottle of
24 orange drink to each boy and told them not to tell anyone about the incident.

25 When the boys returned home, Canavan told his grandfather about the incident. His
26 grandfather was annoyed but said he didn't want trouble from priests. They never discussed the
27 matter again. Canavan said that he was ashamed of his sexual assault and felt that it was his
28 fault. He moved with his family to England in 1985. As an adult, Canavan suffered from

COMPLAINT FOR ARREST RE: PATRICK McCABE
EXTRADITION                              -5-

1  depression and, in 1996, he told a psychiatrist that he had been sexually assaulted by an Irish
2  priest. Canavan says it took him nearly 30 years before he could properly talk about his abuse.
3  He returned to Dublin for a visit in mid-2008. Upon passing Pro-Cathedral and seeing the
4  windows of its adjacent private residence, Canavan decided to tell his mother, Margaret Wallace,
5  about his childhood sexual assaults. Wallace reported this to her local church, which contacted
6  Joseph McDonagh at the Dublin Archdiocese Child Protection Services. McDonagh
7  accompanied Canavan when he went to the local Dublin police station on December 30, 2008 to
8  file a complaint of sexual abuse.

9  Police investigators have interviewed a number of people who corroborate Canavan's
10  complaint. For example, James Canavan recalls going to McCabe's room, being told to look out
11  the window, seeing McCabe get on top of his brother, and seeing McCabe move up and down.
12  He remembers Canavan screaming and that McCabe gave the brothers something before they
13  left. Wallace recalls talk during Canavan's childhood regarding his selection for an Australian
14  trip and that, afterward, her father declared there would be no talk of priests in his house. The
15  current parish priest at Dublin Pro-Cathedral has confirmed the accuracy of Canavan's
16  descriptions of the cathedral and its parochial house. Upon completion of the investigation, the
17  Director of Public Prosecutions concluded that McCabe should be prosecuted for three counts of
18  indecent assault against Andrew Canavan.

19  Complainant #3: James Moran

20  James Moran was born February 3, 1963 and boarded at the Dominican College in
21  Newbridge, Ireland in early 1977. Newbridge is a town approximately 30 miles southwest of
22  Dublin. Moran claims that McCabe assaulted him here one afternoon in 1977.

23  Moran has stated that he was playing rugby with his classmates in January or February,
24  when he was 13 or 14 years old. At about 4:45pm, a student came out to tell him that his uncle
25  had arrived to visit. Moran went to the college's main parking lot and saw a man whom he did
26  not know walk towards him. The priest introduced himself as McCabe, said that he was a friend
27  of the family, and suggested that Moran enter his car for a chat. Moran said the car was a red
28  'Daff.' McCabe sat in the driver's seat. Moran entered the car and sat in the passenger's seat.

COMPLAINT FOR ARREST RE: PATRICK McCABE
EXTRADITION                    -6-

1    He estimated that he was in the car with McCabe for more than an hour.

2    During this time, McCabe reclined both seats, opened his trousers, and removed his
3    penis. McCabe also lowered Moran's trousers and underpants, turned Moran on his left side, and
4    attempted to penetrate him. Moran tried to open the car door, but it was locked. He also tried to
5    open the car window, but it wasn't working. McCabe tried to pull Moran's head toward
6    McCabe's groin, but Moran resisted. McCabe masturbated and fondled Moran's groin several
7    times. Moran says that he ejaculated but does not know whether McCabe did so.

8    Moran's father picked him up at school the next day, which was a Sunday. When Moran
9    arrived home, he found Father Ambrose Farrington, a Cistercian priest and family friend, waiting
10   there for him. Moran sat in Farrington's car and told him of the assault. He gave Farrington two
11   pounds to say a mass for McCabe. Moran's aunt, Ann Hennessy, also inquired about what had
12   happened, and Moran told her.

13   Moran later gave the Irish police a letter he received from McCabe after the assault. The
14   letter was addressed to "Master James Moran (pupil), Dominican College, Newbridge, Co.
15   Kildare." The letter was dated "Monday" and printed on letterhead which read "Father Patrick
16   McCabe, 82 Marlboro Street, Dublin 1." The letter read:

17

18        Dear James. Hope all went well. Glad to have met you. I forgot to ask you did
19        you remember the day after school in Athy when I was visiting the secondary
20        school and met you? You are always welcome to drop a line, ring or call.
21        Sometimes I go beagling down Kildare way on Sunday afternoons. Keep smiling
22        anyway James, there is a lot of great things in you, and you will do good for God
23        and people. Love to hear you sometime on the guitar – keep it up. Keep praying
24        and keep smiling. Yours, Fr McC"

25

26   McCabe later denied communicating with Moran after their meeting at Newbridge. However,
27   upon seeing this letter, he acknowledged that it was penned in his own handwriting.

28   Moran first reported the assault to Irish police in Kildare County in January 1987. The

COMPLAINT FOR ARREST RE: PATRICK McCABE
EXTRADITION                                -7-

1   police took statements from Moran in 1988 and in 2003. Moran's parents are now deceased.
2   However, Irish police have taken statements from other witnesses who corroborate portions of
3   Moran's statement. Hennessy remembered McCabe attending lunch in the Moran home on a
4   Saturday in January or February 1977. She recalled that McCabe remarked on photographs of
5   Moran and his brother and that McCabe was told they were boarding in Dominican College. She
6   also remembered that the college called Moran's mother, Teresa, twice that evening to inquire
7   about McCabe. Hennessy said that Moran came home the next day and spoke with Farrington.
8   She also spoke with Moran in the back pantry, where he confided that McCabe had sexually
9   assaulted him. Moran cried as he told his aunt that the car's locked doors had prevented his
10  escape.

11      Farrington also told police that McCabe stayed at Bolton Abbey in Kildare County for
12  one week during the 1970s. At the time of the incident, Farrington was in charge of guests at the
13  abbey. Farrington said that he knew the Moran family well and that, after McCabe's visit,
14  Farrington was contacted by Teresa Moran, who asked for him to speak with her son. When
15  Farrington did so, Moran told him that McCabe had sexually assaulted him and that Moran had
16  reported this to the college authorities.

17      After Moran's 1987 complaint and their investigation, Irish police submitted their first
18  allegations against McCabe to the Director of Public Prosecution in 1988. In 1988, McCabe left
19  the Irish jurisdiction in which charges had been lodged against him. The Irish Director of Public
20  Prosecutions subsequently declined to pursue the case because McCabe was unavailable for
21  police interview.

22      McCabe's location was unknown until 2003, when Interpol reported that he was living at
23  955 Shore Point Court, Apartment 112 in Alameda, California. At that time, Irish police again
24  submitted Moran's allegations to the Director of Public Prosecutions. Alameda County police
25  contacted McCabe and informed him that Irish police had requested an interview. McCabe
26  refused the interview, and the Director of Public Prosecutions again declined to proceed.

27      Four years later, in 2007, McCabe granted a renewed request by Irish police for an
28  interview. Thereafter, officers assigned to an Irish police task force traveled to California and

COMPLAINT FOR ARREST RE: PATRICK McCABE
EXTRADITION                          -8-

1   interviewed McCabe three times on November 7, 8, and 9, 2007. On each occasion, McCabe

2   was informed that he was free to leave at any time. During these interviews, McCabe confirmed

3   that he had served as a priest in the Dublin Archdiocese from 1961 to 1983.

4         McCabe also admitted both to knowing Moran and his mother and to having been in their

5   home. He said he was introduced to the Morans by another priest, Michael Wall. He also

6   admitted to having visited Newbridge College and to speaking with Moran in his car there.

7   McCabe said he met with Moran because Teresa Moran said her son had psychological problems

8   and requested the consult. However, McCabe said he never contacted her after the meeting in

9   order to explain its results.

10        When the police asked McCabe to tell them about his encounter with Moran, McCabe

11   said, "He came out to see me. He met all my requirements to match up my fetish, and I

12   embraced him and fondled him with no further sexual behavior. We had a conversation and just

13   parted." Asked to clarify, McCabe said, "He was handsome and had a nice shirt and tie – maybe

14   a suit. I don't know." Police asked McCabe what he meant by the word fetish, and he said,

15   "Something that arouses me." When police asked whether, for McCabe, an embrace might

16   include a kiss, he said possibly. However, he stated that he had no recollection of ever kissing a

17   young boy. After listening to part of Moran's statement, McCabe called it a fabrication. After

18   listening to part of the testimony of Moran's Aunt, Ann Hennessey, McCabe responded, "I had a

19   sexual attraction to him (Moran), and he possibly had the same to me. And that might have been

20   the first time, a first for him." When police asked McCabe to clarify, he said, "(Moran) might

21   never have understood sexual attraction." McCabe denied anything more than sexual attraction

22   between him and Moran.

23        Based on this evidence, the Irish Director of Public Prosecutions later concluded that

24   McCabe should be prosecuted on one count of indecent assault against James Moran.

25        Complainant #4: Frank LaCumbre

26        Frank LaCumbre ("LaCumbre") was born October 22, 1966 and later attended Artane

27   Church in Dublin. McCabe was a curate at this parish and lived at 16 Brookwood Grove from

28   July 14, 1979 to September 5, 1981. LaCumbre claims to have been sexually assaulted by

COMPLAINT FOR ARREST RE: PATRICK McCABE
EXTRADITION          -9-

1  McCabe during this time, when LaCumbre was between 12 and 14 years old.

2       LaCumbre has stated that, one day, he rode his new bike near Artane Church. He met
3  another friend who was cutting the parish grass, and while they were chatting, McCabe appeared
4  and spoke with them. Two or three days later, McCabe phoned LaCumbre's mother, Anne, and
5  asked if he could take a picture of her son on his bike for the parish magazine. Anne LaCumbre
6  agreed and sent her son to McCabe's house at about 6pm. When LaCumbre arrived, McCabe
7  locked LaCumbre's bike in the garage and told LaCumbre to come inside his home. There,
8  McCabe showed LaCumbre two or three slides of other children and then took a photo of
9  LaCumbre. McCabe sat on the couch, immediately beside LaCumbre and with their thighs
10  touching. Then, McCabe put his left arm around LaCumbre's shoulders and pulled the boy into
11  him. Meanwhile, McCabe used his right hand to rub the inside of LaCumbre's leg. LaCumbre
12  told McCabe to stop, but instead, McCabe put his right hand on LaCumbre's penis. LaCumbre
13  pushed McCabe's hand away and again said, "Stop." McCabe threw his right leg over
14  LaCumbre, who pushed McCabe off of him. LaCumbre stood up and told McCabe to open the
15  garage so he could get his bike. When McCabe tried to assuage the boy, LaCumbre threatened to
16  call his father. McCabe got the bike, and LaCumbre left.

17       LaCumbre did not tell his parents about the incident partly because he feared his father
18  would create a scene. In reflection, LaCumbre stated that he knew what McCabe had done was
19  wrong but that he was also young and did not want to blow the incident out of proportion. It
20  came up again during LaCumbre's adult life, when he was in marriage counseling. This led
21  LaCumbre to file a police complaint against McCabe on March 6, 2009. Police took statements
22  from him on that date and on April 29, 2009. LaCumbre later identified the house where his
23  assault took place.

24       Irish police have interviewed other witnesses who have corroborated portions of
25  LaCumbre's statement. Anne LaCumbre, LaCumbre's wife of 22 years, told police that her
26  husband had mentioned an incident with a priest several times over many years. However, he
27  only revealed its details during their marital counseling session. LaCumbre's mother also
28  recalled McCabe's telephone request and that she encouraged her son to go for the photo. She

COMPLAINT FOR ARREST RE: PATRICK McCABE
EXTRADITION           -10-

1    also said that her son told her what happened at McCabe's home about twenty years later and ten
2    years before he made his police complaint. Based on this evidence, the Irish Director of Public
3    Prosecutions decided that McCabe should be prosecuted for one count of indecent assault against
4    LaCumbre.

5    Complainant #5: Barry Ennis

6    Barry Ennis ("Ennis") was born May 22, 1969 and later attended Dublin's Chanel
7    Primary School. He alleges that McCabe sexually assaulted him in 1981, when Ennis was about
8    11 years old and a student in the school's sixth grade.

9    In a statement to Irish authorities, Ennis stated that one day in early 1981, he went to
10   McCabe's home at 16 Brookwood Grove to collect leaflets for distribution to the parish. Ennis
11   had been introduced to the activity by friend Anthony Corrigan, who had already been delivering
12   leaflets. Driving a blue Volvo 240, McCabe picked up these two boys and a third child and took
13   them from school to McCabe's home. McCabe began to show the boys around his house and
14   then took them upstairs, to a back room from which McCabe said they would see his dog in the
15   garden. In the room, McCabe pushed Ennis onto the bed, climbed on top of him, and rubbed
16   himself up and down the boy's body. Ennis started to cry, and McCabe stood up. Corrigan and
17   the other boy attempted to comfort Ennis by telling him that it was alright and that McCabe
18   behaved this way often. Ennis continued to visit McCabe at his house for the next two months.
19   Each time, McCabe would touch Ennis inappropriately. Their encounters escalated until
20   McCabe would kiss him on the mouth. Ennis said that, on one occasion, McCabe did so when
21   Ennis's sister, Belinda, was in the house. On another occasion, McCabe kissed Ennis when the
22   boy had chewing gum in his mouth. Ennis said McCabe used his tongue to roll the gum around
23   inside Ennis's mouth. Ennis does not know the exact dates of these visits but believes they were
24   in late February or early March 1981, the year he was confirmed. Ennis also stated that McCabe
25   built a friendship with Ennis's family and stayed for dinner on one occasion. McCabe also kept a
26   slide projector in his living room, where he would pull the curtains and show children slides of
27   the places he had visited. McCabe never touched Ennis inside his clothing or asked Ennis to
28   touch McCabe.

COMPLAINT FOR ARREST RE: PATRICK McCABE
EXTRADITION                -11-

1    When he was about 14 years old, Ennis told his cousin Ger Collins about McCabe's

2  sexual assaults. Later, Ennis also told his sister, Belinda Ennis, his mother, Eileen Ennis, and his

3  uncle, Joe Ennis. Ennis first reported the assaults publicly by calling a telephone hotline

4  established for victims of clerical sex abuse. On November 2, 2002, Irish police visited Ennis's

5  home. He gave police a full statement and identified 16 Brookwood Grove as the home where

6  McCabe perpetrated the assaults.

7    Irish police have interviewed other witnesses who have corroborated parts of Ennis's

8  statement. Records at the Irish Department of the Environment confirm that a blue Volvo was

9  registered to McCabe at the Dublin address from 1980 to 1982. A certificate states that Ennis

10  was confirmed on March 12, 1981.

11    Further, Ger Collins and Joe Ennis remember Ennis telling them that a priest had

12  assaulted him. Belinda Ennis remembers that, on one occasion, she went to McCabe's house for

13  a prayer meeting but that no one was there. A few months later, Ennis told her that McCabe had

14  pushed him onto a bench or a bed, lay on top of him, and wriggled. Belinda Ennis also

15  remembers her brother telling her that, on another occasion, McCabe had given him chewing

16  gum and told him to play a game of passing it from his mouth to McCabe's mouth. Ennis told

17  his sister that he did not enjoy the game. Finally, Eileen Ennis remembers that McCabe picked

18  Ennis up from their home for a prayer meeting when he was about 11 years old. At about the

19  time Ennis made his criminal complaint, Eileen Ennis remembers her son telling her that

20  McCabe had lay on top of him when Ennis was a child. He also told his mother that McCabe

21  would give him chewing gum and then put his tongue in Ennis's mouth.

22    During his interviews, McCabe said that he did show slides to children in his house and

23  that he did have a dog when he lived at 16 Brookwood Drive. However, McCabe did not

24  remember Ennis or what he looked like. In response to hearing Ennis's statements, McCabe

25  replied, "I have no memory of all those alleged operations. Seems fantastic that I would be

26  taking dinner in someone's house. It's a fantastic story, but I can't identify with it. I did not

27  know that I kissed boys. I have my doubts about that." When asked whether he had a response

28  to Ennis's accusations, McCabe said, "It endorses the fact that I never touched the skin of

COMPLAINT FOR ARREST RE: PATRICK McCABE
EXTRADITION                    -12-

1  another." However, he declined to view this statement as a concession to Ennis's allegations.

2  After this investigation, Irish police submitted their file to the Director of Public

3  Prosecutions, who concluded that McCabe should be prosecuted for two counts of indecent

4  assault upon Barry Ennis.

5  Complainant #6: Anthony Corrigan

6  Anthony Corrigan was born May 4, 1969 and later attended Dublin's Chanel Primary

7  School. He alleges that McCabe sexually assaulted him in 1981, when Corrigan was 11 years old

8  and a student in the school's sixth grade.

9  Corrigan has stated that, in March or April of 1981, McCabe came to Corrigan's

10  classroom to recruit boys to deliver leaflets. Corrigan volunteered for the job, and so did his

11  friend and classmate, Barry Ennis. Later, McCabe called the boys' mothers to get permission to

12  pick them up from school. In his blue Volvo 240, McCabe drove them to his home. McCabe

13  and Corrigan entered the back bedroom, where they looked out of the window for a dog. Then,

14  McCabe tickled Corrigan's upper body. Corrigan ended up on the bed with McCabe on top of

15  him. McCabe breathed heavily, kissed Corrigan's cheek and neck, and rubbed his own body

16  against Corrigan's. The boy, who felt crushed from his chest to his knees, struggled, told

17  McCabe to stop, and said something like "get off of me." McCabe heard Corrigan but did not

18  stop. Instead, he opened his own belt and tried to calm Corrigan by whispering words like "don't

19  worry." Corrigan later estimated that McCabe was on top of him for about 4 minutes.

20  Afterward, McCabe stood up and acted like nothing had happened.

21  Corrigan never went back to McCabe's home. However, McCabe did call on Corrigan's

22  home. On that occasion, the boy told his parents hat he didn't like the priest because McCabe

23  had tickled and laid on top of him. When he was 16 or 17 years old, Corrigan also told Ennis

24  about his assault.

25  Irish police contacted Corrigan while they were investigating Ennis's complaints.

26  Corrigan filed his own complaint on February 4, 2003. He identified 16 Brookwood Grove as

27  the house in which he had been assaulted. Police obtained a copy of Corrigan's confirmation

28  certificate, which shows he was confirmed on March 12, 1981 at St. Brendan's Church in

COMPLAINT FOR ARREST RE: PATRICK McCABE
EXTRADITION                              -13-

1   Dublin. Corrigan also provided police with a photograph of his confirmation day: It includes
2   Corrigan's mother and McCabe.

3       Police interviewed other witnesses who corroborated portions of Corrigan's statement.
4   Corrigan's father, Anthony Corrigan Senior, recalled picking his son up from a priest's house,
5   where his son was to pick up leaflets. The boy's mother, Madeleine Corrigan, remembered
6   McCabe asking whether her son could deliver some leaflets and said that, at the time, she was
7   aware that Ennis did the same. Madeleine Corrigan remembered refusing McCabe's request that
8   her son participate in McCabe's prayer group because it was not associated with their parish.
9   She further remembered that McCabe was waiting at their home on the night that the Corrigans
10  returned from her son's confirmation: Her son ran upstairs, and McCabe ran after him. When
11  they came back downstairs, McCabe said he had told the boy what to do with his confirmation
12  money. After McCabe left, Corrigan told his mother that the priest had pushed him on the bed
13  and tickled him. Corrigan's sister, Karen Doyle, remembered walking into Corrigan's bedroom
14  on the day of his confirmation and seeing the boy on his bed. McCabe was on top of him. Both
15  people were fully dressed.

16      When Irish police interviewed McCabe in 2007, he conceded that he might have recruited
17  boys to deliver leaflets and sought their parents' permission for doing so. McCabe also
18  remembered owning a blue Volvo. He said he did not remember attending Corrigan's
19  confirmation but that he would have gone if he were free. Upon seeing the photo of Corrigan's
20  confirmation, McCabe recognized himself and said the boy in the photo was slightly familiar.
21  After hearing the allegations in Corrigan's statement, McCabe said that he was "interested to
22  note [Corrigan] was in school uniform, one of my fetishes. But I have no memory of the incident
23  or the boy." McCabe explained that he had a fetish for formal shirts and ties worn by young
24  boys. He said these images sexually aroused him and that, when he was unable to control his
25  urges, he would obtain "satisfaction" from "an embrace and being closed to a boy." Asked if
26  anything else would happen, McCabe said, "I have nothing further." Asked if he would ever
27  ejaculate, McCabe said, "Sometimes I ejaculated unwarily, and sometimes I was aware. But [I]
28  never exposed any private parts, either mine or other." McCabe said he had been treated for

COMPLAINT FOR ARREST RE: PATRICK McCABE
EXTRADITION                              -14-

1    these fetishes in therapy centers in England and the U.S.

2        Upon receiving this evidence from Irish police, the Director of Public Prosecutions
3    concluded that McCabe should be prosecuted for one count of indecent assault against Anthony
4    Corrigan.

5        6.    McCabe may be found within the jurisdiction of this court at 866 ½ Walnut
6    Street, Alameda, California.

7        7.    Edward Sullivan, an attorney in the Office of the Legal Adviser of the United
8    States Department of State, has provided the Department of Justice with a declaration
9    authenticating a copy of the diplomatic note by which the request for extradition was made and a
10   copy of the extradition treaty between the United States and the Republic of Ireland, stating that
11   the offenses for which extradition is demanded are covered by the treaty, and confirming that the
12   documents supporting the request for extradition are properly certified by the principal American
13   diplomatic or consular officer in Ireland, in accordance with Title 18, United States Code,
14   Section 3190, so as to enable them to be received in evidence; and

15       8.    The declaration from the Department of State with its attachments, including a
16   copy of the diplomatic note from the requesting state, a copy of the relevant extradition treaty,
17   and the certified documents submitted in support of the request, (marked collectively as
18   Government's Exhibit #A) are filed with this complaint and incorporated by reference herein.

19       9.    The person named above would be likely to flee if he learned of the existence of a
20   warrant for his arrest.

21       WHEREFORE, the undersigned requests that a warrant for the arrest of the aforenamed
22   person be issued in accordance with the Extradition Treaty between the United States and
23   Ireland, and Title 18, United States Code, Section 3184, so that the fugitive may be arrested and
24   brought before this court, "to the end that the evidence of criminality may be heard and

25   //

26   //

27   //

28   //

COMPLAINT FOR ARREST RE: PATRICK McCABE
EXTRADITION                              -15-

1  considered," and that this complaint and the warrant be placed under the seal of the court until

2  such time as the warrant is executed.

3      I swear under penalty of perjury that the foregoing is true and correct to the best of my

4  knowledge.

5

6  PHILIP J. KEARNEY

7  Assistant United States Attorney

8  Sworn to before me and subscribed in my presence this 26 day of July, 2010, at San Francisco,

9  California.

10

11

12  MARIA ELENA JAMES

13  United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR ARREST RE: PATRICK McCABE
EXTRADITION                          -16-

**TREATIES AND OTHER INTERNATIONAL ACTS SERIES 10813**

# EXTRADITION

Treaty Between the
UNITED STATES OF AMERICA
and IRELAND

Signed at Washington July 13, 1983



## NOTE BY THE DEPARTMENT OF STATE

Pursuant to Public Law 89–497, approved July 8, 1966 (80 Stat. 271; 1 U.S.C. 113)—

". . . the Treaties and Other International Acts Series issued under the authority of the Secretary of State shall be competent evidence . . . of the treaties, international agreements other than treaties, and proclamations by the President of such treaties and international agreements other than treaties, as the case may be, therein contained, in all the courts of law and equity and of maritime jurisdiction, and in all the tribunals and public offices of the United States, and of the several States, without any further proof or authentication thereof."

*For sale by the Superintendent of Documents, U.S. Government Printing Office Washington, D.C. 20402*

# IRELAND

## Extradition

*Treaty signed at Washington July 13, 1983;*

*Transmitted by the President of the United States of America to the Senate April 24, 1984 (Treaty Doc. No. 98–19, 98th Cong., 2d Sess.);*

*Reported favorably by the Senate Committee on Foreign Relations June 20, 1984 (S. Ex. Rept. No. 98–32, 98th Cong., 2d Sess.);*

*Advice and consent to ratification by the Senate June 28, 1984;*

*Ratified by the President August 10, 1984;*

*Ratified by Ireland November 14, 1984;*

*Ratifications exchanged at Dublin November 15, 1984;*

*Proclaimed by the President January 3, 1985;*

*Entered into force December 15, 1984.*

TIAS 10813

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

CONSIDERING THAT:

The Treaty on Extradition between the United States of America and Ireland was signed at Washington on July 13, 1983, the text of which is hereto annexed;

The Senate of the United States of America by its resolution of June 28, 1984, two-thirds of the Senators present concurring therein, gave its advice and consent to ratification of the Treaty;

The Treaty was ratified by the President of the United States of America on August 10, 1984, in pursuance of the advice and consent of the Senate, and was ratified on the part of Ireland;

It is provided in Article XIX of the Treaty that the Treaty shall enter into force thirty days after the exchange of the instruments of ratification;

The instruments of ratification of the Treaty were exchanged at Dublin on November 15, 1984, and accordingly the Treaty entered into force on December 15, 1984;

TIAS 10813

NOW, THEREFORE, I, Ronald Reagan, President of the United States
of America, proclaim and make public the Treaty to the end that it be
observed and fulfilled with good faith on and after December 15, 1984,
by the United States of America and by the citizens of the United
States of America and all other persons subject to the jurisdiction
thereof.

IN TESTIMONY WHEREOF, I have signed this proclamation and caused
the Seal of the United States of America to be affixed.

DONE at the city of Washington

[SEAL]

this third day of

January in the year of

our Lord one thousand

nine hundred eighty-five

and of the Independence

of the United States of

America the two hundred

ninth.

Ronald Reagan

By the President:

George P. Shultz

Secretary of State

TIAS 10813

**TREATY ON EXTRADITION BETWEEN
THE UNITED STATES OF AMERICA AND IRELAND**

The Government of the United States of America and the
Government of Ireland, desiring to make more effective the
cooperation of the two countries in the suppression of crime,
agree as follows:

TIAS 10813

5

## ARTICLE I

### Obligation to Extradite

Each Contracting Party agrees to extradite to the other, in accordance with the provisions of this Treaty, but subject to the law of the Requested State and to such exceptions as are therein provided, any persons, including its citizens or nationals, who are wanted for prosecution or the imposition or enforcement of a sentence in the Requesting State for an extraditable offense.

## ARTICLE II

### Extraditable Offenses

1. An offense shall be an extraditable offense only if it is punishable under the law of both Contracting Parties by imprisonment for a period of more than one year, or by a more severe penalty. When the request for extradition relates to a person who is wanted for the enforcement of a sentence of imprisonment, extradition shall be granted only if the duration of the sentence still to be served amounts to at least four months.

2. For the purpose of this Article, it shall not matter:

    (a) whether the laws of the Contracting Parties place the offense within the same category of offense or denominate the offense by the same terminology; or

    (b) whether the offense is one for which United States federal law requires proof of interstate transportation, or use of the mails or of other

6

facilities affecting interstate or foreign com-
merce, such matters being merely for the purpose
of establishing jurisdiction in a United States
federal court.

3.  Subject to the conditions set forth in paragraph 1 of
this Article, extradition shall also be granted for attempt and
conspiracy to commit, aiding, abetting, counseling, procuring,
inciting, or otherwise being an accessory to the commission of,
an offense referred to in paragraph 1.

4.  If extradition is granted for an extraditable offense,
it may also be granted for any other offense for which extradi-
tion is requested that meets all the requirements for extradi-
tion other than the periods of imprisonment specified in para-
graph 1 of this Article.

### ARTICLE III

### Place of Commission of Offense

1.  Extradition shall not be refused on the ground that the
offense for which extradition is requested was committed out-
side the Requesting State.

2.  Extradition may be refused when the offense for which
extradition is requested is regarded under the law of the Re-
quested State as having been committed in its territory.  If
extradition is refused pursuant to this paragraph, the Request-
ed State shall submit the case to its competent authorities for
the purpose of prosecution.

7

## ARTICLE IV

### Exceptions to Extradition

Extradition shall not be granted in any of the following circumstances:

(a) when the person whose surrender is sought has been convicted or acquitted, or a prosecution is pending against that person, in the Requested State, for the offense for which extradition is requested;

(b) when the offense for which extradition is requested is a political offense. Reference to a political offense shall not include the taking or attempted taking of the life of a Head of State or a member of his or her family;

(c) when there are substantial grounds for believing that a request for extradition for an ordinary criminal offense has been made for the purpose of prosecuting or punishing a person on account of that person's race, religion, nationality or political opinion. Unless the law of the Requested State otherwise provides, decisions under this paragraph shall be made by the executive authority; or

(d) when the offense for which extradition is requested is a military offense which is not an offense under the ordinary criminal law of the Contracting Parties.

## ARTICLE V

### Discretionary Grounds for Refusal of Extradition

Extradition may be refused in any of the following circumstances:

8

(a) when the person whose surrender is sought has been
    convicted or acquitted in a third State of the offense
    for which extradition is requested; or

(b) when the competent authorities of the Requested State
    have decided to refrain from prosecuting the person
    whose surrender is sought for the offense for which
    extradition is requested, or to discontinue any crim-
    inal proceedings which have been initiated against
    that person for that offense.

### ARTICLE VI

#### Capital Punishment

When the offense for which extradition is requested is
punishable by death under the law of the Requesting State and
is an offense which is not so punishable under the law of the
Requested State, extradition may be refused unless the Request-
ing State provides such assurances as the competent authorities
of the Requested State consider sufficient that the death
penalty, if imposed, will not be carried out.

### ARTICLE VII

#### Postponement of Surrender

When the person whose extradition is requested is being, or
is about to be, proceeded against, or has been convicted, in
the Requested State in respect of an offense other than that
for which extradition has been requested, surrender may be
postponed until the conclusion of the proceedings and the full
execution of any punishment the person may be or may have been
awarded.

9

## ARTICLE VIII

### Extradition Procedure and Required Documents

1.  The request for extradition shall be made in writing and shall be communicated through the diplomatic channel.

2.  The request for extradition shall contain:

    (a)  information which will help to establish the identity of the person sought;

    (b) the location of the person if known or, if it is not known, a statement to that effect; and

    (c)  a brief statement of the facts of the case.

3.  Every request for extradition shall be supported by documents which contain:

    (a)  as accurate a description as possible of the person sought, together with any other information which will assist in establishing the person's identity and nationality;

    (b)  a statement of the pertinent facts of the case, indicating as accurately as possible the time and place of commission of the offense; and

    (c)  the legal description of the offense and a statement of the maximum penalties therefor and the text of the law setting forth the offense or, where this is not possible, a statement of the relevant law.

4.  When the request for extradition relates to a person who has not been convicted, it shall also be supported:

    (a)  by the original or an authenticated copy of the warrant of arrest, or equivalent order, issued by a competent authority of the Requesting State;

TIAS 10813

10

    (b) by the original or an authenticated copy of the
complaint, information or indictment; and

    (c) in the case of a request emanating from Ireland, by a
statement of facts, by way of affidavit or statutory
declaration, setting forth reasonable grounds for be-
lieving that an offense has been committed and that
the person sought committed it.

5. When the request for extradition relates to a convicted
person, it shall also be supported:

    (a) by the original or an authenticated copy of the judg-
ment of conviction; and

    (b) if a sentence has been imposed, by the original or an
authenticated copy of the sentence and a statement of
the extent to which it has been carried out and that
it is immediately enforceable.

6. All documents transmitted by the Requesting State shall
be in English or shall be translated into English by that
State.

### ARTICLE IX

#### Additional Evidence or Information

1. If the Requested State requires additional evidence or
information to enable it to decide on the request for extradi-
tion, such evidence or information shall be submitted to it
within such time as that State shall specify.

2. If the person sought is in custody and the additional
evidence or information submitted as aforesaid is found insuf-
ficient or if such evidence or information is not received

11

within the period specified by the Requested State, the person shall be discharged from custody. Such discharge shall not preclude the Requesting State from submitting another request in respect of the same offense.

### ARTICLE X

#### Provisional Arrest

1. In case of urgency, a Contracting Party may request the provisional arrest of a person sought. The request for provisional arrest shall be made through the diplomatic channel or directly between the United States Department of Justice and the Department of Justice in Ireland, in which case the facilities of INTERPOL may be used. The request may be transmitted by post or telegraph or by any other means affording evidence in writing.

2. The request shall contain:

(a) a description of the person sought;

(b) a statement of the nature of the offense and of the time at which and the place where it is alleged to have been committed;

(c) a statement of the existence of one of the documents referred to in paragraph 4(a) or 5 of Article VIII; and

(d) a statement that it is intended to send a request for extradition.

3. On receipt of such a request, the Requested State shall take the appropriate steps to secure the arrest of the person sought. The Requesting State shall be promptly notified of the result of its request.

12

4.  Unless the law of the Requested State otherwise pro-vides, a person arrested upon such a request shall be released upon the expiration of forty-five days from the date of that person's arrest if the request for extradition has not been duly received by the Requested State.  This stipulation shall not prevent the institution of proceedings with a view to extraditing the person sought if a request for extradition is subsequently received.

### ARTICLE XI

### Rule of Speciality

1.  A person extradited under this Treaty shall not be proceeded against, sentenced, punished, detained or otherwise restricted in his or her personal freedom in the Requesting State for an offense other than that for which extradition has been granted, or be extradited by that State to a third State, unless:

(a)  the person has left the Requesting State after extra-dition and has voluntarily returned to it;

(b)  the person, having had an opportunity to leave the Requesting State, has not done so within forty-five days of final discharge in respect of the offense for which that person was extradited; or

(c)  the Requested State has consented.

2.  Where the description of the offense charged in the Requesting State is altered in the course of proceedings, the person extradited shall not be proceeded against, sentenced,

13

punished, detained or otherwise restricted in his or her personal freedom except insofar as the offense under its new description is composed of the same constituent elements as the offense for which extradition was granted.

3. Unless the law of the Requesting State otherwise provides, the person extradited may be proceeded against, sentenced, punished, detained or otherwise restricted in his or her personal freedom for an offense for which that person could be convicted, under the law of that State, upon trial for the offense for which extradition was granted.

4. These stipulations shall not apply to offenses committed after the extradition.

ARTICLE XII

Multiple Requests

A Contracting Party upon receiving requests from the other Contracting Party and from a third State for the extradition of the same person, either for the same offense or for different offenses, shall determine to which of the States it will extradite the person sought, taking into consideration all the circumstances and, in particular, the relative seriousness of the offenses and where they were committed, the citizenship or nationality of the person sought, the dates upon which the requests were received, the possibility of a later extradition between the other Contracting Party and the third State, and the provisions of any extradition agreements between the States concerned.

14

## ARTICLE XIII

### Notification of Decision

1. The Requested State shall promptly communicate to the Requesting State through the diplomatic channel the decision on the request for extradition.

2. The Requested State shall provide reasons for any partial or complete rejection of the request for extradition. It shall also provide the Requesting State with a copy of each opinion issued by its courts in connection with a request for extradition under this Treaty.

3. If a warrant or order for the extradition of a person sought has been issued by the competent authority and the person is not removed from the territory of the Requested State within such time as may be prescribed by the law of that State, that person may be set at liberty and the Requested State may subsequently refuse to extradite that person for that offense.

### ARTICLE XIV

### Surrender of Property

1. To the extent permitted under the law of the Requested State and subject to the rights of third parties, which shall be duly respected, all property which appears to have been acquired as a result of the offense in question or which may be required as evidence shall, if found, be seized and surrendered to the Requesting State if the person sought is extradited or if extradition, having been granted, cannot be carried out by reason of the death or escape of that person.

15

2. The Requested State may make the surrender of the property conditional upon satisfactory assurances from the Requesting State that the property will be returned to the Requested State as soon as practicable, and may defer its surrender if it is needed as evidence in the Requested State.

### ARTICLE XV

#### Transit

Transit through the territory of one of the Contracting Parties of a person surrendered to the other Contracting Party by a third State may be granted on request subject to the law of the State of transit and to such conditions as that State may impose. For the purpose of considering the request, the State of transit may require the submission of such information as it considers necessary.

### ARTICLE XVI

#### Representation

1. The Department of Justice of the United States shall advise, assist and represent, or provide for the representation of, Ireland in any proceedings in the United States arising out of a request for extradition made by Ireland.

2. The Attorney General of Ireland shall advise and assist, and represent, or provide for the representation of, the interests of the United States in any proceedings in Ireland arising out of a request for extradition made by the United States.

3. The functions referred to in this Article may be assumed by any successor agency designated by the State concerned.

16

## ARTICLE XVII

### Expenses

1.  The Requesting State shall bear all expenses arising out of the translation of documents and the transportation of the person sought from the place of the extradition proceedings to the Requesting State. Notwithstanding any law to the contrary, the Requested State shall bear all other expenses arising out of the request for extradition and the proceedings.

2.  The Requested State shall make no pecuniary claim against the Requesting State arising out of the arrest, detention, extradition proceedings and surrender of a person sought under this Treaty.

## ARTICLE XVIII

### Scope of Application

This Treaty shall apply to offenses committed before or after the date this Treaty enters into force, provided that extradition shall not be granted for an offense committed before the date this Treaty enters into force which was not an offense under the law of both Contracting Parties at the time of its commission.

## ARTICLE XIX

### Ratification, Entry into Force and Termination

1.  This Treaty shall be ratified and the instruments of ratification shall be exchanged in Dublin as soon as possible.

2.  This Treaty shall enter into force thirty days after the exchange of the instruments of ratification.[1]

---

[1] Dec. 15, 1984.

17

3. This Treaty shall terminate and replace any bilateral extradition agreement in force between the United States and Ireland.

4. Either Contracting Party may terminate this Treaty by giving written notice to the other Contracting Party at any time, and the termination shall become effective six months after the date of receipt of such notice.

IN WITNESS WHEREOF, the respective plenipotentiaries have signed this Treaty.

DONE in duplicate at Washington this thirteenth day of July, 1983.

FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA:

_William French Smith_ [1]

FOR THE GOVERNMENT OF
IRELAND:

_Peter D. Sutherland_ [2]

---

[1]William French Smith.
[2]Peter D. Sutherland.

**IRELAND**

Treaty on Extradition between Ireland and the United States of America, done at Washington on the 13th of July 1983, as amended by the Instrument as contemplated by article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003, signed 14 July 2005.

It is hereby certified that the documents attached hereto have been prepared in support of a request by Ireland for the extradition from the United States of America of Patrick McCabe, an Irish citizen, in order that he may be dealt with by the Irish Courts in accordance with law.

Signed and sealed at Dublin, this 21st day of May 2010



A person authorised by law to authenticate the Seal of the Minister for Foreign Affairs of Ireland pursuant to the Ministers and Secretaries Act 1924

Treaty on Extradition between Ireland and the United States of
America, done at Washington on the 13th of July 1983, as amended
by the Instrument as contemplated by article 3(2) of the Agreement
on Extradition between the United States of America and the
European Union signed 25 June 2003, signed 14 July 2005.

Request by Ireland for the Extradition from the United States of
America of Patrick McCabe an Irish citizen.

## INDEX

Part 1 : Information required pursuant to Article VIII Paragraph 2 of the Treaty on Extradition between Ireland and the United States of America.

Part 2 : Documents containing information required pursuant to Article VIII Paragraph 3 of the Treaty on Extradition between Ireland and the United States of America.

Part 3 : Material required pursuant to Article VIII Paragraph 4 of the Treaty on Extradition between Ireland and the United States of America.

**Part 1: Information required pursuant to Article VIII Paragraph 2 of the Treaty on Extradition between Ireland and the United States of America.**

(a) Information which will help to establish the identity of the person sought.

(b) The location of the person sought.

(c) A brief statement of the facts of the case.

## (a) Information which will help to establish the identity of the person sought.

Name:        Patrick McCabe

Born:        12 September 1935

Address :    866 ½ Walnut Street, Alameda, California, United States of America.

Birth certificate for Patrick McCabe is attached, which shows he was born at 102 Old Cabra Road, Dublin, Ireland on 12th September 1935.

## (b) The location of the person sought.

866 ½ Walnut Street, Alameda, California, United States of America. D/Garda John Clancy of the National Bureau of Criminal Investigation, Dublin, Ireland and Inspector Kevin Lavelle, Kildare Garda Station, Kildare, Ireland, received confirmation from Detective Sergeant Kevin McNiff, Alameda, Police Station, California, United States of America, that Patrick McCabe resided at 866 ½ Walnut Street, Alameda, California. When Patrick McCabe was interviewed in the United States in November 2007 by D/Garda Clancy and Inspector Lavelle he also gave 886½ Walnut Street, Alameda, California as his address.

# Deimhniú Breithe  Birth Certificate

Ar n-eisiúint de bhun na hAchta um Chlárú Sibhialta 2004

Issued in pursuance of the Civil Registration Act 2004

## Éire        Ireland

| | |
|---|---|
| Ainm/Name | **Patrick Joseph** |
| Sloinne/Surname | |
| Dáta Breithe/Date of Birth | **Thursday, 12 September 1935** |
| Gnéas/Sex | **Male** |
| Ionad Breithe/Place of Birth | **102 Old Cabra Road**<br>**Dublin** |

| | Máthair / Mother | Athair / Father |
|---|---|---|
| Ainm/Name | Mary Brigid | Philip Joseph |
| Sloinne/Surname | McCabe | McCabe |
| Sloinne Breithe/Birth Surname | McCounley | |
| Sloinnte Roimhe Seo/ Former Surnames | | |
| Sloinne Breithe Mháthair Tuismitheora / Parents' Mother's Birth Surname | | |
| Slí Bheatha/Occupation | | Civil Servant |
| Seoladh/Address | | 102 Old Cabra Road |

| | Faisnéiseoir A/Informant A | Faisnéiseoir B/Informant B |
|---|---|---|
| Ainm/Name | Philip Joseph | |
| Sloinne/Surname | McCabe | |
| Cáilíocht/Qualification | Father | |
| Seoladh/Address | 102 Old Cabra Road | |
| | | Sonraí Neamh-chláraithe / Details Not Registered |
| | Philip J. McCabe | |
| | Sínithe ag/Signed by | Sínithe ag/Signed by |

Cláraitheoir/Registrar

Cláraíodh i gCeantar an Chláraitheora / Registered in the Registrar's District

Ceantar an Chláraitheora Maoirseachta / Superintendent Registrar's District

Contae/County

Dáta an Chlárúcháin nó Athchláraithe (más maidir) / Date of Registration or Re-registration (if applicable)

Clár Uimhir/Registration Number

P.J. O'Dowd

Finglas & Glasnevin No. 1

Dublin

Co. Dublin

30 September 1935

5317441

Deimhnítear gur thiomsaíodh na sonraí seo ó clárleabhar coinnithe faoi alt 13 den Acht um Chlárú Sibhialta 2004/Certified to be compiled from a register maintained under section 13 of the Civil Registration Act 2004

Eisithe ag/Issued by **Catherine Keane, General Register Office**    Dáta /Date **15 October 2009**

Is cion trom é an deimhniú seo a athrú nó é a úsaid tar éis a athraithe / To alter this certificate or to use it as altered is a serious offence

## (c) A brief statement of the facts of the case.

The extradition of Patrick McCabe to Ireland from the United States of America is sought for the purpose of prosecuting Patrick McCabe in respect of ten charges, comprising nine counts of indecent assault and one count of attempted indecent assault. The alleged incidents arose in respect of six complainants and cover a period from January 1973 to September 1981. The investigations into the allegations against Patrick McCabe were carried out by An Garda Siochana (Irish Police). For ease of reference in this request each alleged offence is numbered in chronological order and the statement of facts is headed with a reference to the number and the relevant complainant.

### Offences 1 and 2- Complainant: Thomas Lawrence

It is alleged that on two separate occasions on unknown dates between 1 January 1973 and 30 June 1975 at Central Model School, Marlborough Street, Dublin 1, Patrick McCabe, the requested person indecently assaulted and attempted to indecently assault Thomas Lawrence (date of birth 1 July 1961), a male. The alleged facts are that Thomas Lawrence was a pupil of the Central Model School, which the then Father Patrick McCabe (who was attached to the adjacent Pro-Cathedral) regularly attended to provide religious instruction. Thomas Lawrence states that he was in a hallway of the school having been put outside a class for being disruptive when Father McCabe appeared, pushed him up against a wall and began rubbing his (McCabe's) groin against Thomas Lawrence's body. Thomas Lawrence felt that Father McCabe's penis was erect. Father McCabe used his hand to rub Thomas Lawrence's groin through Lawrence's trousers. Thomas Lawrence states that Father McCabe pulled down his fly and had his own penis in his hand and pushed Thomas Lawrence's hand onto his (McCabe's) penis. McCabe continued to push his own penis while keeping Thomas Lawrence pinned to the wall until he moaned and pulled out a hanky, which he put onto his penis and let Thomas Lawrence go. Thomas Lawrence states that sometime after this incident, he was again outside the door of a class for being disruptive when Father McCabe appeared. Father McCabe put his hand on a coat rack where Tomas Lawrence was standing and he pushed his groin area against Thomas Lawrence. As Father McCabe was pushing himself against Thomas Lawrence, Thomas Lawrence slipped and fell on the coat rack rail causing a noise that brought the School Principal and causing Father McCabe to move away.

### Offences 3, 4 and 5- Complainant: Andrew Canavan

It is alleged that on three separate occasions on unknown dates between 7 December 1974 and 1 September 1977 at the parochial house, Marlborough Street, Dublin 1, Patrick McCabe, the requested person indecently assaulted Andrew Canavan (date of birth 7 December 1964), a male. The alleged facts are that Andrew Canavan states that he attended mass and confession in the Pro-Cathedral Dublin 1 in the mid 1970s when Father Patrick McCabe was a curate attached to the Pro-Cathedral. On three occasions over a period of a number of weeks, Andrew Canavan states that he was taken to the adjacent parochial house by Father Patrick McCabe to discuss a prospective trip to Australia. On the first two occasions, he alleges that Father McCabe pushed him up against a wall in the hallway of the parochial house and after

fumbling underneath his clothes; Father McCabe rubbed his body, moving up and down, against Andrew Canavan's body while placing his hands on Andrew Canavan's bottom. On both occasions Andrew Canavan felt something hard pressed against his ribs. On the third occasion Andrew Canavan states that he was placed on his back on the floor of the living room by Father McCabe, who then got on top of Andrew Canavan and moved up and down on top of him and kissed and licked his face. Andrew Canavan screamed and was released by Father McCabe and left the house with his brother who was also present

### Offence 6 – Complainant: James Moran

It is alleged that on a date unknown between 1 January 1977 and 1 April 1977 at the Dominican College, Newbridge, County Kildare, Patrick McCabe, the requested person indecently assaulted James Moran (date of birth 3 February 1963), a male. The alleged facts are that after a lunch with James Moran's parents at his family home, Father Patrick McCabe (a then Roman Catholic Priest attached to the Dublin Archdiocese) called to the boarding school that James Moran attended and brought James Moran (who was 13 or 14 at the time) into his car outside the school. This was James Moran's first meeting with Father McCabe, who introduced himself as a friend of the family. James Moran alleges that Father McCabe reclined both seats, took out his penis and turned James Moran on his left side and attempted to penetrate him. He alleges that Father McCabe, while masturbating tried to pull James Moran's head towards his groin and that Father McCabe fondled James Moran's groin area several times. James Moran alleges that he was in the car for over an hour and that he tried to open the car but it was locked.

### Offence 7 - Complainant: Frank LaCumbre

It is alleged that on a date unknown between 13 July 1979 and 6 September 1981 at 16 Brookwood Grove, Artane, Dublin 5, County Dublin, Patrick McCabe, the requested person indecently assaulted Frank LaCumbre (date of birth 22 October 1966), a male. The alleged facts are that when Frank LaCumbre was approximately 13 or 14 and cycling a new bike, he met Father Patrick McCabe outside the church in Artane, where McCabe was curate. Father McCabe then rang Frank LaCumbre's mother to ask if her son would come to his house to allow him take a photo for the parish magazine. Frank LaCumbre states that in Father McCabe's house at 16 Brookwood Grove, Artane, having photographed him, Father McCabe offered him tea. He states that Father McCabe sat very close beside him on a couch where he fondled Frank LaCumbre's penis with his hand from outside his clothing, Frank LaCumbre states that he pushed Father McCabe away but that McCabe then put his right leg over Frank's legs. Again Frank LaCumbre pushed him away and demanded that his bike be returned to him so that he could leave.

### Offences 8 and 9 – Complainant Barry Ennis

It is alleged that on two occasions on dates unknown in or about February 1981 at 16 Brookwood Grove, Artane, Dublin 5, County Dublin, Patrick McCabe, the requested person indecently assaulted Barry Ennis (date of birth 22 May 1969), a male. The alleged facts are that in early 1981 when Barry Ennis was eleven, he visited the home of Father Patrick McCabe (a then Roman Catholic Priest attached to the Dublin

Archdiocese) at 16 Brookwood Grove, Artane on a number of occasions to collect leaflets for distribution throughout the parish. He states that he got involved in this activity through a classmate Anthony Corrigan. He alleges that in the course of his first visit to Father McCabe's house, he was shown around the house by Father McCabe who brought him to the back upstairs bedroom with two other boys, one of whom was Anthony Corrigan. He alleges that Father McCabe pushed him onto the bed and climbed on top of him and rubbed himself up and down on him at which Barry Ennis began to cry. Barry Ennis alleges that on subsequent visits to the house over the following two months, Father McCabe kissed him on his mouth with his tongue and on one occasion he alleges that Father McCabe dropped two other boys home and brought Barry Ennis back to his house and proceeded to kiss him. Barry Ennis had chewing gum in his mouth and he alleges that Father McCabe rolled the gum with his tongue around Barry Ennis's mouth.

### Offence 10 – Complainant Anthony Corrigan

It is alleged that on a date unknown in or about February 1981 at 16 Brookwood Grove, Artane, Dublin 5, County Dublin, Patrick McCabe, the requested person indecently assaulted Anthony Corrigan (date of birth 4 May 1969), a male. The alleged facts are that Anthony Corrigan states that in early 1981 when he was eleven he and a classmate Barry Ennis volunteered to deliver leaflets around the parish after Father Patrick McCabe (a then Roman Catholic Priest attached to the Dublin Archdiocese) called to their school to recruit boys for this purpose. Anthony Corrigan recalls that Father McCabe drove the boys to his house at 16 Brookwood Grove, Artane, Dublin 5 in his Blue Volvo 240 after he called to their houses for permission from their mothers. He alleges that Father McCabe brought him to the back bedroom of the house and once there he started tickling Anthony Corrigan's upper body and Anthony Corrigan ended up on the bed with Father McCabe on top of him. Anthony Corrigan alleges that Father McCabe was rubbing his own body up against Anthony Corrigan's body and was breathing heavily. He alleges that Father McCabe was kissing his cheek and neck. Anthony Corrigan relates that he struggled to release himself and Father McCabe got up off him.

**Part 2 : Documents containing information required pursuant to Article VIII Paragraph 3 of the Treaty on Extradition between Ireland and the United States of America.**

(a) As accurate a description as possible of the person sought together with information, which will assist in establishing the person's identity and nationality.

(b) A statement of the pertinent facts of the case indicating the time and place of commission of the offences.

(c) The legal description of the offences and statements of the relevant laws and maximum penalties therefor, texts of the law and a statement of the relevant Law.

**(a) As accurate, a description as possible of the person sought together with information, which will assist in establishing the person's identity and nationality.**

An original birth certificate of Patrick McCabe is attached showing that Mr. McCabe was born at 102 Old Cabra Road, Dublin, Ireland on 12 September 1935. Sergeant Tom Clancy who met Patrick McCabe in California in November 2007 describes him as approximately 5 foot 9 inches. He wore spectacles and was bald on the top of his head but with a good amount of white hair on the sides and back of his head. Patrick McCabe was introduced to Gardai by Detective Sergeant Kevin McNiff of Alameda Police Department in San Francisco

**(b) A statement of the pertinent facts of the case indicating the time and place of commission of the offences.**

### Offences 1 and 2- Complainant: Thomas Lawrence

It is alleged that on two separate occasions on unknown dates between 1 January 1973 and 30 June 1975 at Central Model School, Marlborough Street, Dublin 1, Patrick McCabe, the requested person indecently assaulted and attempted to indecently assault Thomas Lawrence (date of birth 1 July 1961), a male.

The investigation of this alleged offence began on 15 June 2009 when Thomas Lawrence called to Store Street Garda Station, Dublin stating he wished to make a complaint of sexual abuse. Arrangements were made to take a statement of complaint from Thomas Lawrence. In his statement Thomas Lawrence outlines that he was attending the Rutland Street School for his primary school education. He then got expelled from this school and after a number of months he started attending what he called the Marlborough Street School (which is called the Central Model School) located in the grounds of the Department of Education on Marlborough Street. Thomas Lawrence stated that a priest called Father Patrick McCabe would regularly attend the school. Thomas Lawrence stated that while attending this school he attended special classes in a separate part of the school, and one day while attending one of these classes he got put outside the door of the class for being disruptive. He said he was standing in a hallway when Father McCabe appeared. He said Father McCabe backed him up against a wall and he could not move. Thomas Lawrence said that Father McCabe started whispering to him that it was ok, and that he started pushing his body against his. Thomas Lawrence said that Father McCabe started rubbing himself against him. He started rubbing his groin against Thomas Lawrence's stomach. Thomas Lawrence felt Father McCabe's penis was erect almost immediately. Father McCabe then moved both of his hands onto Thomas Lawrence's shoulders and was trying to make him move also. He continued to rub his groin against Thomas Lawrence, telling him it was ok. Father McCabe then moved one of his hands down onto Thomas Lawrence's groin area rubbing him through his trousers, for a few seconds. Thomas Lawrence said that he then heard a trousers fly going down then Father McCabe had his own penis in his hand. Thomas Lawrence was unable to move away as Father McCabe pushed his knee between Thomas Lawrence's legs and he was tight up against him. Father McCabe kept pushing Thomas Lawrence's head around to look at his penis. Thomas Lawrence states that he

tried not to look and he didn't want to look, but Father McCabe kept pushing his face down to look. He states that Father McCabe seemed to be enjoying himself. Father McCabe then grabbed Thomas Lawrence's hand and pushed it down to touch off his penis. Father McCabe then squeezed Thomas Lawrence's hand with his and made Thomas Lawrence squeeze the top of Father McCabe's penis. This went on for a few seconds. Father McCabe then let Thomas Lawrence's hand go. Father McCabe then grabbed his penis with his own hand, and was pulling himself, but he kept Thomas Lawrence pinned to the wall. Thomas Lawrence then heard Father McCabe moan and reach into his pocket and take out a hanky. He put the hanky onto his penis and he let Thomas Lawrence go. Thomas Lawrence then ran up the stairs and as he did he looked back to see if he was following him, but he saw Father McCabe wiping the floor and wall with the hanky. Father McCabe then left. Thomas Lawrence ran from the school once he saw Father McCabe was gone. He hid in a car park until it was time to go home. He went home as normal but he did not tell anyone about this incident with Father McCabe.

During the course of this statement Thomas Lawrence also outlined one incident of Attempted Indecent Assault. He states that some time after the first incident he was put outside the door of class again for being disruptive. The classroom was near the Principal's office. He was standing there for a few minutes when he heard someone coming and Father McCabe appeared around the corner. Thomas Lawrence was standing in the middle of a coat rack when Father McCabe said "hello Tommy outside again". Father McCabe started moving towards him. Father McCabe put one hand on top of the coat rack where Thomas Lawrence was standing and started pushing himself against Thomas Lawrence. Father McCabe crouched down and pushed his groin area against Thomas Lawrence. As Father McCabe was pushing himself against Thomas Lawrence, Thomas Lawrence tripped on the rail of the coat rack and fell on the ground backwards. As a result there was a noise and the Principal who Thomas Lawrence recalls as a Mr O'Hara came out. With this Father McCabe moved away From Thomas Lawrence and went into the Principal's Office.

Thomas Lawrence felt that he could not tell his parents about the allegations because he was in fear of his father who he said "would go mad." He said that he tried to deal with it himself, by drinking, taking drugs and blocking it out and that the months prior to making the complaint were the first time he has been free from drink and drugs and the first time his head was clear enough to make a statement.

Gardai interviewed a number of people arising from Thomas Lawrence's statement of complaint. Michael Flanagan was a teacher in the Central Model School from 1973 until he retired in August 2009 and is currently working as a substitute teacher at the school covering sick leave. Michael Flanagan checked the relevant roll books and confirmed that Thomas Lawrence attended the Central Model School from 8th January 1973 to 30th June 1975. Felim MacAmhalai was Thomas Lawrence's teacher at the time of the alleged incidents and recalls teaching Thomas Lawrence in fourth and fifth class. He was unaware of any incident involving Thomas Lawrence. Felim MacAmhalai confirms what Thomas Lawrence describes as the location of the classroom to the Principal's office. He also recalls Thomas Lawrence attending a special extra class for an hour or two each week to help with his reading. He also confirmed that Father Patrick McCabe was a priest attached to the Pro Cathedral who would have been in around the school approximately twice a week. Felim

MacAmhalai advised that the Principal of the school in the mid 1970s was a Mr P J Haren, who has since passed away. Felim MacAmhalai states that some of the children called Mr Haren, Mr O'Hara because they couldn't pronounce Mr Haren.

Thomas Lawrence's sister Marie Creed stated that following an incident where Thomas had taken an overdose of alcohol and pills and ended up in hospital in April or May 2009, Thomas Lawrence told her that he had been sexually abused by a priest at the Marlborough Street School. He did not tell her any of the details of the abuse. Marie Creed states that their father was a very strict man and that Thomas would not have been able to tell their parents about the alleged abuse.

On completion of the Garda investigation, a file was submitted to the Director of Public Prosecutions in respect of the allegations of Thomas Lawrence. The DPP directed that Patrick McCabe should be prosecuted for one count of indecent assault and one count of attempted indecent assault against Thomas Lawrence.

### Offences 3, 4 and 5- Complainant: Andrew Canavan

It is alleged that on three separate occasions on unknown dates between 7 December 1974 and 1 September 1977 at the parochial house, Marlborough Street, Dublin 1, Patrick McCabe, the requested person indecently assaulted Andrew Canavan (date of birth 7 December 1964), a male.

The investigation of this alleged offence began on 30 December 2008 when Andrew Canavan called to Store Street Garda Station, Dublin 1 in the company of Mr. Joseph McDonagh of the Child Protection Service of the Dublin Archdiocese to make an allegation of clerical sexual abuse. Arrangements were made to take a statement of complaint from Andrew Canavan. In the course of his statement, Andrew Canavan outlined three incidents of sexual abuse. He related that he was born in London of Irish parents and in the mid 1970s, he and his mother two brothers and a sister moved back to Ireland and lived for some time with his grandfather, Edward Sherlock, in Dublin 7, before the family moved to Ballymun. While living with his grandfather, he would often attend mass in the Pro-Cathedral, Marlborough Street, Dublin 1. He outlines that one day he had just gone to confession in the Pro-Cathedral and following confession he was sitting down saying his prayers when Father Patrick McCabe, a then curate in the parish, sat down and introduced himself. Father McCabe told Andrew Canavan that he was organising a trip to Australia and that he was going to take ten lucky children with him. Father McCabe took Andrew to his private residence to discuss the matter further. Andrew describes the residence as being to the right of the pro-Cathedral with a big red door and relates that there was a laneway/corridor from the church into this adjacent house. Father McCabe and Andrew Canavan spoke about Australia for about ten minutes in his private residence before Father McCabe led Andrew Canavan to the front door. When Andrew Canavan got to the hallway he states that Father McCabe pushed him up against the wall and then started to fumble underneath his (McCabe's) clothes, he was wearing what Andrew Canavan remembers as a long black cloak. Andrew Canavan thinks that Father McCabe took his penis from his trousers and underwear. Andrew Canavan did not see Father McCabe's penis. Father McCabe pressed up against Andrew Canavan and McCabe and put his hands around Andrew Canavan's bum. He started moving up and down against Andrew Canavan, who recalls feeling something bumpy and hard

against his rib cage. He states that when Father McCabe was moving against him first it was fast and then it slowed down and stopped. Father McCabe then let Andrew out the door and told him to come back the next week to see if he had been selected to go to Australia.

Andrew Canavan states that approximately a week later he returned to the church and again went to confession and while he was saying his prayers after confession, Father McCabe approached him and said he had something to discuss with him and brought him to his private living room area in the parochial house, where he told him he was one of the ten lucky children chosen to go to Australia. Father McCabe had his hand on Andrew Canavan's knee while he told him this. Andrew Canavan was then escorted towards the front door and in the hallway; Father McCabe pushed him up against the wall. Father McCabe fumbled underneath his clothes and pressed up against Andrew Canavan, who remembers something hard pressed against his ribs. Father McCabe moved his hands onto Andrew Canavan's bum and held them there. Father McCabe moved up and down against Andrew Canavan at first fast and then after a while he slowed down. Andrew Canavan went home and told his older brother James (date of birth 8 August 1962) about the trip to Australia.

The Sunday following this incident Andrew Canavan brought his brother James to the Pro-Cathedral for mass so that James could also go to Australia and after mass they approached Father McCabe who brought them to his living room in the parochial house. Once inside the living room, Father McCabe told James Canavan to go to the window and to look out of it and to stay there and not to look back into the room. Father McCabe took Andrew Canavan by the arms and put him lying on the ground. Father McCabe then got on top of Andrew Canavan, who felt as if he was being crushed and found it hard to breathe. Father McCabe started to gyrate on top of Andrew Canavan who could feel something hard pressing against his stomach area. Father McCabe started to move up Andrew Canavan's body and as he did so he began kissing and licking Andrew Canavan's face. As Father McCabe moved, Andrew Canavan found it harder to breath and at some stage Andrew Canavan groaned and Father McCabe put his fingers to Andrew's mouth and said "Shh" to tell him to be quiet. Andrew Canavan relates that at this stage he was very frightened as he found it hard to breath and he pushed Father McCabe's hands away from his mouth and then he let out a big scream. Father McCabe immediately lifted him off the ground and James Canavan turned around and Andrew told James that he wanted to go. Father McCabe took two bottles of orange drink from a press and gave them to James and Andrew Canavan and told them to be good boys and not to tell anyone. Andrew Canavan states that when he returned home that he told his Grandfather who was very annoyed but said he didn't want any trouble from the priests and it was never discussed again in the household.

Andrew Canavan moved to England in 1985 and on a return visit to Dublin in mid 2008, he walked past the Pro-Cathedral and on seeing the two windows in the adjacent parochial house, he decided to tell his mother about the sexual assaults. His mother reported it to her local church who in turn contacted Joseph McDonagh of the Child Protection Services of the Dublin Arch-Diocese who accompanied Andrew Canavan to Store Street Garda Station to make a complaint in December 2008. Andrew Canavan states that he was ashamed of what had happened, that he felt dirty

and had felt that it was his fault. He states that it has taken him nearly 30 years - until 6 months before his complaint to Gardai – to be able to talk about it properly.

Gardai interviewed a number of people arising from Andrew Canavan's statement of complaint. Andrew Canavan's brother James Canavan recalled being in Father McCabe's room and being told to look out the window. He recalls seeing Father McCabe get on top of Andrew and move up and down and that Andrew screamed and that before they left, Father McCabe gave them something. Andrew Canavan's mother Margaret Wallace recalls Andrew talking about being selected for a trip to Australia she recalls that there was talk of a priest with Andrew Canavan's grandfather (her father) who said there would be no more talk of priests in his house. The Dublin Archdiocese has confirmed that Patrick McCabe was a curate attached to the Pro-Cathedral between January 1971 and July 1979. The current parish priest of the Pro-Cathedral has confirmed that Andrew Canavan's description of the areas in the Pro-Cathedral and the parochial house corresponds to the actual layout. Andrew Canavan has suffered from depression in his adult life and he related to a consultant psychiatrist he attended in 1996 that he had been sexually assaulted by a priest after his family had returned to Ireland.

On completion of the Garda investigation, a file was submitted to the Director of Public Prosecutions in respect of the allegations of Anthony Corrigan. The DPP directed that Patrick McCabe should be prosecuted for three counts of indecent assault against Andrew Canavan.

### Offence 6 – Complainant: James Moran

It is alleged that on a date unknown between 1 January 1977 and 1 April 1977 at the Dominican College, Newbridge, County Kildare, Patrick McCabe, the requested person indecently assaulted James Moran (born 3 February 1963), a male. The facts of the case are as follows:

In January 1987 a complaint was made to Gardai by James Moran that he had been indecently assaulted by Patrick McCabe at the Dominican College, Newbridge, Co. Kildare in early 1977. Gardai took statements of complaint from James Moran in 1988 and 2003. James Moran states that he was a boarder at the Dominican College, Newbridge. He states that one afternoon in either January or February 1977 (when he was 13 or 14) at about 4.45pm he was playing tip-rugby with fellow students when a student came out and told him an uncle of his was there to visit him. He went to the main car park of the college and saw a priest that he did not know walk towards him. The priest introduced himself as Father Patrick McCabe said he was a friend of the family and proposed that James Moran get into the car for a chat, which James Moran did. James Moran relates that the car was a red Daff. He said Father McCabe got into the driver's seat and he was in the passenger seat. He alleges that Father McCabe lowered back both seats and then opened his own trousers and took out his penis. He alleges Father McCabe took down James Moran's trousers and underpants and turned James Moran on his left side and attempted to penetrate him. James Moran says that he turned back around. He said he tried to open the door but it was locked and then to open the window but it wasn't working. He said Father McCabe tried to pull his head down to Father McCabe's groin but that he resisted. He alleges that Father McCabe was masturbating while doing this and that he also fondled James Moran's groin area

several times. James Moran states that he does not know if Father McCabe ejaculated but that he did himself. He states this was not through Father McCabe's actions and that it was the first time he had ejaculated. He estimated that they were in the car for over an hour. He said when he got out of the car; he reported the matter immediately to the Dean of the college. He said the next day was a Sunday and he was collected by his father who drove him home and when they arrived home, a Father Ambrose Farrington, a Cistercian priest who was a friend of the family was there. James Moran states that he sat in Father Ambrose's car and told him what had happened the previous day and that he recalls giving Father Ambrose two pounds to say a mass for Father McCabe. He also told his Aunty Ann, what had happened in response to her questions. James Moran gave Gardai a letter and an envelope, which he stated was sent to him by Father McCabe. The envelope was addressed to "Master James Moran (pupil), Dominican College, Newbridge, Co. Kildare." The letter, undated apart from the word "Monday," was on paper with a printed heading "Father Patrick McCabe, 82 Marlboro Street, Dublin 1.". It read *"Dear James. Hope all went well. Glad to have met you . I forgot to ask you did you remember the day after school in Athy when I was visiting the secondary school and met you? You are always welcome to drop a line, ring or call. Sometimes I go beagling down Kildare way on Sunday afternoons. Keep smiling anyway James, there is a lot of great things in you, and you will do good for God and people. Love to hear you sometime on the guitar- keep it up. Keep praying and keep smiling. Yours, Fr McC"*

Gardai took statements from Father Ambrose Farrington and James Moran's Aunt, Ann Hennessy (James Moran's parents were deceased). Father Ambrose Farrington stated that at the time of the alleged incident he was based at Bolton Abbey, Co. Kildare and was in charge of guests and retreatians that came to the Abbey. He stated that one of the retretians in the 1970s was Father Patrick McCabe and he stayed a week. He states he was subsequently contacted by Teresa Moran (mother of James Moran) and asked to call over and speak to James Moran. He states that he knew the Moran family well. He relates that he did go to the Moran's and that James Moran told him he had been sexually abused by Father McCabe at the Dominican College in Newbridge and that he had reported it to the College authorities. Gardai also took a statement from Ann Hennessy, aunt of James Moran, who confirmed that on a Saturday in January or February 1977, Father McCabe had been for lunch at the Moran's home. She recalls Father McCabe remarking on the photographs of James Moran and his brother and being told that they were boarding in the Dominican College, Newbridge. She recalls two telephone calls to Teresa Moran from Newbridge College that evening enquiring about Father McCabe. She recalls James coming home the next day and talking with Brother Ambrose Farrington. She states that she then talked to James in the back pantry and he told her Father McCabe had sexually abused him in his car and he couldn't get out because the doors were locked. She recalls that James was very upset and crying.

On 5 November 2007, Inspector Kevin Lavelle and Detective Garda John Clancy travelled to San Francisco, California, U.S.A, where they met with Detective Sergeant Kevin McNiff of the Alameda Police department, San Francisco who had spoken to Patrick McCabe who, despite having refused previous requests, had now agreed to meet with Gardai. The Gardai were introduced by D/Sergeant McNiff to Patrick McCabe as members of the Irish Police Force there to speak to him about certain allegations of child sexual abuse made against him in Dublin. Gardai met with Patrick

McCabe three times on 7, 8 and 9 of November 2007. On each occasion, Patrick McCabe was there of his own free will and was informed that he could leave at any time. In interview Patrick McCabe confirmed that he held a number of appointments as a priest in the Dublin Archdiocese from circa 1961 to 1983. In 1983, he moved to California where he served as a priest until 1988 when he states that he was called home to Ireland and told to sign a piece of paper and left the priesthood. He states that this was not by choice and he accepts that his leaving was related to allegations of child sexual abuse. In the course of the interviews, the allegations of James Moran were put to Patrick McCabe and Patrick McCabe admitted knowing James Moran, knowing James Moran's mother and to being in James Moran's family home. He said he was introduced to the Moran's by a Michael Wall, who he later explained was also a priest. He also admits visiting Newbridge College Boarding School and speaking with James Moran in his car at the college. He stated he met with James at Newbridge College at the request of James' mother who had asked him to speak with James as he had psychological problems. When asked to tell Gardai in his own words about the visit with James Moran, Patrick McCabe stated "He came out to see me. He met all my requirements to match up my fetish and I embraced him and fondled him with no further sexual behaviour. We had a conversation and just parted". When asked what he meant, he said "He was handsome, and had a nice shirt and tie, maybe a suit, I don't know". Patrick McCabe was asked what he meant by fetish to which he replied "Something that arouses me". He continued that he was aroused in an asexual way which he explained was touching the clothing on the outside of the person. When asked if an embrace, as he used it, included a kiss, he stated not necessarily but perhaps. He said he had no recollection of ever kissing a young boy. When part of James Moran's statement was read to him, Patrick McCabe stated the allegation was a fabrication. When part of Ann Hennessy's statement was read to him and he was asked to respond, Patrick McCabe answered "I had a sexual attraction to him, and he possibly had the same to me and that might have been the first time, a first for him". When asked what he meant by this answer he stated "He might never have understood sexual attraction." When asked if there was more than sexual attraction, he replied definitely not. Patrick McCabe initially denied communicating with James Moran after the day he met him at Newbridge College, but on being shown a letter, he acknowledged it was his handwriting but he said he had no recollection of writing the letter. Patrick McCabe was also asked if he communicated with Mrs Teresa Moran after meeting and talking to James Moran, given that he asserts that he visited her son at her request to address psychological problems. He replied that he didn't contact her about it and said it was not that sort of request.

Files in respect of the allegations made by James Moran were submitted to the Director of Public Prosecutions (DPP) in 1988 and 2003 and the DPP directed no prosecution at that stage as Patrick McCabe had left the jurisdiction in 1988 and was therefore not available to Gardai for interview and the allegations had not been put to him. Patrick McCabe's whereabouts were unknown until 2003 when it was ascertained via Interpol that he was residing at 955 Shore Point Court, Apt 112 Alameda, California. Patrick McCabe was approached by the police in California and told of the allegations made against him by James Moran and the Garda request to interview him and he refused to meet with investigating members for the purpose of interview. In the absence of the consent of the suspect to interview, the Garda Siochana could not enter the U.S. for this purpose. The request was renewed in 2007 and Patrick McCabe consented to be interviewed by Gardai. Gardai travelled to

California to interview him in November 2007. A further file with the memoranda of interview was submitted to the Director of Public Prosecutions who directed that Patrick McCabe should be prosecuted for one count of indecent assault on James Moran.

### Offence 7 – Complainant: Frank LaCumbre

It is alleged that on a date unknown between 13 July 1979 and 6 September 1981 at 16 Brookwood Grove, Artane, Dublin 5, County Dublin, Patrick McCabe, the requested person indecently assaulted Frank LaCumbre (date of birth 22 October 1966), a male. The facts are as follows:

On 6 March 2009 a complaint was made to Gardai by Frank LaCumbre that he had been indecently assaulted by Patrick McCabe at 16 Brookwood Grove, Artane, Dublin 5 between July 1979 and September 1981. Gardai took a statement of complaint from Frank LaCumbre on 6 March 2009 and on 29 April 2009 Frank LaCumbre pointed out to Gardai the house where the alleged incident took place. The house he identified was 16 Brookwood Grove, Artane, Dublin. In his statement, Frank LaCumbre states that when he was approximately 13 or 14, one summer's day he was out with a friend cycling a new bike his parents had bought for him, near Artane Church, his local church. They met another friend who was cutting the grass for Artane Parish and while they were chatting Fr McCabe, whom Frank LaCumbre know from going to mass to be a priest in Artane parish, came out of the church. He had never talked to him before. Fr McCabe talked to them and 2/3 days later Fr McCabe rang his mother to asking if he could take a take a picture of her son on his bike for the parish magazine. Frank LaCumbre's mother agreed and sent him to Fr McCabe's house with his bike at approximately six o'clock. Father McCabe put the bike into the garage and locked the garage door and told Frank LaCumbre to come inside into the front room where McCabe showed Frank LaCumbre 2/3 slides of other children and then produced a camera and took a picture of Frank LaCumbre. He then took Frank LaCumbre into the back room in the house and sat him down on the couch and went out and put the kettle on. When he came back into the room he sat down right beside Frank LaCumbre on the couch with his leg against Frank LaCumbre's leg. Frank LaCumbre alleges that Father McCabe put his left arm around his shoulders and pulled Frank into him and started rubbing the inside of Frank's leg with his right hand. Frank LaCumbre states that he told him to stop but McCabe then put his hand on Frank's penis. Frank LaCumbre pushed McCabe's right hand away and told him to stop. He states that McCabe then threw his right leg over Frank. Frank LaCumbre states that he managed to push McCabe off. He states he pushed him to the floor. Frank LaCumbre then jumped up off the couch and told McCabe to open the garage and take his bike out. McCabe tried to calm Frank LaCumbre, but he insisted that McCabe get his bike and threatened to call his father. McCabe got the bike and Frank LaCumbre left. Frank LaCumbre states that he did not report the matter earlier as he feared his father would create a scene and while he know what was happening was wrong he was young and thought reporting it might be blowing it out of proportion. The incident with Father McCabe came up in the context of marriage counselling and led to the report to Gardai

Gardai interviewed a number of people arising from Frank LaCumbre's statement of complaint. Frank LaCumbre's wife of 22 years, Anne LaCumbre, states that Frank

had mentioned an incident with a priest over a number of years but he only told her details of the incident of Father McCabe having fondled his penis on a couch in his house after taking a photograph of him, in the course of marriage counselling. Frank LaCumbre's mother -also Anne LaCumbre- recalls Father McCabe's telephone request that her son attend his house to be photographed with his new bike and that she encouraged him to go. She recalls that Frank LaCumbre told her of the incident approximately ten years before the complaint to Gardai. Sinead McDonnell, child protection officer of the Archdiocese of Dublin has confirmed in writing that Patrick McCabe was a curate in the parish of Artane in Dublin from 14 July 1979 to 5 September 1981 and he resided during that time at 16 Brookwood Grove.

On completion of the Garda investigation, a file was submitted to the Director of Public Prosecutions in respect of the allegations of Frank LaCumbre. The DPP directed that Patrick McCabe should be prosecuted for one count of indecent assault against Frank LaCumbre.

### Offences 8 and 9- Complainant: Barry Ennis

It is alleged that on two occasions on dates unknown in or about February 1981 at 16 Brookwood Grove, Artane, Dublin 5, County Dublin, Patrick McCabe, the requested person indecently assaulted Barry Ennis (date of birth 22 May 1969), a male. The facts are as follows:

The investigation of this alleged offence arose from the public airing of allegations of child sexual abuse by religious personnel going back many years. A number of victims groups and individuals publicly encouraged victims to come forward and report their abuse to An Garda Siochana. An investigation team was established by the Garda Commissioner and an incident room and a telephone hotline was established at the National Bureau of Criminal Investigation. As a result of a call from the complainant in this case, Barry Ennis, to the hotline for clerical sexual abuse, Gardai called to his home and took a statement of complaint on 2 November 2002. Barry Ennis made a full statement to Gardai alleging that Patrick McCabe (a then Roman Catholic Priest attached to the Dublin Archdiocese) had indecently assaulted him in the Spring of 1981 at 16 Brookwood Grove, Artane, Dublin. On 9 February 2003, Barry Ennis pointed to Gardai out the location where the alleged assaults took place, being 16 Brookwood Grove, Artane. He also identified Patrick McCabe and his classmate Anthony Corrigan in a photograph shown to him by Gardai that had been taken on the occasion of Anthony Corrigan's confirmation.

In his statement, Barry Ennis stated that when he was in sixth class in Chanel Primary School in Coolock, Dublin in 1981 he visited the house of Father Patrick McCabe at 16 Brookwood Grove, Artane, Dublin to collect leaflets for distribution in the parish. He stated that he got involved in this activity through a friend and classmate of his Anthony Corrigan, who he states had already been delivering these leaflets. He recalled being collected from school with Anthony Corrigan and another boy (whose name he does not recall) by Father McCabe in a blue Volvo 240 motor car and being taken to Father McCabe's house opposite the church in Artane. He alleged that during the course of this first visit to the house Father McCabe showed him around the house and when he brought him to the back upstairs room to show him a dog in the back

garden that Father McCabe pushed him onto the bed and climbed on top of him. He alleged that Father McCabe rubbed himself up and down on him. Barry Ennis related that he started to cry and Father McCabe got up off him. Barry Ennis stated that the two other boys (Anthony Corrigan and one other boy) were in the room at the time and they told him that it was okay that he did that all the time. Barry Ennis stated that he continued to visit Father McCabe at this house over the following two months and that Father McCabe progressed to kissing him on the mouth with his tongue and that every time he visited Father McCabe's house he would kiss him or touch him in some manner. Barry Ennis stated that Father McCabe built up a friendship with his family and on one occasion stayed to dinner. Barry Ennis stated that Father McCabe had a slide projector in his sitting room and he would pull the curtains and show the children slides of places he had visited. He recalled one occasion being in the house with his sister Belinda and he alleged that Father McCabe kissed him on the lips. He stated it wasn't a peck yet it wasn't a prolonged kiss either. He further stated that on one occasion when Father McCabe dropped two other boys home, (who he recalls being Anthony Corrigan and a Damian Heffernan from Clontarf) and was then to drop Barry Ennis home, he said he had to go back to his house for something. Barry Ennis alleged that once in the house, Father McCabe brought Barry Ennis into the sitting room and proceeded to kiss him. Barry Ennis had chewing gum in his mouth and he alleged that Father McCabe rolled the gum around Barry's mouth with his tongue while kissing him. Barry Ennis stated that Father McCabe did not touch him inside his clothes or get Barry to touch him. Barry Ennis was unsure as to the exact time of these visits or the exact amount of visits but he believes it was late February or early March 1981, the year he made his confirmation.

Father Aquinas Duffy of the Child Protection Service for the Archdiocese of Dublin verified to Gardai that Father McCabe was appointed a curate in the parish of Artane from 14 July 1979 until 5 September 1981 and that he resided at 16 Brookwood Grove during his attachment to the parish. He was absent from the parish between March and August 1981 as he was in undergoing therapy in England.

Mr. Bernard Coady of the Department of the Environment confirmed to Gardai that the records held at the Department indicate that a blue Volvo reg no. 76YZI was registered to a Patrick McCabe of 16 Brookwood Grove, Artane, Dublin from 15 May 1980 until 15 February 1982.

No records exist for Chanel primary school, situated in Coolock Village for the period in question. Gardai have obtained Barry Ennis's certificate of confirmation confirming that Barry Ennis made his confirmation at St. Brendan's Church in Coolock Village on 12 March 1981.

A statement was taken from Damian Heffernan who confirms that he lived in Clontarf and went to 6th class in Chanel primary school and knew Barry Ennis. He recalls being in Father Patrick McCabe's house once when Patrick McCabe, who he understands saw Damian Heffernan in a video of his confirmation, asked Damian Heffernan's parents if he could take a picture of Damian for a magazine that went to the Far East. He states that he was picked up from his house by Father McCabe and was alone with him in the car. He states that when he arrived at Father McCabe's house he went into the front room where another boy was and Father McCabe told them to wait. He heard Father McCabe shouting at another boy behind dividing doors

and he didn't feel comfortable so he left and walked home. He recalls that the other boy in the room asked him to stay. He cannot remember if this other boy was Barry Ennis.

Barry Ennis stated that he disclosed these allegations to his cousin Ger Collins, when he was about 14 years old and subsequently as an adult to his sister Belinda Ennis, his mother Eileen Ennis and his uncle Joe Ennis. Gardai interviewed these persons. Ger Collins and Joe Ennis recalled Barry Ennis relating that a priest had done something to him. Eileen Ennis recalled Father McCabe picking up Barry Ennis from their home for a prayer meeting when he was about eleven years old and states that around the time he made the report to Gardai, Barry had told her that Father McCabe lay on top of him on his bed, used to give him chewing gum and put his tongue in Barry's mouth. Belinda Ennis recalls Father McCabe calling to pick up Barry and she recalls on one occasion that she herself called to Father McCabe's house to attend a prayer meeting but there was no-one there. She states that a few months after she had called to Father McCabe's house, Barry Ennis told her that Father McCabe had pushed him onto a bench or bed or something and lay on top of him and wriggled and that on another occasion gave him chewing gum and told him to play a game of pass the chewing gum from Barry's mouth to Father McCabe's mouth and that Barry told her he didn't like doing this.

As recited above, Patrick McCabe was voluntarily interviewed by Gardai in California in November 2007. In the course of these interviews the allegations of Barry Ennis were put to Patrick McCabe. Gardai read extracts from the statement of Barry Ennis to Patrick McCabe and in response he replied "I have no memory of all those alleged operations. Seems fantastic that I would be taking dinner in someone's house. It's a fantastic story but I can't identify with it. I did not know that I kissed boys, I have my doubts about that" Patrick McCabe also accepted that "I could see myself getting help to distribute leaflets. I did show slides I don't remember Barry Ennis or what he looked like." When Gardai asked Patrick McCabe if he had any comment on what he heard in Barry Ennis's statement he replied "No, it endorses the fact that I never touched the skin of another." He was further asked "If that statement endorses your belief that you never touched the skin of another person, are you conceding that the events as related happened," to which he replied "No, it is just an illustration." Patrick McCabe confirmed he did have a dog when he was living at 16 Brookwood Grove.

Subsequent to Gardai interviewing Patrick McCabe as related above, a file was submitted to the Director of Public Prosecutions in respect of the allegations of Barry Ennis. The DPP directed that Patrick McCabe should be prosecuted for two counts of indecent assault against Barry Ennis.

### Offence 10 – Complainant: Anthony Corrigan

It is alleged that on a date unknown in or about February 1981 at 16 Brookwood Grove, Artane, Dublin 5, County Dublin, Patrick McCabe, the requested person indecently assaulted Anthony Corrigan (date of birth 4 May 1969), a male. The facts are as follows:

Anthony Corrigan was contacted by Gardai during the course of the Garda investigation in relation to allegations made by Barry Ennis against Patrick McCabe. Anthony Corrigan made a full statement of complaint to Gardai on 4 February 2003. On that date he also pointed out to Gardai the house where the alleged abuse took place. The house he identified was 16 Brookwood Grove, Artane, Dublin. Anthony Corrigan recalled visiting Patrick McCabe's house in 1981 to collect and deliver leaflets. He recalls the time of year being after Christmas and before his confirmation, which was March/April 1981. He stated that he and his friend and classmate Barry Ennis volunteered to deliver leaflets after Patrick McCabe called to their classroom in Chanel Primary School in Coolock, where they were in 6th class, to recruit boys for this purpose. He states that Patrick McCabe drove them to his house at 16 Brookwood Grove, Artane, Dublin 5 in his blue Volvo 240 after he called to their houses for permission from their mothers. He recalls that there was a projector in the sitting room of the house. He stated that Patrick McCabe brought him upstairs (he doesn't recall where Barry Ennis was in the house) and they ended up in the back bedroom looking out of the window for the dog. He alleges that Patrick McCabe started tickling Anthony Corrigan's upper body and Anthony Corrigan ended up on the bed with Patrick McCabe on top of him. Anthony Corrigan states that he was wearing his school uniform. Anthony Corrigan alleges that Patrick McCabe was rubbing his own body up against Anthony Corrigan's body and was breathing heavily. He says he felt Patrick McCabe crushing him from his chest down to his knees. He alleges that Patrick McCabe was kissing his cheek and neck and that he asked him to stop and struggled and said "get off me" or something like that. He alleges he was saying to Patrick McCabe "you're too heavy, you're hurting me". He states that Patrick McCabe heard him but did not stop and was trying to calm Anthony Corrigan by whispering words like "Don't worry." Anthony Corrigan states that he vaguely recalls Patrick McCabe opening his own belt. He does not think that Patrick McCabe masturbated himself. He states that Patrick was on top of him for 3 or 4 minutes and then stood up and acted like there was no fuss. He said he doesn't think he told Barry Ennis at the time what happened. He states he never went back to Patrick McCabe's house. He recalls Patrick McCabe being in his parent's house and he recalls that he told his parents that he didn't like him because he was tickling him and lying on top of him. He gave Gardai a photograph in which he identified himself on his confirmation day with Patrick McCabe and his mother. He stated that he told Barry Ennis of the allegation when he was sixteen or seventeen years old.

Gardai took statements from Anthony Corrigan's parents and sister. Anthony Corrigan's father, Anthony Corrigan Senior, recalled collecting his son from a priest's house opposite the church in Artane where he believed Anthony was to deliver leaflets. He also recalled that Father Patrick McCabe was in his house but not regularly. Anthony Corrigan's mother, Madeleine Corrigan recalls Father McCabe coming to her house to ask if Anthony could deliver some leaflets for him and she states she was aware that Barry Ennis was also delivering the leaflets. She states that she refused Father McCabe's request for Anthony to participate in a prayer group as it was not their parish. She recalls that on the night of Anthony's confirmation, Father McCabe was waiting at their house when they returned home. She stated that Anthony ran upstairs and Father McCabe ran after him. When Anthony came back down stairs Father McCabe followed him and said he had been telling Anthony what to do with his confirmation money. She stated that when Father McCabe left the house Anthony told her that the priest had pushed him on the bed and tickled him. Anthony

Corrigan's sister Karen Doyle (nee Corrigan) stated to Gardai that she recalled walking into Anthony Corrigan's bedroom in his parent's house and seeing Father McCabe on top of him in the bed. They were both fully dressed. She thinks this was on the day of Anthony's confirmation.

Gardai have obtained Anthony Corrigan's certificate of confirmation confirming that Anthony Corrigan made his confirmation at St. Brendan's Church in Coolock Village on 12th March 1981

As recited above, Patrick McCabe was voluntarily interviewed by Gardai in California in November 2007. In the course of these interviews the allegations of Anthony Corrigan were put to Patrick McCabe. When asked if he knew Anthony Corrigan, Patrick McCabe replied "not now." He agreed it was feasible that he had recruited boys to deliver leaflets and sought their parent's permission. He also agreed he had owned a blue Volvo. When Gardai read out the allegations in Anthony Corrigan's statement, Patrick McCabe replied "I was interested to note he was in school uniform, one of my fetishes, but I have no memory of the incident or the boy" He explained that he had a fetish about formal shirts and ties worn by young boys in suits or uniform and that it stimulated him sexually and he would sometimes get sexually aroused. He said he tried to control the sexual arousal and when that didn't happen he stated "I got satisfaction from an embrace and being close to a boy." When asked if anything else would happen. He said "I have nothing further" and when asked if he would ejaculate, he said "Sometimes I ejaculated unwarily and sometimes I was aware but never exposed any private parts, either mine or other." He said he got professional help for these fetishes in therapy centres in England and the U.S. He told Gardai he did not recall attending Anthony Corrigan's confirmation but said he would have attended if he were free. Patrick McCabe was shown a picture of himself, Anthony Corrigan and Anthony Corrigan's mother. He said he recognised himself and that the boy in the photo was slightly familiar.

Subsequent to Gardai interviewing Patrick McCabe as related above, a file was submitted to the Director of Public Prosecutions in respect of the allegations of Anthony Corrigan. The DPP directed that Patrick McCabe should be prosecuted for one count of indecent assault against Anthony Corrigan.

## (c) The legal description of the offences and statements of the relevant laws and maximum penalties therefor, texts of the law and a statement of the relevant Law.

### Legal description of the offence and statement of relevant law

**Indecent Assault**

Indecent Assault is an offence at common law constituting an assault accompanied by circumstances of indecency. "Assault" has been defined by the Irish courts as an act by which one person intentionally or recklessly causes another to apprehend immediate, unlawful personal violence. "Violence" has been interpreted by the Irish courts as also meaning any unlawful touching of a person without consent or lawful excuse. Circumstances of indecency are any circumstances capable of being considered as indecent by right-minded persons.

**Attempted Indecent Assault**

Attempted Indecent Assault is an offence at common law. It is an attempt to commit the offence of Indecent Assault, the elements of which are set out above. Every attempt to commit an indictable offence is regarded by the common law as an offence in itself. An attempt to commit a crime is an underdeveloped or inchoate crime. The intention or mens rea required to commit the full crime must be present in the defendant's mind although the act done is only a step towards the execution of the full crime. The actus reus required is some act carried out that may be regarded as a movement towards the commission of the substantive offence.

### Maximum penalty for the offence

The maximum penalty for the offences of indecent assault and attempted indecent assault, where the offence took place in the period up to 6 June, 1981 is 2 years for the first offence and 5 years for a second or subsequent offence. The maximum penalty for the offences of indecent assault and attempted indecent assault where the offence took place from 6 June 1981 until 18 January 1991 is 10 years.

Until the case of S.M. v Ireland, The Attorney General and The Director of Public Prosecutions (No.2) [2007] 4. Irish Reports 369 (judgment delivered on 12 July, 2007), a penalty of 10 years imprisonment for indecent assault on a male was provided for by section 62 of the Offences Against the Person Act 1861. The Irish High Court in the case of S.M. v Ireland held that Section 62 was inconsistent with the Constitution because of a divergence between the penalty provided for in that section for indecent assault on a male and the penalty provided for indecent assault on a female. At the time of the offences preferred in the case the penalty for the latter offence was 2 years for a first offence and 5 years for a second or subsequent offence by virtue of section 6 of the Criminal Law Amendment Act

1935. Section 10 of the Criminal Law (Rape) Act 1981 increased the penalty for indecent assault on a female to 10 years. That section came into force on 6 June 1981.

The penalty for the offence of indecent assault upon a female prior to 6 June 1981, which by virtue of the judgment in the case of S.M, v Ireland and Others now applies to the offence of indecent assault upon a male was provided for in section 6 the Criminal Law Amendment Act 1935, which provided as follows:

"6.—In lieu of section 52 (repealed by this Act) of the Offences against the Person Act, 1861, as amended by section 19 of the Criminal Law Amendment Act, 1885, it is hereby enacted that whosoever shall be convicted of any indecent assault upon any female shall be liable, in the case of a first conviction of any such offence, to imprisonment for any term not exceeding two years, and in the case of a second or any subsequent conviction of any such offence, to penal servitude for any term not exceeding five years nor less than three years or imprisonment for any term not exceeding two years."

## Text of the law setting forth the offence

There is no statutory definition of indecent assault as it is an offence at common law.

**Part 3 : Material required pursuant to Article VIII Paragraph 4 of the Treaty on Extradition between Ireland and the United States of America.**

---

(a) Authenticated copies of the warrants of arrest issued by order of a Judge of The District Court.

(b) Authenticated copies of the informations.

(c) A statement of facts by way of affidavit setting forth reasonable grounds for believing that offences have been committed and that the person sought committed them.

**(a) Authenticated copies of the warrants of arrest issued by order of a Judge of The District Court.**

Attached hereto

# IRELAND



AN CHÚIRT DÚICHE      THE DISTRICT COURT

DUBLIN METROPOLITAN DISTRICT

### WARRANT TO ARREST

**Prosecutor:**    **The Director of Public Prosecutions**

**Accused:**     **Patrick McCabe**

**WHEREAS** a complaint has been made on oath and in writing that, you the said accused on a date unknown between 1st January 1973 and 30th June 1975, at Central Model School, Marlborough Street, Dublin 1 did indecently assault one Thomas Lawrence, a male.

Contrary to Common Law.

**THIS IS TO COMMAND YOU**, to whom this warrant is addressed, to arrest the said Patrick McCabe DOB 12/09/1935 of 866 ½ Walnut Street, Alameda, California, United States of America.

And to bring him without any delay before me or another Judge of the District Court to be dealt with according to law.

Dated this 29th day of April 2010.

Signed: _____

Judge of the District Court assigned to the said District

Seen for the authentication of
signature /Store Street Garda Station, Dublin 1.
SEAN FALLON

Signed _____
Position ASSISTANT LEGAL ADVISER
Date ___ 21 5 2010

*I certify that this is a true copy of the original warrant.*

*Signed: Seán Fallon  Date: 13th May 2010.*

*(SEAN FALLON)*

*Garda Extradition Section*

# IRELAND



AN CHUIRT DUICHE        **THE DISTRICT COURT**

DUBLIN METROPOLITAN DISTRICT

## WARRANT TO ARREST

**Prosecutor:**   **The Director of Public Prosecutions**

**Accused:**    **Patrick McCabe**

**WHEREAS** a complaint has been made on oath and in writing that, you the said accused on a date unknown between 1st January 1973 and 30th June 1975, at Central Model School, Marlborough Street, Dublin 1 did attempt to indecently assault one Thomas Lawrence, a male.

Contrary to Common Law.

**THIS IS TO COMMAND YOU**, to whom this warrant is addressed, to arrest the said Patrick McCabe DOB 12/09/1935 of 866 ½ Walnut Street, Alameda, California, United States of America.

And to bring him without any delay before me or another Judge of the District Court to be dealt with according to law.

Dated this 29th day of April 2010

Signed: _____

Judge of the District Court assigned to the said District

To: Superintendent of An Garda Siochana.
Seen for the authentication of
signature / Store Street Garda Station, Dublin 1.
SEAN FALLON

Signed _____

Position ASSISTANT (ISH ADMIN)

Date 21 5 2010

I certify that this is a true copy of the original warrant
Signed: Sean Fallon    Date:
(SEAN FALLON)    13th May 2010
GARDA Extradition Section.

# IRELAND



AN CHUIRT DUICHE        **THE DISTRICT COURT**

DUBLIN METROPOLITAN DISTRICT

# A

### WARRANT TO ARREST

**Prosecutor:**    The Director of Public Prosecutions

**Accused:**    **Patrick McCabe**

**WHEREAS** a complaint has been made on oath and in writing that, you the said accused on an unknown date between the 7th of December 1974 and the 1st of September 1977 at the parochial house, Marlborough Street, Dublin 1 did indecently assault one Andrew Canavan, a male.

Contrary to Common Law.

**THIS IS TO COMMAND YOU**, to whom this warrant is addressed, to arrest the said Patrick McCabe DOB 12/09/1935 of 866 ½ Walnut Street, Alameda, California, United States of America.

And to bring him without any delay before me or another Judge of the District Court to be dealt with according to law.

Dated this    **5**[th]       day of    **May**       **2010**

Signed: _____
         Judge of the District Court assigned to the said District

To:    Superintendent of An Garda Siochana.
At:    Store Street Garda Station, Dublin 1.

Seen for the authentication of
signature / seal of
   SEAN FALLEN

Signed _____

Position ASSISTANT GCHIEF ADV

Date 9|5|2010

*I certify that this is a true copy of the original.*
*Signed: Sean Fallon   Date:*
*(SEAN FALLON)   13th May 2010.*
*GARDA Extradition Unit*

# IRELAND



**AN CHUIRT DUICHE**    **THE DISTRICT COURT**

DUBLIN METROPOLITAN DISTRICT

# B

## WARRANT TO ARREST

**Prosecutor:**   **The Director of Public Prosecutions**

**Accused:**   **Patrick McCabe**

**WHEREAS** a complaint has been made on oath and in writing that, you the said accused on an unknown date between the 7th of December 1974 and the 1st of September 1977 (on an occasion other than set out in warrant A) at the parochial house, Marlborough Street, Dublin 1 did indecently assault one Andrew Canavan, a male.

Contrary to Common Law.

**THIS IS TO COMMAND YOU**, to whom this warrant is addressed, to arrest the said Patrick McCabe DOB 12/09/1935 of 866 ½ Walnut Street, Alameda, California, United States of America.

And to bring him without any delay before me or another Judge of the District Court to be dealt with according to law.

Dated this   **5th**   day of   **May**   **2010**

Signed: _____

Judge of the District Court assigned to the said District

To:   Superintendent of An Garda Siochana.
Seen for the authentication of
signature Store Street Garda Station, Dublin 1.
SEAN FALLON

Signed _____

Position ASSISTANT LEGAL ADVISOR

Date 21/5/2010

*I certify that this is a true copy of the original.*

*Signed: Sean Fallon*
*(Sean Fallon)*

*GARDA Extradition Section*

# IRELAND



AN CHUIRT DUICHE　　　　THE DISTRICT COURT

DUBLIN METROPOLITAN DISTRICT

## C

### WARRANT TO ARREST

**Prosecutor:** The Director of Public Prosecutions

**Accused:** Patrick McCabe

**WHEREAS** a complaint has been made on oath and in writing that, you the said accused on an unknown date between the 7th of December 1974 and the 1st of September 1977 (on an occasion other than set out in warrant A and B) at the parochial house, Marlborough Street, Dublin 1 did indecently assault one Andrew Canavan, a male.

Contrary to Common Law.

**THIS IS TO COMMAND YOU**, to whom this warrant is addressed, to arrest the said Patrick McCabe DOB 12/09/1935 of 866 ½ Walnut Street, Alameda, California, United States of America.

And to bring him without any delay before me or another Judge of the District Court to be dealt with according to law.

Dated this 5th day of May 2010

Signed: _____

Judge of the District Court assigned to the said District

To: Superintendent of An Garda Siochana.
Seen for the authentication of
signature Abel or Store Street Garda Station, Dublin 1.

SEAN FALLON

Signed _____

Position ASSISTANT LEGAL ADVISER

Date 21|5|2010

*I certify that this is a true copy of the original.
Signed: Sean Fallon Date 13th May 20x
(SEAN FALLON)
GARDA Extradition Unit*

AN CHUIRT DUICHE  THE DISTRICT COURT

DISTRICT COURT AREA OF NAAS, DISTRICT NO. 25

## WARRANT TO ARREST

Prosecutor Director of Public Prosecutions

Accused Patrick McCabe

WHEREAS a complaint has been made on oath and in writing that you the said accused on a date unknown between 1st January and 1st April 1977, both dates inclusive at The Dominian Collège, Newbridge, Co. Kildare within the District Court Area of Naas, District No. 25 (formerly the District Court Area of Droichead Nua, District No 16) did indecently assault one James Moran, a male

Contrary to Common Law.

This is to command you, to whom this Warrant is addressed, to arrest the said Patrick McCabe DOB 12/09/1935 of 866 ½ Walnut Street, Alameda, California, United States of America.

And to bring him without any delay before me or another Judge of the District Court to be dealt with according to law.

Dated this _____ 5th _____ day of October 2009.

Signed: _____

Judge of the District Court assigned to the said District

To: Superintendent of An Garda Síochána at Kildare

Seen for the authentication of
signature / seal of
JEAN FALLON

Signed _____
Position ASSISTANT LEGAL ADVISER
Date 21/5/2010

_I certify that this is a true copy of the original._
_Signed: Seán Fallon Date: 13th May 2010_
(SEÁN FALLON)
GARDA Extradition Unit

# IRELAND



**AN CHUIRT DUICHE**       **THE DISTRICT COURT**

DUBLIN METROPOLITAN DISTRICT

### WARRANT TO ARREST

**Prosecutor:**   The Director of Public Prosecutions

**Accused:**   **Patrick McCabe**

**Whereas a complaint has been made on oath and in writing that you the said accused on a date unknown between 13th July 1979 and 6th September 1981 at 16 Brookwood Grove, Artane, Dublin 5 in the Dublin Metropolitan District, did; indecently assault one, Frank LaCumbre, a male person.**

**Contrary to Common Law.**

THIS IS TO COMMAND YOU to whom this warrant is addressed to arrest the said

Patrick McCabe, Date of Birth 12th September 1935, of 866 ½, Walnut Street, Alameda,

California, U.S.A. and to bring him before me or another Judge to be dealt with according

to law.

Dated this   **28th**   day of   **April**   **2010**

Signed.....................................
Judge of the District Court
assigned to the said District

To the Superintendent of An Garda Siochana.
at the Raheny Garda Station Dublin

Seen for the authentication of
signature / seal of
SEAN FALLON

Signed ........................
Position ASSISTANT (SEAN ADMIN
Date 21/5/2010

*I certify that this is a true copy of the original.*
*Signed: Seán Fallon Date: 13th May 20*
*(SEAN FALLON)*
*GARDA Extradition Section*

# A



AN CHUIRT DUICHE                THE DISTRICT COURT

## WARRANT TO ARREST

Prosecutor Director of Public Prosecutions

Accused Patrick McCabe

**WHEREAS** a complaint has been made on oath and in writing that, you the said accused on a date unknown in or about February 1981, at 16 Brookwood Grove, Artane, Dublin, within Dublin Metropolitan District did indecently assault one Barry Ennis, a male.

Contrary to Common Law.

This is to command you, to whom this Warrant is addressed, to arrest the said Patrick McCabe DOB 12/09/1935 of 866 ½ Walnut Street, Alameda, California, United States of America.

And to bring him without any delay before me or another Judge of the District Court to be dealt with according to law.

Dated this _____ 2nd _____ day of ___ Oct ___ 19 2009 _____

Signed:      _____ Hyho Nommen _____
             Judge of the District Court assigned to the said District

To:   Superintendent of An Garda Síochána
At:   National Bureau of Criminal Investigation, Harcourt Square

Seen for the authentication of
signature / seal of
SEAN FALLON

Signed _____

Position ASSISTANT CHIEF ADMINISTRATIVE

Date 21|5|2010

*I certify that this is a true copy of the original.*
*Signed: Seán Fallon  Date: 13th May 2011*
*(SEAN FALLON)*
*GARDA Extradition Section*

AN CHUIRT DUICHE  THE DISTRICT COURT

## DUBLIN METROPOLITAN DISTRICT

## WARRANT TO ARREST

Prosecutor Director of Public Prosecutions

Accused Patrick McCabe

**WHEREAS** a complaint has been made on oath and in writing that you the said accused on a date unknown in or about February 1981, other than the date referred to in Warrant A at 16 Brookwood Grove, Artane, Dublin, within Dublin Metropolitan District did indecently assault one Barry Ennis, a male.

Contrary to Common Law.

This is to command you, to whom this Warrant is addressed, to arrest the said Patrick McCabe DOB 12/09/1935 of 866 ½ Walnut Street, Alameda, California, United States of America.

And to bring him without any delay before me or another Judge of the District Court to be dealt with according to law.

Dated this _____ 2nd _____ day of ___ Oct ___ 🔵 2009.

Signed: _____ Hxh e Nommen _____

Judge of the District Court assigned to the said District

To: Superintendent of An Garda Síochána
At: National Bureau of Criminal Investigation, Harcourt Square

Seen for the authentication of
signature / seal of
SEAN FALLON

Signed _____
Position ASSISTANT LEGAL AND
Date 21/5/2010

*I certify that this is a true copy of the original.*
*Signed: Seán Fallon   Date: 13th May 2010*
*(SEAN FALLON)*
*GARDA Extradition Section.*



AN CHUIRT DUICHE        THE DISTRICT COURT

### DUBLIN METROPOLITAN DISTRICT

## WARRANT TO ARREST

Prosecutor Director of Public Prosecutions

Accused Patrick McCabe

**WHEREAS** a complaint has been made on oath and in writing that you the said accused on a date unknown in or about February 1981, at 16 Brookwood Grove, Artane, Dublin, within Dublin Metropolitan District did indecently assault one Anthony Corrigan, a male.

Contrary to Common Law.

This is to command you, to whom this Warrant is addressed, to arrest the said Patrick McCabe DOB 12/09/1935 of 866 ½ Walnut Street, Alameda, California, United States of America.

And to bring him without any delay before me or another Judge of the District Court to be dealt with according to law.

Dated this ____2~λ____ day of ___Ock___ ~~12~~ 200q

Signed: _____Hλ θ Yown en_____

Judge of the District Court assigned to the said District

Seen for the authentication of
signature / ~~seal~~ of
  SEAN FALLON
Signed _____
Position ASSISTANT LEGAL ADVI
Date _21|5|2010_

*I certify that this is a true copy of the original.*
*Signed: Bean Fallon Date: 13ᵗʰ May 2010*
*(SEAN FALLON)*
*GARDA Extradition Section*

## (b) Authenticated copy of the informations.

Attached hereto



AN CHÚIRT DÚICHE          THE DISTRICT COURT

# DUBLIN METROPOLITAN DISTRICT

**The information of Detective Garda Damien Egan**

**of Store Street Garda Station, Dublin 1.**

**Who being duly sworn upon oath at the Metropolitan District Courts, in said District, before me, one of the Judges in and for said District, deposeth and saith as follows:**

I am a member of An Garda Siochana. I am investigating complaints of Indecent Assaults which I received from Thomas Lawrence, DOB 1st July 1961 formally of 9G & F Lower Sean McDermott Street, Dublin 1. Thomas Lawrence alleges that he was Indecently Assaulted on two occasions by Patrick McCabe, DOB 12/9/1935 (a former Roman Catholic Priest attached to the Dublin Archdiocese) on unknown dates between the 1st January 1973 and 30th June 1975, at the Central Model School, Marlborough Street, Dublin 1, where Thomas Lawrence was attending school. A statement of complaint was taken from Thomas Lawrence in relation to the allegations and an investigation carried out. A file was forwarded to the Office of the Director of Public Prosecutions and directions were received to the effect that Patrick McCabe be charged with an offence of indecent assault in relation to one of the two incidents described above. I now pray a warrant to arrest the said Patrick McCabe and charge him as follows:

For that you the said accused on a date unknown between 1st January 1973 and 30th June 1975 at Central Model School, Marlborough Street, Dublin 1 did indecently assault one Thomas Lawrence, a male.

Contrary to Common Law.

**I hereby apply for a Warrant to Arrest Patrick McCabe of 866 ½ Walnut Street, Alameda, California, U.S.A.**

Signed: _Damien Egan_ — D/Garda
(Damien Egan)
Date: 29th April 2010

Seen for the authentication of
signature / seal of
DEREK BUNYAN

Signed _____
Position ASSISTANT LEGAL ADVISER
Date 04 5 2010

Sworn before me by D/Garda Damien Egan of Store Street Garda Station.
This 29th day of April 2010.

Signed: _____
Judge of the District Court assigned to said District.

A TRUE COPY OF ORIGINAL
IN MY CUSTODY

_Derik Bang_

pp CHIEF CLERK
Metropolitan District Court
Dated this:- 23 Jan 2010

*1438/10*

AN CHÚIRT DÚICHE  THE DISTRICT COURT

# DUBLIN METROPOLITAN DISTRICT

The information of Detective Garda Damien Egan

of Store Street Garda Station, Dublin 1.

**Who being duly sworn upon oath at the Metropolitan District Courts, in said District, before me, one of the Judges in and for said District, deposeth and saith as follows:**

I am a member of An Garda Siochana. I am investigating complaints of Indecent Assaults which I received from Thomas Lawrence, DOB 1st July 1961 formally of 9G & F Lower Sean McDermott Street, Dublin 1. Thomas Lawrence alleges that he was Indecently Assaulted on two occasions by Patrick McCabe, DOB 12/9/1935 (a former Roman Catholic Priest attached to the Dublin Archdiocese) on unknown dates between the 1st January 1973 and 30th June 1975, at the Central Model School, Marlborough Street, Dublin 1, where Thomas Lawrence was attending school. A statement of complaint was taken from Thomas Lawrence in relation to the allegations and an investigation carried out. A file was forwarded to the Office of the Director of Public Prosecutions and directions were received to the effect that Patrick McCabe be charged with an offence of attempted indecent assault in relation to one of the two incidents described above. I now pray a warrant to arrest the said Patrick McCabe and charge him as follows:

For that you the said accused on a date unknown between 1st January 1973 and 30th June 1975 at Central Model School, Marlborough Street, Dublin 1 did attempt to indecently assault one Thomas Lawrence, a male.

Contrary to Common Law.

I hereby apply for a Warrant to Arrest Patrick McCabe of 866 ½ Walnut Street, of Alameda, California, U.S.A.

Signed: *Damien Egan* D/Garda
(Damien Egan)
Date: 29th April 2010

Seen for the authentication of
signature / seal of
DEREK GUNYAN

Signed _____
Position ASSISTANT LEGAL ADVISER
Date 01|5|200

Sworn before me by D/Garda Damien Egan of Store Street Garda Station.
This 29th day of April 2010.

Signed: _____
Judge of the District Court assigned to said District.

A TRUE COPY OF ORIGINAL
IN MY CUSTODY

_____
pp CHIEF CLERK
Metropolitan District Court
Dated this: 27 Apr 2010

2010/1480

AN CHÚIRT DÚICHE  THE DISTRICT COURT

# DUBLIN METROPOLITAN DISTRICT

**A**

The information of Detective Garda Wayne Kelly

of Store Street Garda Station, Dublin 1.

A TRUE COPY OF ORIGINAL
IN MY CUSTODY

_____ pp CHIEF CLERK
Metropolitan District Court
Dated this:   6|5|10

**Who being duly sworn upon oath at the Metropolitan District Courts, in said District, before me, one of the Judges in and for said District, deposeth and saith as follows:**

I am a member of An Garda Siochana. I am investigating complaints of Indecent Assaults which I received from Andrew Canavan, DOB 7th December 1964 formally of 45B Avondale House, Dublin 39G. Andrew Canavan alleges that he was Indecently Assaulted on three occasions by Patrick McCabe, DOB 12/9/1935 (a former Roman Catholic Priest attached to the Dublin Archdiocese) between the dates of the 7th of December 1974 and the 1st of September 1977. The offences are alleged to have been committed between the dates of the 7th of December 1974 and the 1st of September 1977 at the parochial house, Marlborough Street, Dublin 1. A statement of complaint was taken from Andrew Canavan in relation to the allegations and an investigation carried out. A file was forwarded to the Office of the Director of Public Prosecutions and directions were received to the effect that Patrick McCabe be charged with three offences of indecent assault. I now pray a warrant to arrest the said Patrick McCabe and charge him as follows:

For that you the said accused on a unknown date between the 7th of December 1974 and the 1st of September 1977 at the parochial house, Marlborough Street, Dublin 1 did indecently assault one Andrew Canavan, a male.

Contrary to Common Law.

**I hereby apply for a Warrant to Arrest Patrick McCabe of 866 ½ Walnut Street, Alameda, California, U.S.A.**

Signed: _Wayne Kelly_           D/Garda
                    (Wayne Kelly)
Date: 5th May 2010

Seen for the authentication of
signature / seal of
ANN MARIE MELIA

Signed _____
Position ASSISTANT   LEGAL ADVISOR
Date   04/5/2010

**Sworn before me by D/Garda Wayne Kelly of Store Street Garda Station. This 5th day of May 2010.**

Signed: _Corly_
_____
Judge of the District Court assigned to said District.

*2010/1479*

AN CHÚIRT DÚICHE            THE DISTRICT COURT

# DUBLIN METROPOLITAN DISTRICT

## B

The information of Detective Garda Wayne Kelly
of Store Street Garda Station, Dublin 1.

A TRUE COPY OF ORIGINAL
IN MY CUSTODY

_____ pp CHIEF CLERK
Metropolitan District Court
Dated this: 6 15 10

Who being duly sworn upon oath at the Metropolitan District Courts, in said District,
before me, one of the Judges in and for said District, deposeth and saith as follows:

I am a member of An Garda Siochana. I am investigating complaints of Indecent Assaults
which I received from Andrew Canavan, DOB 7th December 1964 formally of 45B Avondale
House, Dublin 39G. Andrew Canavan alleges that he was Indecently Assaulted on three
occasions by Patrick McCabe, DOB 12/9/1935 (a former Roman Catholic Priest attached to
the Dublin Archdiocese) between the dates of the 7th of December 1974 and the 1st of
September 1977. The offences are alleged to have been committed between the dates of the
7th of December 1974 and the 1st of September 1977 at the parochial house, Marlborough
Street, Dublin 1. A statement of complaint was taken from Andrew Canavan in relation to the
allegations and an investigation carried out. A file was forwarded to the Office of the Director
of Public Prosecutions and directions were received to the effect that Patrick McCabe be
charged with three offences of indecent assault. I now pray a warrant to arrest the said Patrick
McCabe and charge him as follows:

For that you the said accused on a unknown date between the 7th of December 1974 and the
1st of September 1977 (on an occasion other than set out in warrant A) at the parochial house,
Marlborough Street, Dublin 1 did indecently assault one Andrew Canavan, a male.

Contrary to Common Law.

I hereby apply for a Warrant to Arrest Patrick McCabe of 866 3 Walnut Street of
Alameda, California, U.S.A.

signature / seal of
ANN MARIE NEUA

Signed: *Wayne Kelly*   D/Garda
(Wayne Kelly)

Signed _____
Position ASSISTANT LEGAL ADVISOR
Date 21 5 2010

Date: 5th May 2010

Sworn before me by D/Garda Wayne Kelly of Store Street Garda Station.
This 5th day of May 2010.

Signed: _____

Judge of the District Court assigned to said District.

2010/1481

AN CHÚIRT DÚICHE                    THE DISTRICT COURT

## DUBLIN METROPOLITAN DISTRICT

**C**

The information of Detective Garda Wayne Kelly
of Store Street Garda Station, Dublin 1.

A TRUE COPY OF ORIGINAL
IN MY CUSTODY

_____ pp CHIEF CLERK
Metropolitan District Court
Dated this: 6/5/10

**Who being duly sworn upon oath at the Metropolitan District Courts, in said District,
before me, one of the Judges in and for said District, deposeth and saith as follows:**

I am a member of An Garda Siochana. I am investigating complaints of Indecent Assaults
which I received from Andrew Canavan, DOB 7th December 1964 formally of 45B Avondale
House, Dublin 39G. Andrew Canavan alleges that he was Indecently Assaulted on three
occasions by Patrick McCabe, DOB 12/9/1935 (a former Roman Catholic Priest attached to
the Dublin Archdiocese) between the dates of the 7th of December 1974 and the 1st of
September 1977. The offences are alleged to have been committed between the dates of the
7th of December 1974 and the 1st of September 1977 at the parochial house, Marlborough
Street, Dublin 1. A statement of complaint was taken from Andrew Canavan in relation to the
allegations and an investigation carried out. A file was forwarded to the Office of the Director
of Public Prosecutions and directions were received to the effect that Patrick McCabe be
charged with three offences of indecent assault. I now pray a warrant to arrest the said Patrick
McCabe and charge him as follows:

For that you the said accused on a unknown date between the 7th of December 1974 and the
1st of September 1977 (on an occasion other than set out in warrant A and B) at the parochial
house, Marlborough Street, Dublin 1 did indecently assault one Andrew Canavan, a male.

Contrary to Common Law.

**I hereby apply for a Warrant to Arrest Patrick McCabe of 866 ½ Walnut Street,
Alameda, California, U.S.A.**

Signed: _Wayne Kelly_ D/Garda
(Wayne Kelly)
Date: 5th May 2010

Sworn before me by D/Garda Wayne Kelly of Store Street Garda Station.
This 5th day of May 2010.

Signed: _Gorman_
Judge of the District Court assigned to said District.

Seen for the authentication of
signature / seal of
ANNMARIE MEHA

Signed _____
Position ASSISTANT LOCAL OFFICER
Date 24/5/2010

AN CHUIRT DUICHE  THE DISTRICT COURT

DISTRICT COURT AREA OF NAAS, DISTRICT NO: 25

Prosecutor - Director of Public Prosecutions
Accused    -  Patrick McCabe

The information of Inspector Kevin Lavelle of Kildare Garda Station

Who being duly sworn upon oath at Naas District Court, District No: 25 before me, one of the Judges in and for said District, deposeth and saith as follows:

I am a member of An Garda Síochána. I am investigating a complaint of indecent assault which was received from James Moran, d.o.b. 03.02.1963, formerly of Woodcourt, Timolin, Moone, Co. Kildare. James Moran alleges that he was indecently assaulted on one occasion by Patrick McCabe, DOB 12/09/1935 (a former Roman Catholic Priest attached to the Dublin Archdiocese) when he was 13/14 years old. The offence is alleged to have been committed after December 1976 & early in the year 1977 at The Dominican College, Newbridge, Co. Kildare. A statement of complaint was taken from James Moran. Patrick McCabe was interviewed in relation to the allegations. A file was forwarded to the Office of the Director of Public Prosecutions and directions were received to the effect that Patrick McCabe be charged with the offence of indecent assault. I now pray a warrant to arrest the said Patrick McCabe and charge him as follows.

For that you the said accused on a date unknown between 1st January and 1st April 1977 both dates inclusive, at the Dominican College, Newbridge, Co. Kildare within the District Court Area of Naas, District No. 25 (formerly the District Court Area of Droichead Nua, District No. 16) did indecently assault one James Moran, a male.

Contrary to Common Law

I hereby apply for a Warrant to Arrest Patrick McCabe of 866 ½ Walnut St, Alameda, California, United States of America.

Signed _____ Inspector
        (Kevin Lavelle)

Date:
Sworn before me by Inspector Kevin Lavelle of Kildare Garda Station
This ___5th___ day of October 2009.

Signed:.........................................
Judge of the District Court assigned to the said District

Seen for the authentication of signature / seal of
    Aifric Hurrell

Signed _____
Position Assistant Legal _____
Station  21/5/2019

I CERTIFY THAT THIS IS A TRUE COPY OF THE ORIGINAL IN MY CUSTODY
DATE: 5 oct 2009
Signed: _____
        DISTRICT COURT CLERK

1419.

AN CHÚIRT DÚICHE  THE DISTRICT COURT

# DUBLIN METROPOLITAN DISTRICT

THE Information of __D/Garda Michael Bourke__ of __Clontarf Garda Station__ Situated in the Dublin Metropolitan District, who being duly sworn upon oath at the Metropolitan District Court at the Courts of Criminal Justice, Parkgate Street, Dublin 8, in the said District, before me, one of the Judges in and for said District, deposeth and saith as follows:-

I am a member of An Garda Siochana. I am investigating a complaint of Indecent Assault which I received from Frank LaCumbre, date of birth 22nd October 1966, of 7 Slademore Avenue, Ard Na Greine, Dublin 13. Frank LaCumbre alleges that he was indecently assaulted by Patrick McCabe, date of birth 12th September 1935 (a former Roman Catholic Priest attached to the Dublin Arch Diocese), between the dates of 13th July 1979 and the 6th September 1981. The offences are alleged to have been committed between the dates of the 13th July 1979 and 6th September 1981, at 16 Brookwood Grove, Artane, Dublin 5. A statement of complaint was taken from Frank LaCumbre in relation to the allegation and an investigation was carried out. A file was forwarded to the office of the Director of Public Prosecutions and directions were received from that office, to the effect that Patrick McCabe be charged with the offence of Indecent Assault.

I now Pray a warrant to arrest the said Patrick McCabe and charge him as follows:-

*For that you the said accused did on a date unknown between 13th July 1979 and the 6th September 1981 at 16 Brookwood Grove, Artane, Dublin 5 in the Dublin Metropolitan District, did indecently assault one Frank LaCumbre.*

*Contrary to Common Law.*

I hereby apply for a warrant to arrest Patrick McCabe of 866 ½, Walnut Street, Alameda, California, U.S.A.

Signed ................................................ D/Garda 24986F.
(MICHAEL BOURKE)

Sworn before me, this _____28th_____ day of _____April_____ 2010

| | Seen for the authentication of signature / seal of AMANDA YORKE |
| --- | --- |
| | Signed _____ |
| | Position ASSISTANT LEGAL ADVISOR |
| | 2010  21/5/10 |

Signed _____
Judge of the District Court. Assigned to said District.

| A TRUE COPY OF ORIGINAL IN MY CUSTODY |
| --- |
| Amanda Yorke p.p. |
| pp CHIEF CLERK |
| Metropolitan District Court |
| Dated this: 29/04/10 |

Seen for the authentication of
signature / seal of
SARAH BYRNE

Signed _____
Position ASSISTANT LEGAL ADVISOR
Date 21/5/2010

A TRUE COPY OF ORIGINAL
IN MY CUSTODY

Sarah Byrne
pp CHIEF CLERK
Metropolitan District Court
Dated this. 02/10/09

**A**

AN CHUIRT DUICHE                THE DISTRICT COURT

## DUBLIN METROPOLITAN DISTRICT

Prosecutor Director of Public Prosecutions
Accused Patrick McCabe

The information of Detective Garda Michelle Carey
of National Bureau of Criminal Investigation, Harcourt Square, Dublin 2.

Who being duly sworn upon oath at Dublin District Court, before me, one of the Judges in and for said District, deposeth and saith as follows:

I am a member of An Garda Siochana. I am investigating complaints of Indecent Assaults which I received from Barry Ennis, DOB 22/5/1969, formerly of 33 Beechlawn Green, Coolock, Dublin 5. Barry Ennis alleges that he was indecently assaulted on two occasions by Patrick McCabe, DOB 12.9.35 (a former Roman Catholic priest attached to the Dublin Archdiocose) from February 1981 over a two month period when Barry Ennis was eleven years old. The offences are alleged to have been committed in or about February 1981, at Patrick McCabe's home at number 16 Brookwood Grove, Artane. A statement of complaint was taken from Barry Ennis. Patrick McCabe was interviewed in relation to the allegations. A file was forwarded to the Office of the Director of Public Prosecutions and directions were received to the effect that Patrick McCabe be charged with offences of indecent assault. I now pray a warrant to arrest the said Patrick McCabe and charge him as follows:

For that you the said accused on a date unknown in or about February 1981 at 16 Brookview Grove, Artane, Dublin, within Dublin Metropolitan District did indecently assault one Barry Ennis, a male.

Contrary to Common Law.

I hereby apply for a Warrant to Arrest Patrick McCabe of 866 ½ Walnut St, Alameda, California, U.S.A.

Signed:      _Michelle Carey_      D/Garda
                  Michelle Carey

Date:
Sworn before me by Michelle Carey D/Garda of National Bureau of Criminal Investigate
This    21    day of    Oct    19 2009 .

Signed:.......................

Judge of the District Court assigned to the said District

CERTIFIED TO BE A TRUE COPY OF THE ORIGINAL
IN MY CUSTODY

Sarah Byrne
pp CHIEF CLERK
Metropolitan District Court
Dated this: 22|10|09

AN CHUIRT DUICHE



THE DISTRICT COURT

## DUBLIN METROPOLITAN DISTRICT

Prosecutor Director of Public Prosecutions
Accused Patrick McCabe

The information of Detective Garda Michelle Carey
of National Bureau of Criminal Investigation, Harcourt Square, Dublin 2.

Who being duly sworn upon oath at Dublin District Court, before me, one of the Judges in
and for said District, deposeth and saith as follows:

I am a member of An Garda Siochana. I am investigating complaints of Indecent Assaults which
I received from Barry Ennis, DOB 22/5/1969, formerly of 33 Beechlawn Green, Coolock,
Dublin 5. Barry Ennis alleges that he was indecently assaulted on two occasions by Patrick
McCabe, DOB 12/9/1935 (a former Roman Catholic Priest attached to the Dublin Archdiocese)
from February 1981 over a two month period when Barry Ennis was eleven years old. The
offences are alleged to have been committed in or about February 1981, at Patrick McCabe's
home at number 16 Brookwood Grove, Artane. A statement of complaint was taken from Barry
Ennis. Patrick McCabe was interviewed in relation to the allegations. A file was forwarded to the
Office of the Director of Public Prosecutions and directions were received to the effect that
Patrick McCabe be charged with offences of indecent assault. I now pray a warrant to arrest the
said Patrick McCabe and charge him as follows:

For that you the said accused on a date unknown in or about February 1981 other than the date
referred to in information A at 16 Brookwood Grove, Artane, Dublin within Dublin Metropolitan
District did indecently assault one Barry Ennis, a male.

Contrary to Common Law.

I hereby apply for a Warrant to Arrest Patrick McCabe of 866 ½ Walnut St, Alameda,
California, U.S.A.

Signed:      Michelle Carey      D/Garda
                  Michelle Carey

Date:
Sworn before me by michelle Carey, D/garda of National Bureau of Criminal Investigation
This   21   day of   Oct   2009 .

Signed:...............................
Judge of the District Court assigned to the said District

Seen for the authentication of
signature / seal of
   SARAH BYRNE

Signed ......................
Position ASSISTANT LEGAL
Date   21 | 5 | 2010

ORIGINAL
IN CUSTODY

Sarah Byrne
pp CHIEF CLERK
Metropolitan District Court
Dated this: 02/10/09

AN CHUIRT DUICHE

THE DISTRICT COURT

## DUBLIN METROPOLITAN DISTRICT

Prosecutor Director of Public Prosecutions
Accused Patrick McCabe

The information of Detective Garda Michelle Carey
of National Bureau of Criminal Investigation, Harcourt Square, Dublin 2.

Who being duly sworn upon oath at Dublin District Court, before me, one of the Judges in
and for said District, deposeth and saith as follows:

I am a member of An Garda Siochana. I am investigating a complaint of Indecent Assault which
I received from Anthony Corrigan, DOB 4/5/1969, formerly of 6 Tonlagee Drive, Raheny,
Dublin 5. Anthony Corrigan alleges that he was indecently assaulted on one occasion by Patrick
McCabe, DOB 12/9/1935 (a former Roman Catholic Priest attached to the Dublin Archdiocese)
in or about February 1981 when Anthony Corrigan was eleven years old. The offence is alleged
to have been committed in or about February 1981 at Patrick McCabe's house at number 16
Brookwood Grove, Artane. A statement of complaint was taken from Anthony Corrigan. Patrick
McCabe was interviewed in relation to the allegations. A file was forwarded to the Office of the
Director of Public Prosecutions and directions were received to the effect that Patrick McCabe be
charged with the offence of indecent assault. I now pray a warrant to arrest the said Patrick
McCabe and charge him as follows:

For that you the said accused on a date unknown in or about February 1981 at 16 Brookwood
Grove, Artane, Dublin within Dublin Metropolitan District did indecently assault one Anthony
Corrigan, a male.

Contrary to Common Law.

I hereby apply for a Warrant to Arrest Patrick McCabe of 866 ½ Walnut St, Alameda,
California, U.S.A.

Signed:    Michelle Carey    D/Garda
           Michelle Carey

Date:

Sworn before me by Michelle Carey, D/garda of National Bureau of Criminal Investigation

This _____21_____ day of ___Oct___ ℗ 2009.

Signed:............... John Mowen
Judge of the District Court assigned to the said District

Seen for the authentication of
signature / seal of
SARAH BYRNE

Signed ......................
Position ASSISTANT LEGAL ...
Date 04/5/2010

**(c ) A statement of facts by way of affidavit setting forth reasonable grounds for believing that offences have been committed and that the person sought committed them.**

Attached hereto

## AFFIDAVIT IN ACCORDANCE WITH ARTICLE VIII(4) OF THE TREATY ON EXTRADITION BETWEEN IRELAND AND THE UNITED STATES OF AMERICA

I, Peter McCormick of 14/16 Merrion St, Dublin 2, Ireland aged eighteen years and upwards, make oath and say as follows:

1. I am a Solicitor and a Professional Officer in the Office of the Director of Public Prosecutions in Ireland. The Director of Public Prosecutions enforces the criminal law in the Irish courts on behalf of the People of Ireland. As a Professional Officer, appointed pursuant to the Prosecution of Offences Act 1974, I am authorised by the Director of Public Prosecutions to act on his behalf and in accordance with his instructions in relation to criminal cases.

2. As a Professional Officer in the Office of the Director of Public Prosecutions I decide whether the evidence gathered by An Garda Siochana (the Irish Police Force) discloses a prima facie case against a person and warrants a prosecution of that person for the suspected crime. I have the authority to take such a decision and to issue a direction to An Garda Siochana on behalf of the Director of Public Prosecutions to charge a person with a criminal offence.

3. I say and believe that the Office of the Director of Public Prosecutions received investigation files from An Garda Siochana relating to Patrick McCabe (date of birth 12 September 1935) in October 2008, August 2009 and November 2009, which files were assigned to me for attention. I refer to the files below using the offence numbers assigned to each complaint in the within extradition request and citing the relevant complainant.

### Offences 1 and 2- Complainant: Thomas Lawrence

4. I say and believe that in November 2009, the Office of the Director of Public Prosecutions received an investigation file from An Garda Siochana relating to Patrick McCabe (date of birth 12 September 1935). The Garda investigation related to an allegation of indecent assault and attempted indecent assault allegedly perpetrated by Patrick McCabe on Thomas Lawrence between January 1973 and June 1975.

5. The investigation file includes a statement of evidence from Thomas Lawrence (date of birth 1 July 1961) in which he states that while he was a primary school pupil at the Central Model School, Marlborough Street, Dublin 1, Father Patrick McCabe -a then Roman Catholic priest who regularly attended the school to give religious instruction- indecently assaulted him on one occasion and attempted to indecently assault him on another occasion.

6. In his statement of evidence, Thomas Lawrence states that the first alleged incident occurred when Father McCabe came upon him in the hallway of the school. Thomas Lawrence states that Father McCabe backed him up against a wall and started rubbing his (McCabe's) groin against Thomas Lawrence's stomach. Thomas Lawrence felt Father McCabe's penis was erect almost immediately. Father McCabe rubbed Thomas

Lawrence's groin area with his hand through Thomas Lawrence's trousers, and Father McCabe then took his own penis in his hand and kept pushing Thomas Lawrence's head around to look at his penis. He grabbed Thomas Lawrence's hand and pushed it down to touch off his penis and then squeezed Thomas Lawrence's hand with his and made Thomas Lawrence squeeze the top of Father McCabe's penis. Father McCabe then grabbed his penis with his own hand, and was pulling himself, Thomas Lawrence then heard Father McCabe moan and reach into his pocket and take out a hanky. He put the hanky onto his penis and he let Thomas Lawrence go. Thomas Lawrence looked back and saw Father McCabe wiping the floor and wall with the hanky. Thomas Lawrence hid in a car park until it was time to go home and did not tell anyone about this incident with Father McCabe.

7. In his statement of evidence, Thomas Lawrence states that some time after the first incident, Father McCabe again came upon him in the school, having been put out of class. Father McCabe put one hand on top of the coat rack where Thomas Lawrence was standing and started pushing himself against Thomas Lawrence. Father McCabe crouched down and pushed his groin area against Thomas Lawrence. This incident ended when Thomas Lawrence tripped on the rail of the coat rack and fell on the ground backwards causing a noise that brought the Principal. Father McCabe moved away from Thomas Lawrence and went into the Principal's Office.

8. In his statement of evidence, Thomas Lawrence states that because he feared his father's reaction he did not tell his parents about the alleged abuse at the time but dealt with it through drink and drugs. He states that in June 2009 when he made a complaint to Gardai he had been free of drink and drugs for some months and was able to make a statement. The Garda investigation was launched when Thomas Lawrence attended at Store Street Garda Station, Dublin 1 on the 15 June 2009 to make a complaint of sexual abuse

9. Two teachers in the school were interviewed by Gardai. In their statements of evidence, they confirmed that Father Patrick McCabe regularly attended the Central Model School and confirmed Thomas Lawrence's attendance at the school from 1 January 1973 to 30 June 1975. Thomas Lawrence's sister Marie Creed made a statement of evidence to An Garda Siochana, in which she stated that her brother alleged to her in April or May 2009 that he had been sexually abused by a priest at the Marlborough Street School. She confirmed that their father had been a very strict man.

10. I reviewed the evidence disclosed in the investigation conducted by An Garda Siochana. I directed on 1 March 2010 that Patrick McCabe be prosecuted with one charge of indecent assault and one charge of attempted indecent assault on Thomas Lawrence on dates unknown between 1 January 1973 and 30 June 1975. These charges relate to offences 1 and 2 of the within request.

11. I say and believe that based on the facts averred to in this affidavit that there are reasonable grounds for believing that the charges directed were committed by Patrick McCabe and that there is sufficient evidence for Patrick McCabe to stand trial on the charges as directed.

12. An Garda Siochana have confirmed that the required prosecution witnesses are still available and are prepared to give evidence in any such prosecution.

### Offence 6- Complainant: James Moran

13. I say and believe that in October 2008, the Office of the Director of Public Prosecutions received an investigation file from An Garda Siochana relating to Patrick McCabe (date of birth 12 September 1935). The Garda investigation related to an allegation of indecent assault allegedly perpetrated by Patrick McCabe on James Moran between January and April 1977.

14. The investigation file includes a statement of evidence from James Moran (date of birth 3 February 1963) in which he says that when aged 13/14 he was indecently assaulted by Patrick McCabe, then a Roman Catholic Priest, at the Dominican College, Newbridge County Kildare.

15. In his statement of evidence, James Moran states that he was attending the Dominican College, Newbridge County Kildare as a boarding student and one day a student told him his uncle was there to visit him. He went out to the car park of the college and met a priest who introduced himself as Father McCabe, a friend of the family and asked if they wanted to get into his car for a chat. They both got into the car where it is alleged the priest indecently assaulted James Moran. James Moran states in his statement of evidence that Father McCabe lowered back his own seat, opened his trousers and took out his (McCabe's) penis. He took down James Moran's trousers and underpants, turned James Moran onto this left side and tried to penetrate him but Moran turned back around. Father McCabe tried to get James Moran's head down to McCabe's groin but James Moran resisted. Father McCabe was masturbating while doing this and fondled James Moran's groin several times. James Moran states that he not know if Father McCabe ejaculated but he states that he, Moran, did. Moran believes they were in the car for over an hour and then he got out.

16. James Moran recounts in his statement of evidence that his father brought him home from school the next day where he met a Father Ambrose Farrington. He states that upon being asked he told Father Farrington about the actions of Father McCabe. He states that his Aunt, Ann Hennessy, also asked him what had happened and he also related the actions of Father McCabe to her. The Gardai took statements from Father Ambrose Farrington and Ann Hennessy who both confirmed in their statements of evidence that they were told by James Moran at the Moran family home that he had been sexually assaulted by Father McCabe at the Dominican convent.

17. In November 2007, the Garda Siochana interviewed Patrick McCabe at Alameda Police Station, San Francisco, California. He recalled James Moran and agreed he visited Moran once at Newbridge College. He agreed he met Moran in his car. He denied that he touched him sexually in any way. While denying sexual behaviour, Patrick McCabe stated that James Moran met his requirements to match up his "fetish" and that he fondled

him. However he stated that he did not touch his sexual parts only his clothing. He stated that James Moran was handsome and had a nice shirt and tie and that by fondling Moran he means he touched his clothing probably on his upper body but certainly not on the sexual parts. He described hugging and embracing but was unsure as to whether he kissed Moran. He otherwise denied intimate touching but agreed that he had a sexual attraction for James Moran. Patrick McCabe initially denied communicating with James Moran after the day he met him at Newbridge College, but on being shown a letter, he acknowledged it was his handwriting but he said he had no recollection of writing the letter.

18. James Moran made his initial complaint to Gardai in 1987. In 1987, a file was received by the Director of Public Prosecutions in relation to allegations against James Moran and his mother alleging an attempt to extort money from the Dominican Order. On 19 August 1987, this office directed there should not be a prosecution against James and Teresa Moran. Subsequently in June 1988, further material was received in respect of complaints by James Moran against Father McCabe. The Garda Siochana did not have an address for Patrick McCabe at the time and this office directed that a decision in relation to the allegations against Patrick McCabe should await his response to any Garda interview on the topic that might take place.

19. In 2003 James Moran repeated his allegations against Patrick McCabe and Gardai established that Patrick McCabe was residing at an address in the United States. Following a review of the file, this office directed on 25 April 2006 that there should not be a prosecution of Patrick McCabe in respect of James Moran's allegations. In October 2008 a file dealing with the allegations of James Moran incorporating the responses of Patrick McCabe at interview with the Garda Siochana was received in this office. The new information and quasi admissions in the interview provided support for the allegations made by James Moran and his credibility. On 23 March 2009, I directed that Patrick McCabe be prosecuted for the offence of indecently assaulting James Moran on a date unknown between 1 January 1977 and 1 April 1977. This charge relates to Offence 6 of the within request.

20. I say and believe that based on the facts averred to in this affidavit that there are reasonable grounds for believing that the charge directed was committed by Patrick McCabe and that there is sufficient evidence for Patrick McCabe to stand trial on the charge as directed.

21. An Garda Siochana have confirmed that the required prosecution witnesses are still available and are prepared to give evidence in any such prosecution.

### Offence 7 – Complainant: Frank LaCumbre

22. I say and believe that in August 2009, the Office of the Director of Public Prosecutions received an investigation file from An Garda Siochana relating to Patrick McCabe (date of birth 12 September 1935). The Garda investigation related to an allegation of indecent

assault allegedly perpetrated by Patrick McCabe on Frank LaCumbre between July 1979 and September 1981.

23. The investigation file includes a statement of evidence from Frank LaCumbre (date of birth 22 October 1966) who stated that when he was approximately 13 or 14 he was indecently assaulted by Father Patrick McCabe a then Roman Catholic Priest who was a curate in Frank LaCumbre's parish of Artane, Dublin at Father McCabes's home at 16 Brookwood Grove, Artane Dublin 5.

24. In his statement of evidence, Frank LaCumbre states that when he was 13 or 14 Father McCabe talked to him and some friends outside the church in Artane where Frank LaCumbre was cycling a new bike. Two to three days later Father McCabe rang Frank LaCumbre's mother to ask if he could take a photograph of her son with his bike for the parish newsletter. Frank LaCumbre came to Father McCabe's house at 16 Brookwood Grove at around six o'clock in the evening for the photo to be taken. Father McCabe put Frank LaCumbre's bike in the garage, showed him some slides and took a photo. He brought Frank LaCumbre to a back room to have some tea. In his statement Frank LaCumbre relates that Father McCabe sat very close to him on the couch, put his left arm around his shoulders and pulling Frank into him, started rubbing the inside of Frank's leg with his right hand. Frank LaCumbre states that he told him to stop but Father McCabe then put his hand on Frank's penis. Frank LaCumbre pushed Father McCabe's right hand away and told him to stop. He states that Father McCabe then threw his right leg over Frank. Frank LaCumbre states that he managed to push Father McCabe off. He states he pushed him to the floor. Frank LaCumbre then jumped up off the couch and threatening to tell his father he told Father McCabe to open the garage and take his bike out, which he did.

25. In his statement, Frank LaCumbre states that he did not report the matter earlier as he feared his father would create a scene and, while he know what was happening was wrong, he was young and thought reporting it might be blowing it out of proportion. He states the incident with Father McCabe came up in the context of marriage counselling. Frank LaCumbre's mother, in a statement of evidence to Gardai, recalled the phone call from Father McCabe requesting to take her son's photo on his new bike and she stated Frank LaCumbre told her the detail of the incident some 10 years before the complaint was made. In a statement of evidence to Gardai, Frank LaCumbre's wife stated that Frank LaCumbre had mentioned an incident with a priest over a number of years, but it was when the matter arose in the course of marriage counseling that he told her the details. Gardai confirmed that Patrick McCabe was a curate in the parish of Artane in Dublin from 14 July 1979 to 5 September 1981 and he resided during that time at 16 Brookwood Grove. This house was identified to Gardai by Frank LaCumbre as the place where the alleged assault occurred.

26. I reviewed the evidence disclosed in the investigation conducted by An Garda Siochana. I directed on 1 March 2010 that Patrick McCabe be prosecuted with one charge of indecent assault on Frank LaCumbre on a date unknown between 13 July 1979 and 6 September 1981. This charge relates to offence 7 of the within request.

27. I say and believe that based on the facts averred to in this affidavit that there are reasonable grounds for believing that the charge directed was committed by Patrick McCabe and that there is sufficient evidence for Patrick McCabe to stand trial on the charge as directed.

28. An Garda Siochana have confirmed that the required prosecution witnesses are still available and are prepared to give evidence in any such prosecution.

## Offences 8, 9 and 10 – Complainants Barry Ennis and Anthony Corrigan

29. I say and believe that the Garda investigation file received in October 2008 by the Office of the Director of Public Prosecutions relating to Patrick McCabe in respect of the allegation of James Moran (Offence 6) also related to a Garda investigation of allegations of indecent assault allegedly perpetrated by Patrick McCabe on Barry Ennis and Anthony Corrigan in February 1981.

30. The investigation file includes a statement of evidence from Barry Ennis (date of birth 22 May 1969) in which he says that circa February 1981 when he was 11 years old he was indecently assaulted by Father Patrick McCabe a then Roman Catholic Priest at Father McCabes's home at 16 Brookwood Grove, Artane Dublin 5.

31. The investigation file also includes a statement of evidence of Anthony Corrigan (date of birth 4 May 1969) in which he too says that circa February 1981 when he was 11 years old he was indecently assaulted by Father Patrick McCabe at Father McCabes's home at 16 Brookwood Grove, Artane Dublin 5.

32. In his statement of evidence, Barry Ennis states that through his friend Anthony Corrigan, he was recruited by Father McCabe to deliver leaflets in the parish and brought to Father McCabe's home in his (McCabe's) blue Volvo car. He alleges that in the back upstairs bedroom of Father McCabe's house, Father McCabe pushed him onto the bed, got on top of him and rubbed himself up and down on top of him. He states that there were other people there and they didn't seem to take any notice. Barry Ennis states that each time he visited Father McCabe at his house something would happen involving a touch or a kiss. He states that on one occasion Father McCabe put his tongue in his mouth chasing chewing gum with his tongue. Barry Ennis's sister Belinda gave a statement of evidence to Gardai in which she states that she recalls her brother Barry telling her a few months after she herself had been in the priest's house that Father McCabe had pushed him onto a bed and lay on top of him and wriggled and he also told her about the chewing gum incident. Barry Ennis states that he knows he told his sister although he is not sure what he told her.

33. Anthony Corrigan states that he was also recruited by Father McCabe to deliver leaflets in the parish and brought to Father McCabe's home in his (McCabe's) blue Volvo car. He alleges that in the back upstairs bedroom of Father McCabe's house, Father McCabe was tiddling (he would appear to mean tickling) Corrigan's upper body outside his clothes and

then Father McCabe lay on top of him rubbing his (McCabe's) body up and down on Anthony Corrigan's body breathing heavily and kissing Anthony Corrigan on the cheek and neck. Anthony Corrigan states that he vaguely recalls Patrick McCabe opening his own belt. Anthony Corrigan states that he was wearing his school uniform

34. In a statement of evidence to Gardai, Karen Doyle (nee Corrigan) sister of Anthony Corrigan related that she walked into Anthony's bedroom in the Corrigan family home to find Father McCabe on top of Anthony on Anthony's bed. Anthony Corrigan's mother, Madeleine Corrigan, told Gardai in a statement of evidence that Father McCabe arrived on the day of Anthony Corrigan's confirmation, that he went up to Anthony's room and that Anthony had told her afterwards that the priest had pushed him on the bed there and "tiddled" him.

35. The Garda Siochana had been investigating allegations of sexual abuse by religious personnel following public airing of such allegations. On 2nd November 2002 Barry Ennis contacted the Gardai through a telephone hotline through which victims had been publicly encouraged to make complaints. Arising from what was stated by Barry Ennis, the Garda Siochana contacted Anthony Corrigan who made his complaint to them on 4th February 2003.

36. The Garda investigation has established that Patrick McCabe was a curate in the parish of Artane, with a residence at 16 Brookwood Grove, Artane, Dublin 5 from July 1979 to September 1981 and that he was absent from the parish between March and August 1981 as he was undergoing therapy in England. Gardai have also established from motor tax records that Patrick McCabe owned a blue Volvo car from May 1980 to February 1982

37. In November 2007, the Garda Siochana interviewed Patrick McCabe at Alameda Police Station, San Francisco, California, USA. When interviewed, Patrick McCabe made no admissions in relation to the allegations of Barry Ennis and Anthony Corrigan other than stating that he may have asked volunteers to deliver leaflets as is claimed by them. In relation to Anthony Corrigan he says he is interested to note that Corrigan was in school uniform which he says is one of his fetishes although he has no memory of the incident or the boy. He also says that Corrigan's account is a bit weird, it could be fantasy or it could be real on Anthony Corrigan's behalf. He states that he has a fetish about formal shirts and ties worn by young boys which stimulates him sexually and he would sometimes get sexually aroused. He said he tried to control the sexual arousal and when that didn't happen he stated "I got satisfaction from an embrace and being close to a boy." When asked if anything else would happen. He said "I have nothing further" and when asked if he would ejaculate, he said "Sometimes I ejaculated unwarily and sometimes I was aware but never exposed any private parts, either mine or other." He said he got professional help for these fetishes in therapy centres in England and the U.S. He told Gardai he did not recall attending Anthony Corrigan's confirmation but said he would have attended if he were free. Patrick McCabe was shown a picture of himself, Anthony Corrigan and Anthony Corrigan's mother. He said he recognised himself and that the boy in the photo was slightly familiar.

38. I reviewed the evidence disclosed in the investigation conducted by An Garda Siochana in respect of the complaint made by Barry Ennis. I directed on 23 March 2009 that Patrick McCabe be prosecuted with two charges of indecent assault of Barry Ennis in or about February 1981. The first relates to the incident when he lay on top of him in the bedroom of Patrick McCabe's house at 16 Brookwood Grove and the second relating to Patrick McCabe rolling chewing around Barry Ennis's mouth with his tongue. These charges relate to Offences 8 and 9 in the within request.

39. I reviewed the evidence disclosed in the investigation conducted by An Garda Siochana in respect of the complaint made by Anthony Corrigan. Taking into account the statement of Anthony Corrigan, the observations by Anthony Corrigan's mother and sister (albeit in relation to a different incident not referred to by Anthony Corrigan) and Patrick McCabe's comments in relation to Anthony Corrigan and his fetishes, I directed on 23 March 2009 that Patrick McCabe be prosecuted in respect of one incident of indecent assault on Anthony Corrigan in or about February 1981 in relation to the incident described by Anthony Corrigan in the bedroom of Patrick McCabe's house at 16 Brookwood Grove. This charge relates to Offence 10 in the within request.

40. I say and believe that based on the facts averred to in this affidavit that there are reasonable grounds for believing that the charges directed in relation to Barry Ennis and Anthony Corrigan were committed by Patrick McCabe and that there is sufficient evidence for Patrick McCabe to stand trial on the charges as directed.

41. An Garda Siochana have confirmed that the required prosecution witnesses are still available and are prepared to give evidence in any such prosecution.

42. I say and believe that it will be necessary, for the purpose of prosecuting Patrick McCabe with the charges as directed, to seek his extradition. It is believed that Patrick McCabe is presently residing in the United States of America.

**SWORN** the $6$ day of *MAY* 2010 by the said Peter McCormick at $24$ in the County of the City of Dublin before me a Commissioner for Oaths/Practising Solicitor, and I know the Deponent.

**DEPONENT**

**COMMISSIONER FOR OATHS/
PRACTISING SOLICITOR**

Seen for the authentication of signature / seal of
PETER McCORMICK

Signed _____

Position ASSISTANT LEGAL

Date __04 | 5 | 2010__

**AFFIDAVIT IN ACCORDANCE WITH ARTICLE VIII(4) OF THE TREATY ON
EXTRADITION BETWEEN IRELAND AND THE UNITED STATES OF AMERICA**

I, Helena Kiely of 14/16 Merrion St, Dublin 2, Ireland aged eighteen years and upwards, make
oath and say as follows:

1. I am a Solicitor and a Professional Officer in the Office of the Director of Public
   Prosecutions in Ireland. The Director of Public Prosecutions enforces the criminal law in
   the Irish courts on behalf of the People of Ireland. As a Professional Officer, appointed
   pursuant to the Prosecutions of Offences Act 1974, I am authorised by the Director of
   Public Prosecutions to act on his behalf and in accordance with his instructions in relation
   to criminal cases.

2. As a Professional Officer in the office of the Director of Public Prosecutions I decide
   whether the evidence gathered by An Garda Siochána (the Irish Police Force) discloses a
   prima facie case against a person and warrants a prosecution of that person for the
   suspected crime. I have the authority to take such a decision and to issue a direction to An
   Garda Siochána on behalf of the Director of Public Prosecutions to charge a person with a
   criminal offence.

3. I say and believe that in September 2009 the office of the Director of Public Prosecutions
   received an investigation file from An Garda Siochána relating to Patrick McCabe (date
   of birth 12 September 1935) .The Garda investigation related to an allegation of a number
   of indecent assaults allegedly perpetrated by Patrick McCabe on Andrew Canavan
   between December 1974 and September 1977.

4. The investigation file includes a statement of evidence from Andrew Canavan (date of
   birth 7 December 1964) in which he says that when aged 11 or 12 years old he was
   indecently assaulted by Patrick McCabe, then a Roman Catholic Priest, on three separate
   occasions in the parochial house attached to the Pro-Cathedral in Marlborough Street,
   Dublin 1.

5. In his statement of evidence, Andrew Canavan states that the first alleged incident
   occurred when he was approached by Patrick McCabe in the church and brought to
   Patrick McCabe's living quarters in the adjacent parochial house on the pretext of
   discussing a prospective trip to Australia for children. Andrew Canavan alleges that on
   walking through the hallway to leave the parochial house Patrick McCabe pushed him up
   against the wall and that McCabe started to fumble underneath his own clothes. Patrick
   McCabe pressed up against Andrew Canavan and put his hands around Andrew
   Canavan's bottom, began moving up and down against Andrew Canavan, who recalls
   feeling something bumpy and hard against his rib cage. Andrew Canavan states that
   Patrick McCabe began moving fast against him, then slowed down and stopped. Patrick
   McCabe then let Andrew out the door of the parochial house and told him to come back
   the next week to see if he had been selected to go to Australia.

6.  Andrew Canavan recalls a further incident, approximately a week later, when he was again brought by Patrick McCabe from the church to his private living room area in the parochial house. On this occasion, Andrew Canavan was told by Patrick McCabe that he was one of the ten lucky children chosen to go to Australia. Andrew Canavan alleges that in the hallway of the parochial house McCabe pushed Andrew up against the wall, that McCabe fumbled underneath his own clothes and pressed up against Andrew Canavan, who remembers something hard pressed against his ribs. Patrick McCabe moved his hands onto Andrew Canavan's bottom and held them there. Patrick McCabe began moving fast against him, then slowed down and stopped. Andrew Canavan went home and told his older brother James (date of birth 8 August 1962) about the trip to Australia in the hope that his brother would also be able to go to Australia.

7.  Andrew Canavan recounts in his statement of evidence that the Sunday following this second alleged incident that Patrick McCabe brought Andrew and his brother James Canavan to his living room in the parochial house after Sunday Mass. Patrick McCabe told James Canavan to look out of the window and not to look back into the room. It is alleged that Patrick McCabe put Andrew Canavan lying on the ground and lay on top of him and started to gyrate on top of Andrew Canavan who could feel something hard pressing against his stomach area. Patrick McCabe started to move up Andrew Canavan's body and as he did so he began kissing and licking Andrew Canavan's face. Andrew Canavan states that he felt crushed and frightened, he ultimately screamed and his brother said he wanted to leave. It is alleged that Patrick McCabe took two bottles of orange drink from a press and gave them to James and Andrew Canavan and told them to be good boys and not to tell anyone.

8.  In his statement of evidence, Andrew Canavan says that when he returned home he told his Grandfather, Edward Sherlock, who was very annoyed but said he didn't want any trouble from the priests. Andrew Canavan says it was never discussed again in the household. Andrew Canavan states that he was ashamed of what had happened, that he felt dirty and had felt that it was his fault. He further states that it has taken him nearly 30 to be able to talk about it properly.

9.  Andrew Canavan says that he told his mother, Margaret Wallace, of the alleged indecent assaults in 2008. Margaret Wallace contacted the Child Protection Services of the Dublin Arch-Diocese who then organised for Andrew Canavan to make a statement of complaint to An Garda Siochána.

10. James Canavan, brother of the complainant, has made a statement of evidence to An Garda Siochána in which he corroborates Andrew Canavan's account of the third incident of indecent assault. James Canavan states that he recalls seeing Patrick McCabe get on top of Andrew, move up and down and that he was told to look out the window by McCabe.

11. Margaret Wallace, mother of Andrew Canavan, has made a statement of evidence in which she says that Andrew was 10 or 11 years old when the family moved from England to Dublin to live with her father, Edward Sherlock. She says that she recalls Andrew

talking about being selected for a trip to Australia. She also recalls that her father, Edward Sherlock, said there would be no more talk of priests in his house.

12. Andrew Canavan has suffered from depression in his adult life. He told a Consultant Psychiatrist, Neelam Bakshi, whom he attended in 1996 that he had been sexually assaulted by a priest after his family had returned from England to Ireland to live with his grandfather.

13. The Dublin Archdiocese has confirmed that Patrick McCabe was a curate attached to the Pro-Cathedral between January 1971 and July 1979.

14. The current parish priest of the Pro-Cathedral, Cannon John Flaherty, has confirmed to An Garda Siochána that Andrew Canavan's description of the layout in the Pro-Cathedral and the parochial house corresponds to the actual layout.

15. I reviewed the evidence disclosed in the investigation conducted by An Garda Siochána. I directed on the 1 March 2010 that Patrick McCabe be prosecuted with three separate charges of indecent assault on Andrew Canavan on unknown dates between 7 December 1974 and 1 September 1977. These charges relate to offences 3, 4 and 5 of the within request.

16. I say and believe that based on the facts averred to in this affidavit that there are reasonable grounds for believing that the charges directed were committed by Patrick McCabe and that there is sufficient evidence for Patrick McCabe to stand trial on the charges as directed.

17. An Garda Siochána have confirmed that the required prosecution witnesses are still available and are prepared to give evidence in any such prosecution.

18. I say and believe that it will be necessary, for the purposes of prosecuting Patrick McCabe with the charges as directed, to seek his extradition. It is believed that Patrick McCabe is presently residing in the United States of America.

SWORN the 30th day of April 2010
by the said Helena Kiely at 1 Earlsport Cake
Earlyort Tee in the County of the City
of Dublin before me a Commissioner for
Oaths/Practising Solicitor, and I know the
Deponent.

_____
DEPONENT

_____
Joane Hyde
COMMISSIONER FOR OATHS/
PRACTISING SOLICITOR

Seen for the authentication of
signature / seal of
HELENA WIELY

Signed _____

Position ASSISTANT LEGAL

Date 21/5/2010