JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

PHILIP J. KEARNEY (CABN 114978)
Assistant United States Attorney

   450 Golden Gate Ave., Box 36055
   San Francisco, California 94102
   Telephone:  (415) 436-7200
   Fax: (415) 436-7234
   Email: philip.kearney@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN THE MATTER OF THE THE EXTRADITION OF PATRICK McCABE | No. CR 10-90622 MEJ<br><br>UNITED STATES' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW |

The United States respectfully submits the following proposed findings of fact and conclusions of law.  The United States reserves the right to amend, supplement, or modify these proposed findings and conclusions.

## I. FINDINGS OF FACT

1.      Patrick McCabe is an Irish national born September 12, 1935.  He is 74 years old and lives in the Northern District of California at 866 ½ Walnut Street in Alameda, California.

2.      Between October 2, 2009 and May 5, 2010, two Irish district courts issued a total of ten warrants for McCabe's arrest.  The warrants indicate that McCabe is wanted on suspicion of nine counts of indecent assault and one count of attempted indecent assault.  The

charges stem from the complaints of six men who allege that McCabe sexually assaulted them between 1973 and 1981. During this time, McCabe was serving as a Catholic priest in the Dublin Archdiocese. Irish prosecutors have investigated the complaints and concluded that McCabe should be prosecuted for them.

3. The complainants are: Thomas Lawrence, who claims that he was between 11 and 13 years old when McCabe both assaulted and attempted to assault him; Andrew Canavan, who claims that he was between 10 and 12 years old when McCabe assaulted him; James Moran, who claims that he was 13 or 14 years old when McCabe assaulted him; Frank LaCumbre, who claims that he was between 12 and 14 years old when McCabe assaulted him; Barry Ennis, who claims that he was 11 years old when McCabe assaulted him; and Anthony Corrigan, who claims that he was 11 years old when McCabe assaulted him.

4. McCabe perpetrated his last alleged assault in approximately March, 1981.

5. Irish police submitted their first allegations against McCabe to the Irish Director of Public Prosecution in 1988. That year, McCabe left the Irish jurisdiction in which charges had been lodged against him.

6. McCabe's location was unknown until 2003, when Interpol reported that he was living at 955 Shore Point Court, Apartment 112 in Alameda, California.

7. Dr. William Sellman is a family practice physician and a member of the Alameda Family Physicians practice group. He has served as McCabe's primary care provider since 2007.

8. Dr. Sellman has diagnosed McCabe with type II diabetes, coronary artery disease, peripheral vascular disease, high blood pressure, sciatica, and elevated prostate specific antigen. For these conditions, McCabe takes a total of two medications and monitors his blood sugar daily.

9. Alameda Family Physicians staff performed McCabe's most recent annual physical on April 16, 2010. During that examination, McCabe indicated that he was walking, biking, and practicing yoga four times per week. He also indicated that he had begun practicing Chi-Gung, a full-body exercise. McCabe's physical revealed that he was in

no acute distress.  His physician estimated that his prostate was of normal size and without nodules or asymmetry.

10. A subsequent examination by Dr. Robert W. Kindrachuk, a urologist, found that McCabe's prostate was small, slightly firm, and without nodularity.  McCabe's PSA count of 6.8 with a free PSA of 26%.  Based on this exam and other tests, Dr. Kindrachuk concluded on May 3, 2010 that McCabe's risk of prostate cancer was 9 percent.  Dr. Kindrachuk noted significant obstructive voiding complaints by McCabe which led to frequent urination.  He also noted that it was reasonable for McCabe to decline a needle biopsy of his prostate for at least three months.

11. If McCabe were remanded pending his extradition, he would likely be housed in the Santa Rita Jail in Dublin, California.

12. Dr. Harold W. Orr is the regional medical director of PHS Correctional Health Care.  In that role, he supervises clinical services at the Santa Rita Jail and the Glenn E. Dyer Detention Facility ("Dyer").

13. Dr. Orr declared on August 3, 2010 that the Dyer facility had a fully-functioning, 20 bed infirmary and medical personnel on call 24 hours a day, seven days a week.  He added that these personnel routinely provide care to inmates with cardiovascular disease and with diabetes.  Some of these inmates cope with type I diabetes, a more serious condition than McCabe's requiring injections.

14. Dr. Orr further declared that he had briefly reviewed McCabe's medical history and concluded that the Dyer facility would adequately meet McCabe's medical needs.  Dr. Orr added that the facility's medical staff are competent to administer McCabe's prescribed medications and can tailor food service to accommodate his diabetes.

## II.  CONCLUSIONS OF LAW

1. There is an extradition treaty in force between the United States and Ireland.  Treaty on Extradition Between the United States of America and Ireland signed 13 July 1983, U.S.-Ir., July 14, 2005, S. TREATY DOC. NO. 109-14 (2006).

2. Pursuant to this treaty, the Government of Ireland has submitted a formal request through diplomatic channels for the extradition of McCabe.

3. Article II, Section 1 of the Treaty states that an offense warrants extradition "only if it is punishable under the law of both Contracting Parties by imprisonment of more than one year, or by a more severe penalty." This requirement is a standard feature of extradition treaties and is commonly known as dual criminality. Its reach is further clarified by Article II, Section 2, which provides that fugitives will remain subject to extradition even when the parties use differing terminology to describe criminal conduct that both countries prohibit.

4. In Ireland, indecent assault is an offense at Common Law. Irish courts define an "assault" as an act by which one person intentionally or recklessly causes another to apprehend immediate, unlawful personal violence. Irish courts interpret "violence" as any unlawful touching of a person without his consent or a lawful excuse. Circumstances of indecency are those capable of being considered by "right-minded persons." In Ireland, if the indecent assault occurred before June 6, 1981, its maximum penalty is 2 years imprisonment for the first offense and 5 years imprisonment for a second or subsequent offense.

5. United States statutes also outlaw the sexual assault of children. 18 U.S.C. Sec. 2243 prohibits the sexual abuse of a minor. It defines this act as knowingly engaging in a sexual act with another person who is at least 12 years old but who is not yet 16 years old. Also, the perpetrator must be at least four years older than the victim. This crime is punishable by a fine, 15 years in prison, or both. United States law mandates enhanced penalties for crimes against younger children. 18 U.S.C. Sec. 2244 states that maximum prison terms are twice what they otherwise would be when convicts assault children younger than 12 years old.

6. Dual criminality exists when two countries outlaw the same conduct with statutes that address "the same basic evil." *Shapiro v. Ferrandina*, 478 F.2d 894, 908 (2d Cir.), *cert. dismissed*, 414 U.S. 884 (1973). The Supreme Court has noted that dual

criminality does not require countries to recognize the same crime with the same name. Neither does it require that the crime provide the same scope of liability in both countries. *Collins v. Loisel*, 259 U.S. 309, 312 (1922). Instead, "[i]t is enough if the particular act charged is criminal in both jurisdictions." *Id*. Thus, dual criminality concerns the "essential character" of the acts criminalized by both countries and is found when their laws are "substantially analogous." *Theron v. U.S. Marshal*, 832 F.2d 492, 496 (9th Cir. 1987) (citing *Wright v. Henkel*, 190 U.S. 40, 58 (1903)). *Clarey v. Gregg* held that laws are analogous when they punish acts of the same general character, such as the taking of another life. 138 F.3d 764, 766 (9th Cir. 1998). This remains the case even when the foreign statute criminalizes a range of conduct much broader than the complementary U.S. statute. *Id.*

7.   There is a strong presumption against bail in international extradition cases. The primary concern in an international extradition matter is to deliver the extraditee to the requesting nation. The statute that governs international extradition proceedings, 18 U.S.C. Sec. 3184, makes no provisions for bail. Even if the United States does not consider a fugitive a flight risk, the fugitive must establish the existence of "special circumstances" that would warrant bail. *In re Extradition of Molnar*, 182 F. Supp.2d 684, 686 (N.D. Ill. 2002) (citing *Salerno v. United States*, 878 F.2d 317 (9th Cir. 1989)).

8.   Examples of such circumstances include the raising of substantial claims upon which the extraditee has a high probability of success or a serious deterioration of health while incarcerated. *Salerno*, 878 F.2d at 317.

9.   However, a heightened standard of proof is required to find special circumstances. For example, an 86-year-old, bed-ridden man has been ordered held without bail pending his extradition. *See In the Matter of Extradition of Artukovic,* 628 F.Supp.1370 (C.D.Cal.1986)(stay denied *sub. Nom. Artukovic v. Rison*, 784 F.2d 1354 (9th Cir. 1986). Similarly, a court did not grant special circumstances on the grounds of a serious health decline when a man with only one kidney awaited extradition. *See In the Matter of the Extradition of Kamel Nacif-Borge*, 829 F.Supp 1210 (D.Nev. 1993).

10. The actions of which McCabe is accused would be punishable under both United States and Irish law. Thus, the Irish government has met its burden of establishing that McCabe's alleged crimes are ones of dual criminality. Also for this reason, McCabe's arguments regarding dual criminality neither suggest that he has a high probability of success in the extradition proceeding nor present special circumstances that would warrant bail.

11. McCabe's medical conditions, to which Dr. Sellman testified and of which McCabe submitted medical record evidence, do not prove that incarceration will induce a serious deterioration in McCabe's health of the kind that would warrant a finding of special circumstances and a continuation of bail.

DATED: August 5, 2010                    Respectfully submitted,

                                         JOSEPH P. RUSSONIELLO
                                         United States Attorney


                                         _____/s/_____
                                         PHILIP J. KEARNEY
                                         Assistant United States Attorney

U.S. PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
RE: THE EXTRADITION OF PATRICK McCABE        6