DAVID J. COHEN, ESQ.
California Bar No. 145748
MATT A. SULLIVAN, ESQ.
California Bar No. 248842
**BAY AREA CRIMINAL LAWYERS, PC**
300 Montgomery Street, Suite 660
San Francisco, California 94104
Telephone: (415) 398-3900
Facsimile: (415) 398-7500

Attorneys for Defendant **Patrick Joseph McCabe**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF PATRICK JOSEPH MCCABE | NO. CR 10-90622-MISC-SI (MEJ) <br><br> **DEFENSE PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW AND OBJECTIONS TO THE GOVERNMENT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

The defense respectfully submits the following proposed findings of fact and conclusions of law, and its objections to the United States proposed findings of fact and conclusions of law. The defense reserves the right to amend, supplement, or modify these proposed findings of fact and conclusions. As an initial matter:

1

A.   The defense respectfully objects to all of the findings of fact and conclusions of law submitted by the United States. The defense asserts the findings of fact are false, and the conclusions of law are invalid, and include citations to cases that have been overruled and citations to cases with the assertion that the case stands for a proposition which it clearly does not.

B.   At the conclusion of the hearing on August 4, 2010, it is counsel's recollection that Magistrate Judge James did not request that the parties submit findings of fact and conclusions of law. Improperly, the United States submitted, without asking leave of court and without any motion to the court, its findings of fact and conclusions of law. We ask that these improperly submitted findings of fact and conclusions of law, which were not requested by the court, be stricken from the record.

C.   Below are the defense proposed findings of fact and conclusions of law.

I.

**FINDINGS OF FACT**

1.   Patrick McCabe is an Irish national born September 12, 1935. He is 74 years old and in the Northern District of California at 866 ½ Walnut Street, in Alameda, California.

2.   No evidence has been presented by the government that this Patrick McCabe is the same Patrick McCabe accused of the offense of indecent assault in Ireland.

3.   Between October 2, 2009 and May 5, 2010, two Irish district courts issued a total of ten warrants for Mr. McCabe's arrest. During this time period Mr. McCabe was in contact with both Irish authorities via his Irish lawyer, Donough Molloy, and U.S. authorities through defense counsel, who contacted the U.S. Attorney's office in San Francisco in October of 2009. Over the span of several months, defense counsel for Mr. McCabe contacted

2

the U.S. Attorney regarding Mr. McCabe's matter, eventually arranging for a self surrender. At no time was Mr. McCabe attempting to evade or flee. He timely self-surrendered pursuant to that agreement on July 30, 2010, later complied without exception to every requirement of his electronic monitoring and house arrest from July 30, 2010 to August 4, 2010 when he timely made his second court appearance well knowing that he4 could be remanded. The charges allegedly stem from the complaints of six men who allege that Mr. McCabe committed the crime of indecent assault between 1973 and 1981. None of these alleged complainants signed an affidavit personally, the documents in the extradition packet are signed by Irish police, rather than by the actual complainants themselves.

4. The alleged complainants are Thomas Lawrence, an individual who supposedly reported this indecent assault first to his sister after waking up in a hospital from a drug overdose, who has a lifetime history of alcohol and drug abuse; Andrew Canavan; James Moran, who himself was investigated and never charged for attempting to extort money from the Dominican order in Ireland; Frank Lacumbre; Barry Ennis' and Anthony Corrigan. All complainants allege that they do not have an exact recollection of when the incidents occurred, but can only purport to suggest a possible time period during which they believe the indecent assault occurred.

5. Mr. McCabe never made any attempt to flee any prosecution in Ireland. There is an allegation, unsupported by

3

any actual evidence, that Mr. McCabe left the Irish jurisdiction in which charges had been lodged against him in the United States Extradition Packet. This allegation is not supported by the affidavit from the Peter McCormick, a Solicitor and a Professional Officer in the Office of the Director of Public Prosecutions. Peter McCormick, in his affidavit attached to the Extradition Packet states in section 18 that further complaints were received in June 1988 against Mr. McCabe, but the Irish police (The Garda Siochana) did not have an address for Mr. McCabe so apparently no charges were filed.

6.   Interpol located Mr. McCabe in Alameda, CA in 2003.

7.   In 2007, Mr. McCabe was interrogated, by Irish police and Alameda police officers, in Alameda, California, for 3 days straight, up to 6-7 hours per day, without being advised of his right to counsel, his right to contact the Irish consulate, and without being advised of his right to remain silent, as required by United States Federal law.

8.   Dr. William Sellman is Mr. McCabe's primary care physician and has treated him since 2007.

9.   Following a triple bypass surgery, Dr. Sellman began to treat Mr. McCabe in the hopes of prolonging his life.

10.   Dr. Sellman submitted a letter to this Court, dated October 29, 2010, indicating that he had been following Mr. McCabe's medical conditions since 2007. These conditions include the following: Diabetes with neurological manifestations; peripheral vascular disease; coronary artery disease; elevated

prostate specific antigen; elevated blood pressure; sciatica.

11.  Dr. Sellman indicated in his letter that Mr. McCabe takes two medications daily, Glipizide and Januvia.

12.  Dr. Sellman testified that daily monitoring of blood sugar and diet is necessary to prevent Mr. McCabe's physical condition from deteriorating, together with appropriate medications.

13.  Dr. Sellman testified that Mr. McCabe requires a daily regimen of physical, and, preferably, full body cardio-vascular aerobic exercise such as bicycling, walking, or yoga, to prevent Mr. McCabe's physical condition from deteriorating.

14.  Dr. Sellman testified that Mr. McCabe has an enlarged prostate which requires daily monitoring, treatment, and potential surgery - or his physical condition will deteriorate. He further testified that this condition requires Mr. McCabe to repeatedly have to urinate throughout the day.

15.  Dr. Sellman reached the conclusion, in his letter, that given Mr. McCabe's underlying conditions, particularly with respect to his heart, he is susceptible to stresses including illness, medication, and emotional stresses. The doctor went on to say that the current legal situation has been burdensome both emotionally and physically. He further stated in his letter that "I do not feel that Mr. McCabe would be able to tolerate incarceration from a physiologic and emotional perspective. His propensity to deteriorate, particularly with respect to his cardiac condition, is high, and would be higher in an unattended

5

1   and stressful environment."

2       16.   Dr. Sellman submitted a second letter on Mr. McCabe's

3   behalf dated July 26, 2010 and testified at the bail hearing on

4   this matter on August 4, 2010.   He clearly testified that he

5   stood by his opinions expressed in both letters.

6       17.   Dr. Sellman testimony was consistent with his letter,

7   in that he reiterated that if Mr. McCabe is incarcerated his

8   condition will seriously deteriorate, and particularly he will

9   deteriorate if his various health conditions and complications

10  are left untreated.

11      18.   The United States submitted a declaration from a Dr.

12  Harold Orr, the regional medical director of the for profit

13  corporation, Prison Health Services, which is contracted to

14  provide medical services to the Santa Rita Jail.

15      19.   In this declaration, Dr. Orr indicated that he had

16  briefly reviewed Mr. McCabe's medical records and letters from

17  Mr. McCabe's doctors.

18      20.   Dr. Orr had never seen Mr. McCabe or examined him.

19      21.   Counsel for the defense filed with the court numerous

20  documents and newspapers articles which show that Dr. Harold Orr

21  and the for profit prison health corporation for which he works,

22  PHS Corrections Health Care,   has been accused of providing

23  substandard inmate care, resulting in inmate deaths, lawsuits,

24  and investigations of the corporation nationwide.

25      22.   Counsel submitted an article showing that 40 inmates

26  had died in custody between 2002 and 2007 in Alameda County Jails

27

28                                 6

1  and quoting Dr. Harold Orr stating that he believed these inmates
2  had obtained appropriate care.

3      23.   Counsel submitted newspaper articles illustrating how
4  Dr. Orr and PHS Corrections Health Care had lost contracts with
5  county governments and had been investigated by political
6  officials nationwide for repeatedly providing substandard care
7  resulting in inmate deaths.

8      24.   Counsel submitted a Feb. 27, 2005 New York Times
9  article entitled "Prison Health Care in Jails Can Be A Death
10  Sentence," an article, that specifically focused on Prison
11  Health Services, the corporation which oversees health services
12  at Santa Rita Jail.

13      25.   The dual criminality showing at this juncture of the
14  proceedings was not sufficiently strong to warrant a release on
15  bail for special circumstances, pursuant to *In the Matter of the*
16  *Extradition of Jose Luis Munoz Santos*, 473 F. Supp. 2d 1030 (C.D.
17  Cal. 2006).

18      26.   The arguments relating to probable cause, at this
19  juncture of the proceedings, were not strong enough under *Santos*,
20  to amount to special circumstances.

21      27.   The testimony of Dr. Sellman and the medical documents
22  submitted, was not sufficient to grant Mr. McCabe bail on special
23  circumstances grounds. Specifically, without proper treatment,
24  Mr. McCabe would physically deteriorate but such deterioration
25  will not occur at Santa Rita Jail, because, based on the
26  declaration of Dr. Harold Orr, and the information the court
27

28                                  7

1   received from the U.S. Marshal, the capabilities of Santa Rita

2   Jail to care for an individual with Mr. McCabe's health issues

3   and problems are sufficient and adequate.

4                                    **II.**

5                          **CONCLUSIONS OF LAW**

6       1.    There is an extradition treaty in force between the

7   United States and Ireland.

8       2.    The U.S. has received a formal request for the

9   extradition of one, Patrick McCabe.

10      3.    Under Irish Law, indecent assault is a crime that

11  includes 3 elements. Those elements are (a) that the accused

12  intentionally assaulted the victim; (b) that the assault or the

13  assault and the circumstances accompanying it are proved to be

14  indecent according to the contemporary standards of right minded

15  people; (c) that the accused intended to commit such an assault

16  as referred to in (b) above.

17      4.    There are United States laws that outlaw the sexual

18  assault of children.

19      5.    The Supreme Court has repeatedly struck down statutes

20  based on contemporary standards of right minded people as

21  unlawful restrictions on the First Amendment Freedom of Speech.

22  *See Janet Reno v. ACLU*, 521 U.S. 844 (1997); *Sable Communication*

23  *v. FCC*, 492 U.S. 115 (1989). This Irish statue under which Mr.

24  McCabe is charged would not be found to be constitutional under

25  United States Federal Law as it is void for vagueness and

26  substantially overbroad. *See Skilling v. United States*, 130 S.

27

28                                    8

1   Ct. 2896 (2010).

2       6.    Under the doctrine of dual criminality, extradition is

3   only proper if the conduct complained of is criminal under the

4   laws of the requesting and requested nations. *United States of*

5   *America v. Zulquarnan Khan*, 993 F. 2d 1368, 1372 (9th Cir. 1993);

6   citing to *United States v. Van Cauwenberghe*, 827 F. 2d 424, 428

7   (9th Cir. 1987); *Quinn v. Robinson*, 783 F. 2d 776, 791-92 (9th

8   Cir. 1986).

9       7.    Granting bail in extradition cases pending the

10  completion of the proceedings has been the rule rather than the

11  exception. *Bealieu v. Hartigan*, 430 F. Supp. 915, 916 (D.Mass),

12  rev'd mem., 553 F. 2d 92, vacated other grounds, 554 F.2d 1. Bail

13  is often granted in extradition cases where special circumstances

14  are found. *See In the Matter of the Extradition of Jose Luis*

15  *Munoz Santos*, 473 F. Supp. 2d 1030 (C.D. Cal. 2006) (Santos was

16  accused of serious offenses in Mexico, including homicide of a

17  child, he had led police on 30 minute chase in the U.S. when they

18  tried to arrest him, bail was granted in the amount of a $450,000

19  property bond posted by Santos father, he was placed on home

20  detention, referred to pretrial services); *United States v.*

21  *Taitz*, 130 F.R.D. 442 (S.D. Cal. 1990) (Taitz was charged with

22  434 counts of fraud in South Africa, released on $500,000 bail

23  secured by a property bond, with a finding of special

24  circumstances based on health condition, allergic reaction to

25  corn sweeteners, common in food at the jail, allergic reaction to

26  soap used in the jail, no prior record, an orthodox Jew and

27

28                                      9

unable to carry out religious rituals in custody); *Matter of the Requested Extradition of Kirby*, 106 F. 3d 855 (9th Cir. 1996) (Kirby was released on $1 million dollar bond in 1996 and was subject to electronic monitoring. His co-participants in the Maze Prison Break were also released, both on $500,000 bond. Another co-participant, James Smyth had been out on bail for a year. The court allowed bail even though it found that special circumstances were weak. All of these men were accused of being members of the IRA, a terrorist organization in the view of the United Kingdom. Kirby was granted bail even though he had participated in a violent prison break and was in prison for the murder of a petrol station attendant. (*See* Exhibit 1, "IRA Men Can Challenge Extradition," BBC News Online Article, October 10, 1998); *see also United States v. Ramnath*, 533 F. Supp. 2d 662 (E.D. Texas  2008) (Dr. Ramnath released on bail, accused of manslaughter in the UK); *In the Matter of the Extradition of Morales*, 906 F. Supp. 1368 (S.D. Cal. 1995) (released on $150,000 bond); *In the Matter of the Extradition of Huerta*, 52 F. Supp. 2d 725 (W.D. Louisiana 1999) (released on $100,00 bond and electronic monitoring, accused of Mexican bank robbery); *Hu Yau-Leung v. Soscia*, 649 F. 2d 914 (2nd Cir. 1981) (released on bail, accused of two home invasion armed robberies in Hong Kong); *In the Matter of the Extradition of Kamel Nacif-Borge*, 829 F. Supp. 1210 (D.Nev. 1993) (released on bail of $12,453,744.00); *In re: The Matter of the Extradition of Father Markey*, 2010 U.S. Dist. Lexis 14390 (N.D. Indiana, 2010) (Father Markey accused of 2

counts of child rape, released on $10,000 bail with a court finding he had special circumstances warranting bail based upon medical deterioration concerns). *See also Salerno v. United States,* 878 F. 2d 317 (9th Cir. 1989) (special circumstances include deteriorating physical condition while in custody); *In re Extradition of Molnar,* 182 F.Supp. 2d 684 (N.D. Ill. 2002)(combination of factors which, individually may not amount to special circumstances, in combination, amount to special circumstances; factor which is a "weak" special circumstance is, nonetheless, a special circumstance).

8.   *In re Artukovic,* 628 F. Supp. 1370, 1375 (C.D. Cal. 1985), is a case that held that an individual whom the U.S. government is seeking to extradite, must be competent to assist in the preparation of his own defense and that "he must be able to understand the nature of the proceedings against and to participate intelligently to the extent his participation is required. *In re Artukovic* was overruled by *Lopez-Smith v. Hooa,* 121 F. 3d 1322 (9th Cir. 1997), which held that competence is not relevant and necessary in extradition proceedings.

This case never addressed special circumstances.

9.   *In the Matter of the Extradition of Kamel Nacif Borge,* 829 F. Supp. 1210, 1216 (D. Nev. 1993), the court held that "courts are now recognizing that the cumulation of several factors may constitute special circumstances that would justify bail in extradition proceedings." Citing to *United States v. Taitz,* 130 F.R.D. 442 (S.D. Cal. 1990).

11

1     10. Nacif Borge was granted bail in his case, but not on

2  the basis of his serious health claim due to the fact that he had

3  presented no documented medical evidence. *Nacif-Borge*, 829 F.

4  Supp. 1210 at 1217.

5     11. Based on the showings at this juncture, the dual

6  criminality argument is not strong enough under *Santos* to amount

7  to special circumstances.

8     12. Based on the showings at this juncture, while

9  deteriorating physical condition in custody <u>is</u> a special

10  circumstance under the law, Mr. McCabe has not shown that his

11  physical condition will deteriorate while in custody because he

12  has not rebutted the government's showing that he will receive

13  adequate treatment.

14                    Respectfully submitted,

15  Dated: August 5, 2010        **BAY AREA CRIMINAL LAWYERS, PC**

16                   By: /s/ David J. Cohen

17                       DAVID J. COHEN, ESQ.

18                       Attorneys for Defendant
                        **Patrick McCabe**