DAVID J. COHEN, ESQ.
California Bar No. 145748
MATT A. SULLIVAN, ESQ.
California Bar No. 248842
**BAY AREA CRIMINAL LAWYERS, PC**
300 Montgomery Street, Suite 660
San Francisco, California 94104
Telephone: (415) 398-3900

Attorneys for Defendant **Patrick Joseph McCabe**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF PATRICK JOSEPH MCCABE | NO. CR 10-90622-MISC-SI (MEJ) |
| | **MOTION TO RELEASE MR. MCCABE ON BOND AND TO RECONSIDER RULING OF MAGISTRATE JUDGE** |
| | Date: August 13, 2010 Time: 3:00 p.m. Ctrm: 10 |

I.

**INTRODUCTION AND STATEMENT OF FACTS**

In or about October, 2010, Mr. McCabe's attorney in Dublin, Ireland, Donnough Molloy, Esq., contacted counsel to advise that there was at least one warrant of arrest outstanding against Mr. McCabe relating to an allegation of indecent assault from the mid-1970's. Counsel contacted the United States Attorneys Office and was put in contact with Assistant United States Attorney Phil Kearney who is the prosecutor assigned to extradition matters. Mr. Kearney advised counsel then, and during periodic calls for status over the subsequent nine months, that no extradition request had come across his desk,

1

but he would so advised counsel if and when he saw one.

From the very beginning, in October, 2009, counsel offered to self-surrender Mr. McCabe in the event of any extradition warrant.  Counsel also advised Mr. Kearney that Mr. McCabe was 74 years old and was suffering from a variety of physical and medical issues which militated in favor of bail being set.  Mr. Kearney agreed to a self-surrender, and indicated he would be open to discussing bail.

For these reasons, in October, 2009, Mr. McCabe's partner and friend, posted her house, obtained and appraisal, and prepared the appropriate documents for posting security valued at $400,000.

In or about mid-July, 2010, Mr. Kearney contacted counsel and indicated that he had received the extradition papers from the Department of State.  Counsel and Mr. Kearney agreed to a self-surrender date of July 30, 2010 before Magistrate Judge James, the duty magistrate.  Mr. Kearney indicated, once again, that he would be amenable to discussing bail prior to the surrender date.

On July 28, 2010, with notice to counsel, Mr. Kearney obtained a warrant of arrest on the extradition package, signed by Magistrate Judge James.  This request was made pursuant to 18 U.S.C. Section 3184, which provides, *inter alia*, that any "judge of the United States, or any magistrate authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made

2

under oath, charging any person found within the jurisdiction...
[with and extraditable offense to another country]...issue his
warrant for the apprehension of the person so charged, that he
may be brought before such justice, judge, or magistrate judge,
to the end that the evidence of criminality may be heard and
considered." At the time, counsel believed that Magistrate
Judge James was a "magistrate judge authorized" by "a court of
the United States" to issue the warrant.

Magistrate Judge James did, in fact, issue an arrest
warrant for Mr. McCabe on July 28, 2010, but the arrest warrant
did not specify any bail. Mr. Kearney's sworn affidavit in
support of the Section 3184 arrest warrant did not request any
particular bail or no bail, and the extradition packet attached
to Mr. Kearney's affidavit did not request any particular bail
or no bail.

Prior to the self-surrender date of July 30, 2010, Mr.
Kearney advised counsel that he would not longer be willing to
discuss the issue of bail, and would be requesting that Mr.
McCabe be remanded and allowed no bail.

Pursuant to agreement, Mr. McCabe timely surrendered to
Magistrate Judge James on July 30, 2010. A transcription of the
CD of these proceedings is attached as Exhibit A. Both parties
filed memoranda of law, in the court file, relating to the issue
of bail. Magistrate Judge James set a bail hearing for August
4, 2010, and ordered by Mr. McCabe be temporarily released,
pending the bail hearing, on a $500,000 bond, secured by the
$400,000 property posted by his friend and partner, that Mr.

3

1  McCabe surrender his passport and post the property with the
2  Clerk by August 2, 2010 at 5:00 p.m., that Mr. McCabe report to
3  Pretrial Services and be subject to house arrest and GPS
4  monitoring, with his only permission to leave home being for
5  court, to visit counsel, and to take care of medical
6  appointments, at the discretion of Pretrial Services.

7      Mr. McCabe reported, as ordered, to Pretrial Services and
8  was subject to house arrest, without incident, until he timely
9  and voluntarily appeared before Magistrate Judge James for the
10  bail hearing on August 4, 2010.

11      On August 2, 2010, as ordered, Mr McCabe surrendered his
12  passport and posted a deed of trust with the Clerk for a piece
13  of property with equity of at least $400,000.

14      Prior to the bail hearing on August 4, 2010, both parties
15  filed supplemental memoranda on the bail issue.  The defense
16  argued, in substance, that special circumstances exist in this
17  case due to the fact that Mr. McCabe, due to his various medical
18  and physical conditions, would deteriorate while in custody.
19  Further, the defense argued that it had substantial legal
20  arguments in opposition to the extradition request itself.  The
21  government argued, in substance, that Mr. McCabe would be
22  adequately cared for in custody, and that no special
23  circumstances existed because Mr. McCabe would not physically
24  deteriorate.  In support of the government's claim, Mr. Kearney
25  filed a declaration from Dr. Harold Orr, the Regional Director
26  of Prison Health Services, which holds the contract for
27  providing health care at the Santa Rita Jail, in Dublin,

28                                  4

California, the anticipated likely location of Mr. McCabe's incarceration.  The Orr declaration stated that Dr. Orr had reviewed the two letters from Mr. McCabe's personal physician, Dr. Sellman, submitted as part of the initial defense bail motion, and had "briefly" reviewed the medical records from Mr. McCabe's physical examination in April, 2010.  These letters are attached as Exhibits B and C.  Dr. Orr stated, in conclusory fashion, that Mr. McCabe could receive adequate care while at Santa Rita, and would receive an appropriate special diet for his diabetes.  The government also argued that Mr. McCabe's legal issues in opposition to the extradition package were not significant enough, at this juncture, to amount to a special circumstance justifying Mr. McCabe's release on bail.

Upon receiving Dr. Orr's declaration, the defense filed three declarations including information showing that Prison Health Services and Dr. Orr have been involved, throughout the United States, in a history of shoddy and negligent medical care for over 10 years, resulting in termination of contracts, physical deterioration and injury, and deaths.

At the hearing on August 4, 2010, Mr. McCabe's personal physician appeared and testified.  This personal appearance was made by Dr. Sellman at the request of Magistrate Judge James and Mr. McCabe.  Dr. Sellman testified, in detail, regarding Mr. McCabe's medical condition.  He testified, unequivocally, that he stood by the conclusion in his letters from October, 2009 and July, 2010 that his opinion was that Mr. McCabe, due to his physical and mental condition, would deteriorate while in

5

custody.   The details of Dr. Sellman's testimony and opinions are contained in his letters and in his testimony from August 4, 2010, attached in the transcribed proceedings and attached as Exhibit D.   The defense argued, among other things, that the conclusory declaration of Dr. Orr was insufficient when compared with the live testimony of Dr. Sellman.   It further argued that the Court, at the very least, and in light of the significant showing regarding the negligence of Dr. Orr and Prison Health Services, should have required a further evidentiary hearing at which Dr. Orr would be personally present, and evidence would be taken on the capacity of Dr. Orr and Prison Health Services to adequately care for Mr. McCabe at Santa Rita.   In support of these arguments, the defense submitted Exhibit A, reviewed by the Court, and attached to this motion as Exhibit E detailing the 40 deaths in Santa Rita as of 2007 under Dr. Orr's regime, and detailing Dr. Orr's cavalier dismissal of the death of a 2007 inmate at Santa Rita.   The defense and government also orally argued the dual criminality issue, and briefly argued the probable cause issue relating to the extradition packet itself.

At   the   conclusion   of   the   hearing   on   August   4,   2010, Magistrate Judge James ruled that (1) the posted $500,000 bail secured by property worth at least $400,000 would be sufficient for bail in a non-extradition setting; (2) Dr. Sellman's letters and   testimony   did   not   amount   to   special   circumstances   as   a matter of law; and (3) the defense arguments on dual criminality were not strong enough, at this juncture in the proceedings, to amount to a special circumstance justifying bail.   Accordingly,

6

Mr. McCabe was remanded into custody and has been at Santa Rita Jail, in Dublin, California, since that time. At Mr. McCabe's request, the $500,000 secured bond was not exonerated because the defense advised that it would seek review of Magistrate Judge James' order before the district court.

After Mr. McCabe was in the United States Marshal lockup, Deputy Marshal Hanson spoke with counsel to advise that (a) Santa Rita would not accept medications for Mr. McCabe and its medical department would not communicate directly with counsel; (b) counsel should submit a letter to Deputy Hanson detailing Mr. McCabe's medical needs and required medications; and (c) Deputy Hanson would forward this information to Santa Rita. Deputy Hanson also advised that either the Court or the United States Attorneys' Office had inquired, through the United States Marshal, whether Santa Rita could care for Mr. McCabe, and that Dr. Orr had responded and indicated that Santa Rita could, in fact, provide adequate care. Accordingly, the defense submitted a letter to Deputy Hanson detailing the care required by Mr. McCabe while in custody. A copy of this letter is attached as Exhibit F. We are unaware, at this point, of whether this letter has or has not been forwarded to Prison Health Services and/or Dr. Orr.

On August 4, 2010, on the bus between 450 Golden Gate Avenue and the Santa Rita Jail facility in Dublin, California, Mr. McCabe was refused access to a bathroom. As such, this 74 year old - and nearly 75 year old - gentleman, was forced to urinate on himself in front of the other inmates on the bus. He

7

was subjected to jeers and humiliation when this occurred. The bus did not arrive at Santa Rita until late in the afternoon - in spite of the fact that the bail hearing had been in the morning. Also, Mr. McCabe, who suffers from a significant diabetic condition as detailed by Dr. Sellman, checked his blood sugar several times per day. The shackles on Mr. McCabe in the bus were placed on him so tightly that the areas where the needle was used to measure his blood sugar began to bleed, and Mr. McCabe bled all over himself and his clothing on the way to Santa Rita.

On August 5, 2010, the government submitted proposed findings of fact and conclusions of law to Magistrate Judge James. This was done in spite of the fact that the government had failed to ask permission from Judge James to submit proposed findings of fact and conclusions of law, and in spite of the fact that Judge James indicated that she would be issuing her own findings in a written order. When the defense brought this to the attention of the Court and the government, Mr. Kearney indicated, in an e-mail, that he was 100% certain that he had been invited to submit proposed findings of fact and conclusions of law. The transcript of the August 4, 2010 hearing indicates that the Court never made such a request. The defense, because of the filing by the government, submitted its own proposed findings of fact and conclusions of law on August 5, 2010. As of today, Magistrate Judge James has not issued her written order.

Since August 5, 2010, Mr. McCabe has not received one of

8

his two required medications, Januvia. Santa Rita checked his blood sugar for five days, just once a day, but has, as of yesterday, stopped checking his blood sugar. Mr. McCabe has an ulcer on his leg which is related to his neuropathy condition. He was unable to see Dr. Randall Ammon for his scheduled appointment regarding this condition on August 6, 2010 because he was in custody. This ulcer is getting worse, and his friend/partner, an ex-RN previously treated similar ulcers with saline compresses. Mr. McCabe as received no treatment, the ulcer is getting worse, and it was aggravated by the leg shackles Mr. McCabe was forced to wear in the bus on the way to Santa Rita. Mr. McCabe is not receiving his appropriate diabetic diet, and is forced to wear sandals which aggravate his neuropathy. He saw a doctor for three minutes on August 5, 2010. He submitted a requisition to see a doctor regarding his leg ulcer, and today, August 10, 2010, saw Dr. Orr himself for about 10 minutes. Dr. Orr advised that the leg condition required no treatment, and was a garden variety circulatory problem. Dr. Orr said he would attempt to get Mr. McCabe new sandals by sometime next week, and he said he would try to get him his second required daily medication, Januvia, by tomorrow, August 11, 2010. Mr. McCabe is in administrative detention, and his locked in his cell for more than 23 hours per day. He is unable to exercise, in spite of the fact that Dr. Orr said that his neuropathy condition would only improve with exercise. Mr. McCabe is getting no treatment for his prostate, his diabetes, his cardiac condition, his neuropathy, or his

9

sciatica.   Mr. McCabe is not getting any special or required diet for his diabetes and cardiac condition - as promised by Dr. Orr in his August 3, 2010 declaration.   In fact, Mr. McCabe is not able to eat most of the regular jail food made available to him, just as it is made available to the other inmates.

On August 4, 2010, Mr. Kearney noted that Mr. McCabe was engaged in full body aerobic exercise, including bicycling and yoga, and that Mr. McCabe appeared to be a healthy man.   The irony of the situation, of course, is that Mr. McCabe was exercising and eating as medically indicated, and being appropriately treated at the time he appeared in court on August 4, 2010.   The whole point was that when he would not be able to do this while incarcerated, he would deteriorate.   He is deteriorating at this time, just as predicted.

In the papers filed in conjunction with the two hearings before Magistrate Judge James on July 30, 2010 and on August 4, 2010, the defense cited to the case of Father Markey, a 2009 extradition matter out of Indiana.   In that case, Dr. Markey was accused by Irish authorities of forcible anal rape of a young boy.   With the government's eventual consent, Father Markey was released on a $10,000 cash bond while he opposed his extradition, and at 82 and suffering from fewer physical ailments than those afflicting Mr. McCabe, he remained free to fight his extradition in the United States.   One of the things that occurred in Father Markey's case was that his incarceration and administrative detention caused him to be unable to exercise, and this resulted in his joints locking up and his

being unable to walk more than 15 feet at a time.  Father Markey also suffered from a prostate condition which was exacerbated by his incarceration in Indiana.

After Father Markey was ordered extradited to Ireland, he was released on a 15,000 Euro cash bond (equivalent to $20,000), posted by a family member, and allowed to live at a Bed and Breakfast in a room paid for by the Catholic Church.  His trial is currently set for late October, 2010 or early November, 2010. The defense is currently seeking to obtain a declaration from his Irish attorney detailing these facts.   T h e   l i k e l y availability of bond in the requesting country is another special circumstance recognized by the United States courts in setting bail.   The information on Father Markey's bond in Ireland, which is likely higher than Mr. McCabe's bond would be given the fact that the charges against Father Markey are far more serious, is information not yet available to the defense at the time of the August 4, 2010 bail hearing before Magistrate Judge James.

The other specials circumstances in support of Mr. McCabe's release on a $500,000 bond secured by property worth at least $400,0000 and his house arrest under the supervision of Pretrial Services, his passport having surrendered are the strength, at this juncture, of his dual criminality and probable cause arguments, and the concerns of parity as between the treatment of Mr. McCabe and Father Marakey.

In conducting research regarding the procedure for obtaining review of the bail order by Magistrate Judge James,

11

counsel has concluded that Magistrate Judge James had no authority under 18 U.S.C. Section 3184 to conduct the bail hearing on August 4, 2010. Rather, it is only the district court which can conduct a bail hearing. Further, it is unclear under Section 3184, given the Local Rules of this Court, whether Magistrate Judge James had the authority to issue the arrest warrant for Mr. McCabe. As such, this motion for bail should be considered *de novo* by this Court, and this Court should permit the taking of additional evidence. To that end, Mr. McCabe intends to offer additional evidence relating to Dr. Orr and Prison Health Services, possible further evidence from Dr. Sellman, and further evidence in connection with the deterioration of Mr. McCabe's physical and medical condition while he has been incarcerated at the Santa Rita Jail since August 4, 2010.

## II.

### THIS COURT, AND NOT THE MAGISTRATE JUDGE, HAS THE JURISDICTION TO HEAR THIS MOTION

18 U.S.C. Section 3184, empowers a United States magistrate judge to issue an extradition arrest warrant, and to rule, at an extradition hearing, on the propriety of that warrant, only if the Magistrate Judge has been authorized to do so by "a court of the United States." In reviewing the Magistrates Act, 28 U.S.C. Section 636(a), magistrates are not currently empowered to issue arrest warrants for extradition proceedings. Nowhere in Fed. R. Crim. P. 59, Crim. L.R. 7-1, or Civil Local Rule 72-1 is a Magistrate Judge empowered by this Court to issue an arrest

warrant.  Therefore, the arrest warrant issued by Magistrate Judge James on July 28, 2010 was not lawful or authorized.  As a consequence, Magistrate Judge James is not an authorized Judicial Officer, at least not under 18 U.S.C. Section 3184, to conduct an extradition hearing in this matter.  Further, any bail hearings relating to extradition proceedings are not matters which arise under Section 3184, and a magistrate judge, therefore, cannot have jurisdiction to conduct such hearings under Section 3184.  *In the Matter of the Extradition of Kirby*, 106 F.3d 855, 859 (9th Cir. 1996)("[A] district judge's authority to grant bail in an extradition case cannot be founded on 18 U.S.C. Section 3184).

Crim. Local Rule 7-1(b) specifically provides that "*After a case has been assigned to a District Judge pursuant to Crim. L.R. 7-1(a), the criminal calendar Magistrate Judge may* conduct the following proceedings as deemed appropriate:

. . .

(13)  Conduct proceedings for extradition."  (Emphasis Added)

In this matter, the Local Rules specifically to nct authorize a magistrate judge to issue an arrest warrant relating to extradition proceedings, because a magistrate judge may only conduct extradition proceedings *after* a case has been assigned to a District Judge.  Here, the Magistrate Judge issued an arrest warrant *before* the case was assigned to a district judge.

Nor was this matter a Criminal Case Proceeding Before Assignment to a District Judge under Crim. Local Rule 5-1.

13

Subsection (a) does not permit a magistrate judge to act if a federal statute or rule requires that a proceeding be before a district judge, and Section 3184 does not permit a magistrate judge issue an extradition warrant unless empowered by a court of the United States. Here, the district court has only permitted magistrates to conduct proceedings relating to extradition *after* a district judge is assigned. Further, Rule 5-1(b) relates to federal charges and proceedings. This is not a federal charge. And Rule 5-1(c) requires that the extradition warrant be presented to the general duty judge, not the magistrate. In this case, it was not.

Extradition matters are not considered criminal matters under the case law. Doyle, Charles and Michael John Garcia, *Extradition to and from United States: Overview of the Law and Recent Treaties*, (March 17, 2010) CRS Report for Congress 98-958, Congressional Research Service; Bassiouni, M. Cherif, *International Extradition: United States Law and Practice,* Third Edition, Oceana Publications Inc. (1996). *In re the Matter of the Extradition of Kirby*, 106 F.3d 855 at 859-860 makes very clear that bail decisions and their review under 18 U.S.C. Section 3145 in criminal cases are different matters than bail applications to a district court under *Wright v. Henkel*, 190 U.S. 40 (1903).

Given all of the above, Crim. Local Rule 7-1 cannot act to authorize a magistrate judge who has not derived his or her authority from a properly issued arrest warrant under 18 U.S.C. Section 3184 to conduct any proceedings relating to extradition.

14

*See* Fed. R. Crim. P. 57(a)(1)(local rules must be consistent with federal law and cannot operate to deprive a party of rights otherwise conferred).

Extradition proceedings are not criminal matters. Therefore, arguably, Fed. R. Crim. P. 59 does not apply to extradition proceedings. Fed. R. Crim. P. 59(a) applies only to non-dispositive matters specifically assigned to a magistrate judge by a district judge. The bail hearing on August 4, 2010 was not specifically assigned to Magistrate Judge James by a district judge. At that point, no district court judge was assigned to the case. Further, the bail hearing conducted on August 4, 2010 was not a non-dispositive matter. *In re the Matter of the Extradition of Kirby*, 106 F.3d 855 at 860 holds, in no uncertain terms, that the bail determination in an extradition case is a final decision of a district court, and, therefore, a dispositive matter.

Similarly, Fed. R. Crim. P. 59(b), which applies to dispositive matters, requires a reference by a district judge to a magistrate judge in order for such magistrate judge to exercise jurisdiction. There was no reference here. Rule 59(b), even if deemed applicable in this matter, requires *de novo* review by the district court and confers upon the district court the ability, in its discretion, to accept new evidence.

28 U.S.C. Section 636, similarly, permits specific designation of a magistrate judge to conduct certain proceedings, but such designation must be specifically made by a district judge, and it was not done here. Other than a

15

challenge to conditions of confinement under Section 363(b)(1)(B), there is no other part of Section 636 that arguably applies to an extradition proceeding.

Local Civil Rule 72-1 also requires a magistrate judge's jurisdiction to arise either form Section 636 or from a specific referral from a district judge. Neither occurred here.

The only real basis for jurisdiction in a magistrate judge to conduct extradition proceedings is in 18 U.S.C. Section 3184 - but *Kirby* does not permit bail hearings to be heard under that section, and Local Criminal Rule 7-1 does not adequately or lawfully empower a magistrate judge to issue warrants under the same section.

For all of the above reasons, this bail application under *Wright v. Henkel* and *Kirby* should be heard *de novo* by this Court, and, inherent in the application, is this Court's ability to, in its discretion, hear additional evidence.

### III.

**THERE ARE SPECIAL CIRCUMSTANCES HERE WHICH MERIT MR. MCCABE'S RELEASE ON BOND ON THE SAME CONDITIONS AS ORDERED BY MAGISTRATE JUDGE JAMES ON JULY 30, 2010**

The United States Supreme Court, in *Wright v. Henkel*, 190 U.S. 40 (1903), held that while bail shall not ordinarily be granted in extradition cases, release was not foreclosed where special circumstances exist. Special circumstances have been held to "include the raising of substantial claims upon which the appellant has a high probability of success, a serious deterioration of health while incarcerated, and unusual delay in the appeal process." *See Salerno v. United States*, 878 F. 2d

16

317 (9th Cir. 1989), citing to *Aronson v. May*, 13 L. Ed. 2d 6, 85 S. Ct. 3, 5 (1964); *United States v. Williams*, 611 F. 2d 914, 915 (1st Cir. 1979); *Galante v. Warden*, 573 F.2d 707, 708 (2d Cir. 1977). The Ninth Circuit has suggested that the strong presumption against bail in extradition proceedings should be abandoned. *Paretti v. United States*, 122 F. 3d 758, 786 (9th Cir. 1997) (*opinion withdrawn upon the flight of the respondent*).

"In the more contemporary reported cases, granting of bail pending completion of the extradition proceedings has been the rule rather than the exception." *Beaulieu v. Hartigan*, 430 F. Supp. 915, 916 (D. Mass. 1977); vacated on other grounds *Beaulieu v. Hartigan*, 554 F. 2d 1 (1st Cir. 1977). On appeal, the circuit court affirmed the decision of the district court granting extradition, and held. "We do not pursue the question of bail here beyond reiterating that, while bail may be granted in the sound discretion of the district court, the matter should be approached with caution and bail should only be granted with a finding of special circumstances."   554 F. 2d 1.

We incorporate, by reference, and in their entireties, our motion for bail and supplemental motion for bail filed below at Docket Numbers 9 and 12, all arguments made at the July 30, 2010 and August 4, 2010 hearings below, and the Declarations of David J. Cohen, Esq., filed at Docket Numbers 11, 14 and 15.

> A.   MR. MCCABE'S MEDICAL CONDITION AND THE PROBABILITY THAT HIS HEALTH WILL SERIOUSLY DETERIORATE WHILE INCARCERATED IS A SPECIAL CIRCUMSTANCE.

A decision to continue to incarcerate Mr. McCabe would be

an act of extreme cruelty in light of his frailty, weakness, and advanced age, and complicated medical condition, including his history of cardiac problems, including a triple bypass surgery. Moreover, serious deterioration of health has been recognized as a special circumstance. *Salerno v. United States*, 878 F.2d 317 (9th Cir. 1989). Since Mr. McCabe was incarcerated on August 4, 2010, his health and physical condition have, in fact, been deteriorating.

> B.   MR. MCCABE INTENDS TO RAISE SUBSTANTIAL CLAIMS IN THIS CASE IN WHICH HE HAS A HIGH PROBABILITY OF SUCCESS; HIGH PROBABILITY OF SUCCESS HAS BEEN RECOGNIZED AS A SPECIAL CIRCUMSTANCE JUSTIFYING THE GRANT OF BOND IN AN EXTRADITION PROCEEDING

High probability of success has been recognized as a special circumstance. *Salerro v. United States*, 8789 F.2d 317 (9th Cir. 1989); *In the matter of the Extradition of Santos*, 453 F. Supp. 2d 1030 (C.D. Cal. 2006).

> 1.   Mr. McCabe Has a High Probability of Success on His Dual Criminality Argument.

For the reasons stated in our filings and our arguments below, Mr. McCabe has a high probability of success on his Dual Criminality Argument.

> 2.   Probability of Success on the Argument That the Extradition Packet Does Not Amount to Probable Cause

> a.   *In the Matter of the Extradition of Jose Luiz Munoz Santos*

Jose Luiz Munoz Santos was charged with violent felonies in Mexico, including a homicide where the alleged victim was a child, and when U.S. authorities attempted to arrest him, he led them on a 30 minute chase. *In re Matter of the Extradition of*

18

*Jose Luiz Munos Santos*, 473 F. Supp. 2d 1030, 1041-1043 (C.D. Cal. 2006).

Santos raised numerous special circumstances in his bail application. The court found that the standard of proof set forth in *Nacif-Borge* was not applicable, and that Santos did not need to prove the existence of special circumstances by clear and convincing evidence, rather, by a preponderance of the evidence. *Id.* at 1036.

Even though Santos had tried to flee when U.S. agents attempted to stop him, leading the agents on a 30 minute chase, during which the agents had their red lights activated, he was released on bail. *Id.* at 1041.

The court held "In this case, the uncertainty regarding the ultimate validity of the arrest warrant, the existence of probable cause...make the government's probability of success sufficiently unclear that it constitutes a special circumstance warranting Santos's release on bail. *Id.* at 1040.

Bail was set at $450,000.00. Santos was required to surrender his passport, and he was placed on home confinement and electronic monitoring. *Id.* at 1043.

Mr. McCabe, like Mr. Santos, disputes that there has been competent legal evidence, establishing probable cause, presented to believe that Mr. McCabe committed the charged offenses.

Just like in Santos, there is a layer of uncertainty surrounding the allegations made against Mr. McCabe.

        b.   *United States of America v. Artukovic*

The court in *United States of America v. Artukovic* was not

19

1  satisfied by the presentation of numerous affidavits, not signed
2  by the actual affiants.

3      *United States of America v. Artukovic*, 170 F. Supp. 383,
4  390-391 (C.D. Cal. 1959).

5      Exactly like in *Artukovic*, the statements produced against
6  McCabe were not in fact signed by the actual affiants. The
7  statements were allegedly made to Irish Police Officers and then
8  those officers wrote out their conclusions based on what they
9  were told.

10      Commissioner Hocke held, in denying the extradition request
11  of Artukovic, a suspected mass murderer, "I am presented with
12  someone else's conclusion of what the testimony was. This is
13  very unreliable evidence which can be given little weight." *Id.*
14  At 390.

15      The court also did not give much weight to testimony that
16  was given ten years after the incident occurred. The court
17  stated "One must also keep in mind that the events to which the
18  witnesses testified took place at least ten years before the
19  testimony was taken. The passage of time tends to reduce the
20  weight which may be given to evidence." *Id.* at 391.

21      In Mr. McCabe's case, the events allegedly occurred between
22  29 and 35 years ago. The passage of time weighs against the
23  reliability of this evidence against Mr. McCabe. This court was
24  not actually presented with affidavits signed by the accusers
25  themselves, but rather with someone else's conclusion of what
26  was said. The evidence in McCabe's case is equally unreliable.

27      Artukovic, an alleged mass murder, was released on bail in
28                                  20

1951, and the extradition request was denied in 1959. He was eventually extradited many years later.

        c.    *In the Matter of the Extradition of Ricardo Gonzalez and Victor Huerta*

The extradition of Gonzalez and Huerta was sought by Mexico for the crime of bank robbery. *In the Matter of the Extradition of Gonzalez, et. al.,* 52 F. Supp. 2d 725, 728 (W.D. La. 1999). Both parties were arrested trying to use the traveler's checks at a U.S. bank. *Id.* at 732.

The court found that insufficient probable cause had been presented to support the extradition, and that the movers had a substantial likelihood of success on the merits at the extradition hearing. *Id.* at 738.

    C.    WHERE BAIL IS AVAILABLE IN THE REQUESTING COUNTY ON THE UNDERLYING SUBSTANTIVE OFFENSE, THERE EXISTS A SPECIAL CIRCUMSTANCE JUSTIFYING THE GRANT OF BAIL IN THE ASYLUM STATE

        1.    *In re Gannon*

Gannon was granted bail, while the extradition matter was pending, due to the fact that the offense charged (obtaining money under false pretenses), was a bailable offense in both the requesting nation, and the requested state. *In re Gannon,* 27 F. 2d 362 (E.D. Pa 1928).

The offense of indecent assault, is one in which Mr. McCabe would be entitled to bail in Ireland. (*See* Declaration of David Cohen dated August 10, 2010).

        2.    *In the Matter of the Extradition of Kamel Nacif-Borge*

Mr. Nacif-Borge was arrested on a Mexican arrest warrant

1  and sought to be extradited for allegedly failing to pay taxes
2  on over $50,000,000 Mexican pesos (roughly $15,000,000 in U.S.
3  currency). *Id.* at 1212. Through counsel he requested bail and
4  raised the following special circumstances (1) substantial
5  probability of success on his claims; (2) serious deterioration
6  of health; (3) unusual delay; (4) timing of the provisional
7  arrest; (5) offer of compromise; (6) length and complexity of
8  extradition proceedings; (7) seriousness of the offense; (8)
9  character of extraditee; (9) bail considerations in Mexico. *Id.*
10  at 1216-1221.

11  The court found that Nacif should be granted bail due to
12  the fact that bail would be granted in Mexico on the substantive
13  underlying offense. *Id.* at 1221. The court, after having
14  determined that bail was appropriate, and in light of the
15  special circumstances underlying the grant of bail in his case,
16  looked to the amount of bail Mexico would set for Nacif under
17  Mexican law. *Id.* at 1222. Based on a complicated analysis, bail
18  was set at over $12 million dollars. This was determined to be
19  fair by the court, given that evidence had been presented
20  illustrating that Mr. Nacif had substantial assets, and friends
21  who were willing to contribute up to $2 million dollars towards
22  his bail. *Id.* at 1223.

23  3.  *United States v. Taitz*

24  In *U.S. v. Taitz*, 130 F.R.D. 442, 443 (S.D. Cal. 1990), the
25  U.S. Attorney filed a complaint seeking the arrest of Allen
26  Taitz for extradition to Republic of South Africa for 434 counts
27  of fraud related to diamond transactions. Mr. Taitz filed an
28

application for bail in this matter. The court analyzed the record and the legal precedent and found the following special circumstances: (1) potentially insufficient probable cause on each of the 434 counts; (2) Taitz had no prior record and was not charged with a crime of violence; (3) Taitz had suffered some health difficulties in the form of allergic reactions to corn and corn sweeteners, which were common substances in the food at the jail, he was also allergic to the soap used, the court saw that he was scratching himself during the bail hearing; (4) Taitz was an orthodox Jew and was unable to carry out religious rituals; (5) no diplomatic necessity for denying bail here, because the law of South Africa would allow bail prior to extradition being certified, and fraud is a bailable offense in South Africa. *Id.* at 445-447.

The court found special circumstances and order Taitz's release on bail. He was released on a $500,000 bond secured by property. *Id.* 447. The court held that "there can be no diplomatic concern by South Africa if the United States releases on bail a person who is facing extradition to South Africa where bail is available in South Africa for persons facing extradition to the United States." *Id.*

4. *In the Matter of the Extradition of Jaime Morales*

Morales produced evidence that under Mexican law, fraud is a bailable offense. *In the Matter of the Extradition of Jaime Morales*, 906 F. Supp. 1368, 1376 (S.D. Cal. 1995). The court held "While this fact, alone, would not, in this Court's view, justify Morales' release on bail, in combination with the other

23

factors mentioned above, it contributes to the Court's finding of 'special circumstances' justifying bail in this case." *Id.*

    D.    MR. MCCABE'S PARITY WITH FATHER MARKEY WHO WAS GRANTED A CASH BAIL OF $10,000 IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF INDIANA AND WHO HAS BEEN GRANTED A CASH BAIL OF $15,000 EUROS, OR APPROXIMATELY $20,000 FOR THE UNDERLYING SUBSTANTIVE OFFENSE OF BUGGERY, THAT IS, FORCEABLE ANAL RAPE OF A CHILD, A FAR MORE SERIOUS OFFENSE THAN THE INDECENT ASSAULTS WITH WHICH MR. MCCABE IS CHARGED, IS A SPECIAL CIRCUMSTANCE JUSTIFYING THE GRANT OF BOND IN THIS CASE.

    1.    *In the Matter of the Extradition of the Requested Extradition of Terence Damien Kirby*

Terence Damien Kirby, along with Pol Brennan, Kevin Artt, and James Smyth was a member of the Irish Republican Army. (See Exhibit). Terence Kirby was sought to be extradited to the United Kingdom for escaping, along with 35 other prisoners from Maze prison. *In the Matter of the Extradition of Terrence Damien Kirby*, 106 F. 3d 855, 857 (9th Cir. 1996).

Terence Kirby was being held in prison at Maze prison after being convicted of murder. **Mr. Kirby raised special circumstances, including the grounds that he should have parity with Smyth.** *Id.* at 863. The argument was that a similarly situated extraditee, James Smyth, had been out on bail for over a year at the time the district court held a bail hearing for Mr. Kirby, and in order to have parity of treatment, Kirby should be released also. *Id.* The court considered this argument as a special circumstance.

The court found that even though the special circumstances raised were "weak," special circumstances did exist. *Id.* at 864-865. The grant of bail to Mr. Kirby by the district court, on a

24

$1,000,000 bond, even though he was a convicted murdered accused of a prison break and alleged to be a terrorist by one of our allies, the United Kingdom, was affirmed by the 9th Circuit. *Id.* at 858-865. The bail granted to Brennan and Artt by the district court in the amount of $500,000 was also affirmed. *Id.*

Mr. McCabe asserts the same grounds as raised in Kirby, that he should have parity with Father Markey, who was granted bail pending extradition in the Northern District of Indiana.

2. Parity With Father Markey

Father Francis Markey, is an Irish priest who was indicted by the Director of Public Prosecutions in Ireland for two counts of buggery. *Francis Markey v. United States Marshal Service*, 2010 U.S. Dist. Lexis 38082 (N.D. Indiana, 2010). Buggery, under Irish law, is essentially rape of a child. (*See* Declaration of David Cohen dated August 10, 2010). The allegations against Father Markey, are based on statements from a person about incidents that occurred 42 years ago. 2010 U.S. Dist. Lexis 38082 at 10. The U.S. Attorney moved for his extradition, and this extradition was challenged by his federal defender, who also made a motion for bail on behalf of Father Markey.

In Father Markey's motion for bail, his counsel raised the following special circumstances: that Markey was 82 years of age and in poor health; that he has a history of cerebral vascular accident (stroke); that he has atrial fibrillation, hypertension, diabetes, and requires a pacemaker; that he suffers from congestive heart failure; that he is medically fragile. In custody, Markey's mobility decreased. *See* Exhibit

25

G, Francis Markey's Motion for Bail.

Even though Father Markey was facing two counts of child rape, on the basis of the above factors, special circumstances were found, and he was released on bail on a $10,000 cash bond. Initially, the United States opposed the release of Father Markey, however, the United States withdrew its objection to his release and negotiated an agreement for release with Father Markey with the following conditions: $10,000 cash bond, ordered to appear at all proceedings, surrender of passport, travel restricted to Northern District of Indiana and the Western District of Michigan. *See* Exhibit H, Magistrate Judge Nuechterlein's Order of Nov. 16, 2009.

Mr. McCabe is similarly situated to Father Markey. In fact, Mr. McCabe seems to have more serious health problems than Father Markey. Mr. McCabe is 74 years old, and will turn 75 on September 12. Mr. McCabe is very fragile and has sustained numerous injuries since he was incarcerated. (*See* Declaration of David Cohen dated August 10, 2010). Mr. McCabe has not been accused of committing any offenses as serious as the crime of buggery.

Mr. McCabe also has put together a bail package where his close personal friend has deeded her home to the court, valued at $400,000.00. He has surrendered his passport, and was submitting to electronic monitoring before he was remanded.

Father Markey was eventually extradited, however, he is now awaiting trial and is out on bail in Ireland. The bail for two counts of buggery is 15,000 euros which is approximately $20,000

26

U.S. dollars. Counsel for Mr. McCabe has learned from the Irish solicitor who is representing Mr. Markey, that bail for Mr. McCabe would be approximately 15,000 euros if he was extradited to Ireland. (*See* Declaration of David Cohen dated August 10, 2010).

    E.    THIS COURT MAY FIND SPECIAL CIRCUMSTANCES EVEN IF THEIR EXISTENCE IS DEEMED TO BE "WEAK," AND THE COURT MAY COMBINE FACTORS EVEN IF AN INDIVIDUAL FACTOR, ALONE, DOES NOT AMOUNT TO A SPECIAL CIRCUMSTANCE

*In the matter of the Extradition of Sandor Molnar*, 182 F. Supp. 2d 684 (N.D. Ill. 2002), the court concluded that each item on the list of special circumstances presented by the relator was not sufficiently "special" to permit release. The court, however, concluded that in the provisional arrest setting, (in which we now find ourselves), the special circumstances advanced by the relator must be reviewed collectively rather than singularly. Further, when viewing these factors collectively, any case for special circumstance, even a weak one, is sufficient to permit bail so long as the relator demonstrates that his or her conditions of bail will address any concerns relating to flight risk. In this case, the court should view all the special circumstances advanced by Mr. McCabe, together with his substantial bail proposal, the fact that he is not a flight risk and the fact that he is not a danger to the community, and conclude that bail should be granted at this stage in the proceedings.

**IV.**

### THE AUGUST 4, 2010 RULING BY MAGISTRATE JUDGE JAMES WAS FACTUALLY AND LEGALLY IN ERROR

For all of the above stated reasons, Magistrate Judge James was not correct in concluding that the facts and law here simply do not permit her the discretion to set bail. They do. Her ruling that she had no such discretion even though there exist special circumstances and the existing conditions of bail would satisfy the concerns of flight risk and danger to the community was erroneous as a matter of law.

**V.**

### CONCLUSION

For the above stated reasons, this Court should grant Mr. McCabe's request to hear further evidence on the bail issue, and should release Mr. McCabe on bond pursuant to the same conditions that were ordered by Magistrate Judge James on July 30, 2010.

Respectfully submitted,

Dated: August 10, 2010          **BAY AREA CRIMINAL LAWYERS, PC**

By: /s/ David J. Cohen
DAVID J. COHEN, ESQ.

Attorneys for Defendant
**Patrick McCabe**